# EXHIBIT C



**Division of
Human Rights**

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

| | |
|---|---|
| NEW YORK STATE DIVISION OF HUMAN RIGHTS on the Complaint of<br><br>DORTHEA PERRY,<br><br>               Complainant,<br><br>      v.<br><br>NEW YORK STATE ATHLETIC COMMISSION, NEW YORK STATE, DEPARTMENT OF STATE, ANTHONY GIARDINA,<br><br>               Respondents. | **NOTICE AND FINAL ORDER**<br><br>Case No. 10195419 |

Federal Charge No. 16GB803837

**PLEASE TAKE NOTICE** that the attached is a true copy of the Recommended Findings of Fact, Opinion and Decision, and Order ("Recommended Order"), issued on June 13, 2024, by Sharon A. Sorkin, an Administrative Law Judge of the New York State Division of Human Rights ("Division"). An opportunity was given to all parties to object to the Recommended Order, and all Objections received have been reviewed.

Pursuant to 9 N.Y.C.R.R. § 465.17(c)(3), Chief of Staff Belkis Alonso-Ortiz has been designated by the Commissioner as the person who is fully empowered to decide this case.

<u>**PLEASE BE ADVISED THAT, UPON REVIEW, THE RECOMMENDED ORDER IS HEREBY ADOPTED AND ISSUED BY BELKIS ALONSO-ORTIZ, CHIEF OF STAFF, AS THE FINAL ORDER OF THE NEW YORK STATE DIVISION OF**</u>

- 2 -

**HUMAN RIGHTS ("ORDER").** In accordance with the Division's Rules of Practice, a copy of this Order has been filed in the offices maintained by the Division at One Fordham Plaza, 4th Floor, Bronx, NY 10458. The Order may be inspected by any member of the public during the regular office hours of the Division.

PLEASE TAKE FURTHER NOTICE that any party to this proceeding may appeal this Order to the Supreme Court in the County wherein the unlawful discriminatory practice that is the subject of the Order occurred, or wherein any person required in the Order to cease and desist from an unlawful discriminatory practice, or to take other affirmative action, resides or transacts business, by filing with such Supreme Court of the State a Petition and Notice of Petition, within sixty (60) days after service of this Order. A copy of the Petition and Notice of Petition must also be served on all parties, including the General Counsel, New York State Division of Human Rights, One Fordham Plaza, 4th Floor, Bronx, NY 10458. Please do not file the original Notice or Petition with the Division.

**ADOPTED, ISSUED, AND ORDERED.**

DATED: 11/07/2024
Bronx, NY

BELKIS ALONSO-ORTIZ
CHIEF OF STAFF

- 2 -

TO:

Complainant
Dorthea Perry
74 Tapscott Street Apt. 1
Brooklyn, NY 11212

Complainant Attorney
Sonia E. Hanson, Esq.
Law Offices of Mahir S Nisar, P.C.
One Grand Central Place
60 East 42nd Street, Suite 4600
New York, NY 10165

Complainant Attorney
Casey Wolnowski, Esq.
Nisar Law Group, P.C.
One Grand Central Place
60 East 42nd Street, Suite 4600
New York, NY 10165

Complainant Attorney
Susan Ghim, Esq.
244 Fifth Avenue, Suite 1434
New York, NY 10001

Respondent
New York State Athletic Commission
123 William Street, 20th Floor
New York, NY 10038

Respondent
New York State, Department of State
Attn: David Gonzalez
Office of Counsel, One Commerce Plaza
99 Washington Ave.
Albany, NY 12231

Respondent
Anthony Giardina
New York State, Athletic Commission
403 Vincent Drive
Schenectady, NY 12303

Respondent Attorney
Lisa F. Joslin, Esq.

- 3 -

Gleason, Dunn, Walsh & O'Shea
300 Great Oaks Blvd, Suite 321
Albany, NY 12203

Respondent Attorney
Nancy S. Williamson, Esq.
Gleason, Dunn, Walsh & O'Shea
300 Great Oaks Blvd, Suite 321
Albany, NY 12203

Hon. Letitia James, Attorney General
Attn: Civil Rights Bureau
28 Liberty Street
New York, New York 10005

State Division of Human Rights
Robert Goldstein, Director of Prosecutions
Lilliana Estrella-Castillo, Chief Administrative Law Judge
Sharon A. Sorkin, Administrative Law Judge
Michael Swirsky, Litigation and Appeals
Melissa Franco, General Counsel
Elaine A. Smith, Associate Attorney, Legal Advisory
Melissa Franco, Deputy Commissioner for Enforcement
Peter G. Buchenholz, Adjudication Counsel
Matthew Menes, Adjudication Counsel
Samantha Stiles, Calendar Clerk

- 4 -



**NEW YORK STATE** | **Division of Human Rights**

**KATHY HOCHUL**
Governor

**DENISE M. MIRANDA**
Acting Commissioner

# Notice of Important Document

| | |
|---|---|
| **ENGLISH** | **This is an important document. If you need help to understand it, please call (718) 741-8255. An interpreter will be provided free.** |
| **Español**<br><br>**Spanish** | Este es un documento importante. Si necesita ayuda para entenderlo, por favor llame al (718) 741-8255. Se le proveerá un intérprete gratis. |
| 简体字<br><br>**Simplified Chinese** | 这是一份重要文件。 如果您需要帮助理解此文件， 请打电话至 (718) 741-8255。 您会得到免费翻译服务。 |
| 簡體字<br><br>**Traditional Chinese** | 这是一份重要文件。如果您需要幫助理解此文件，請打電話至 (718) 741-8255。 您会得到免費翻譯服務。 |
| **Kreyòl Ayisyen**<br><br>**Haitian Creole** | Sa a se yon dokiman enpòtan. Si ou bezwen èd pou konprann li, tanpri rele: (718) 741-8255. Y ap ba ou yon entèprèt gratis. |
| **Italiano**<br><br>**Italian** | Il presente documento è importante. Per qualsiasi chiarimento può chiamare il numero (718) 741-8255. Un interprete sarà disponibile gratuitamente. |
| 한국어<br><br>**Korean** | 이것은 중요한 서류입니다. 도움이 필요하시면, 연락해 주십시오: (718) 741-8255. 무료 통역이 제공됩니다. |
| **Русский**<br><br>**Russian** | Это важный документ. Если Вам нужна помощь для понимания этого документа, позвоните по телефону (718) 741-8255. Переводчик предоставляется бесплатно. |



**Division of
Human Rights**

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

NEW YORK STATE DIVISION OF
HUMAN RIGHTS
    on the Complaint of

**DORTHEA PERRY,**

                          Complainant,

              v.

**NEW YORK STATE ATHLETIC
COMMISSION, NEW YORK STATE,
DEPARTMENT OF STATE, ANTHONY
GIARDINA,**

                       Respondents.

---

**RECOMMENDED FINDINGS OF
FACT, OPINION AND DECISION,
AND ORDER**

Case No. **10195419**

Federal Charge No. 16GB803837

## SUMMARY

Complainant alleged that Respondents unlawfully discriminated against her at work based on her age, race, and sex, and retaliated against her for complaining about unlawful discrimination. The record does not support Complainant's allegations and, therefore, this case is dismissed.

## PROCEEDINGS IN THE CASE

On May 7, 2018, Complainant filed a complaint with the New York State Division of Human Rights ("Division"), charging Respondent New York State Athletic Commission with

unlawful discriminatory practices relating to employment in violation of N.Y. Exec. Law, art. 15 ("Human Rights Law").

On July 11, 2018, the Division amended the complaint to add New York State, Department of State as a Respondent. (ALJ's Exh. 1).

On September 27, 2018, the Division amended the complaint to add Anthony Giardina as a Respondent. (ALJ's Exh. 1).

After investigation, the Division found that it had jurisdiction over the complaint and that probable cause existed to believe that Respondents had engaged in unlawful discriminatory practices. The Division thereupon referred the case to public hearing.

After due notice, the case came on for hearing before Alexander Linzer, an Administrative Law Judge ("ALJ") of the Division on August 16, 2021. Shortly after the hearing's commencement but before testimony was taken, Complainant requested ALJ Linzer's recusal due to a previously unknown connection between a Respondent representative and ALJ Linzer's spouse. (Tr. 19- 21). Complainant's request was granted by Chief ALJ Lilliana Estrella-Castillo, and the case was reassigned to ALJ Martin Erazo, Jr., pursuant to 9 N.Y.C.R.R § 465.12(d)(2). (Tr. 22-23).

The case then came on for hearing before ALJ Erazo. Virtual public hearing sessions were held on August 18, 2021, October 4 and October 5, 2021, May 9 and May 10, 2022, May 16 and May 17, 2022, September 12, 2022, November 9 and November 10, 2022, and February 24, 2023. Thereafter, ALJ Erazo left state service and the case was reassigned to ALJ Sharon A. Sorkin, pursuant to 9 N.Y.C.R.R § 465.12(d)(2). Subsequent virtual public hearing sessions were held before ALJ Sorkin on November 13 and November 14, 2023, and December 8, 2023.

Complainant and Respondents appeared at the hearing. Complainant was represented by Law Office of Susan Ghim (Susan Ghim, Esq., of counsel). Respondents were represented by Gleason, Dunn, Walsh & O'Shea (Lisa F. Joslin, Esq., and Nancy S. Williamson, Esq., of counsel).

Permission to file post-hearing briefs was granted. The parties timely filed post-hearing briefs, which were considered and, where appropriate, adopted. In Complainant's post-hearing brief, Complainant moved to amend the complaint to add James Leary, Kimberly Sumbler, and Linda Baldwin as Respondents. Complainant also submitted a motion seeking attorney's fees, which is entered into evidence as ALJ's Exhibit 9.

## FINDINGS OF FACT

1. Complainant is an African American female, born January 27, 1967. (Tr. 47-49)

2. Respondent New York State Athletic Commission ("NYSAC") is a subdivision of Respondent New York State, Department of State ("NYDOS"), and oversees combat sports, which include boxing, mixed martial arts ("MMA"), and wrestling. (Tr. 1810-13, 2219-20)

3. In January 2004, Complainant began employment with Respondent NYSAC as an athletic event inspector. (Tr. 49-52, 1100, 1362, 1446, 1818; Respondents' Exhs. 21, 23)

4. Complainant was Respondent NYSAC's only African American female inspector. (Tr. 60, 177-78)

5. As an inspector, Complainant was responsible for enforcing Respondent NYSAC's rules, regulations, and policies. (Tr. 1149-51, 1154, 1818, 1979, 2221-22; Complainant's Exh. 6; Respondents' Exhs. 1, 2, 15, 33)

- 3 -

6. At events, Complainant would be assigned to an athlete and perform various duties for the athlete, including overseeing their locker room. (Tr. 66-67, 180-82, 1177, 1371-72, 1479-80, 1979-81, 2221-23, 2240; Complainant's Exhs. 5, 6, 14, 15; Respondents' Exhs. 1, 2, 14, 15, 33)

7. Before a fight, inspectors are provided with a "camp list," which includes the names of individuals permitted to be in an athlete's corner during fights, as well as the names of family members who also have permission to be in their locker room. (Tr. 2001-02, 2228; Complainant's Exh. 52)

8. It is an inspector's responsibility to review their athlete's camp list and restrict access to the locker room to authorized persons only. (Tr. 180, 1155-56, 1177-79, 1181, 1184-85, 1389; Complainant's Exh. 6; Respondents' Exhs. 1, 2, 8, 17, 34)

9. In or around 2015, Complainant complained to Respondent NYDOS that Respondent NYSAC's then-executive director David Berlin discriminated against her by giving her less prestigious fight assignments. Respondent NYDOS determined that her complaint was unfounded. (Tr. 529, 926-27, 933, 937, 1354, 1357, 2250; Complainant's Exhs. 22, 30; Respondents' Exh. 19, 20)

10. Maria Herman was employed as Respondent NYDOS' affirmative action officer and investigated all of Complainant's complaints. (Tr. 536, 1945; Complainant's Exh. 22, p. 9-12; Respondents' Exh. 35)

11. On June 17, 2015, Complainant filed a complaint with the Division alleging discrimination by Berlin based on her race and age. The Division found no probable cause to believe discrimination occurred. (Tr. 1198; Respondents' Exh. 18, 35)

12. In November 2015, James Leary, Respondent NYDOS' then-associate general counsel, wrote to Complainant that her concurrent work as a boxing judge in Virginia violated

Respondent NYSAC's conflicts rules. Complainant clarified that she was not being paid by a promoter, so there was no rule violation. Leary accepted this clarification and Complainant continued to work in both capacities. (Tr. 907, 912, 916-18, 2217, 2231-33, 2279-86; Complainant's Exhs. 34, 35, 55)

13.  In April 2016, Complainant made a complaint to Respondent NYDOS that Berlin was retaliating against her for her previous 2015 complaint and there was discrimination in her assignments. (Tr. 513-14, 530; Complainant's Exhs. 20, 22; Respondents' Exh. 19, 35)

14.  In or around June 2016, Respondent NYDOS determined that Complainant's April 2016 discrimination complaint was unfounded and closed Complainant's retaliation complaint with her consent because Berlin had left Respondent NYSAC. (Tr. 536; Complainant's Exh. 22; Respondents' Exhs. 20, 35)

15.  In or around June 2016, Respondent NYSAC no longer employed Berlin. (Tr. 1834)

16.  In spring or summer 2016, Complainant applied for a position as a deputy commissioner with Respondent NYSAC. (Tr. 1162-63, 1818, 1837; Respondents' Exh. 21, 23)

17.  Although some deputy commissioners were hired between the fall of 2016 and March 2017, Complainant was not offered a deputy commissioner position. (Tr. 1166, 1649, 1837-45, 1859-60, 1905, 1908-09, 1914-15, 2193, 2024-25; ALJ's Exh. 1; Complainant's Exhs. 10, 32; Respondents' Exhs. 21, 22, 23)

18.  In or around March 2017, Complainant sought to sit ringside during a televised fight that featured a boxer she had a well-known personal relationship with, Danny Jacobs. While Leary and Respondent Anthony Giardina, Respondent NYSAC's then-interim executive director, initially objected because they were concerned about the appearance of a conflict of interest, they

eventually relented and allowed her to sit ringside. (Tr. 805-06, 890-94, 1157-59, 1162, 1561-62, 1806-08, 1834, 1848-51, 1853-57, 2288; Complainant's Exhs. 42, 57)

19. On March 17, 2017, at a Respondent NYSAC event, Respondent Giardina attempted to greet Complainant with a hug. (Tr. 158-60, 535, 1170-73, 1865-66)

20. Complainant refused to hug Respondent Giardina and told him, "I don't do that with co-workers." (Tr. 814-15, 1173, 1867-68; Complainant's Exh. 24, 47)

21. On April 4, 2017, Complainant made a complaint to Respondent NYDOS against Respondent Giardina for failing to promote her to deputy commissioner, and for sexual harassment due to his attempt to hug her in March 2017. (Tr. 514-15, 535; Complainant's Exh. 20; Respondents' Exhs. 9, 21, 22, 23, 24, 34, 35)

22. In or around July 2017, Kimberly Sumbler became Respondent NYSAC's executive director and replaced Respondent Giardina. (Tr. 1806-07, 1873, 1967-68, 2103)

23. Sumbler reported to then-executive deputy secretary of state Brendan Fitzgerald. (Tr. 2220, 2347-48)

24. In October 2017, there was a symposium that Complainant did not attend due to a scheduling conflict. A commissioner later told Complainant that Sumbler said the symposium was an opportunity for Complainant to prove that she could be a deputy commissioner, but Complainant "failed to show up." (Tr. 824-26; ALJ's Exh. 1; Respondents' Exh. 25, 33)

25. In November 2017, deputy commissioner Frank Vazquez told another deputy commissioner that Complainant was a "snitch" and a "liar." (Tr. 629; ALJ's Exh. 1)

26. On November 28, 2017, Respondent NYDOS determined Complainant's April 2017 complaint regarding deputy commissioner hiring and sexual harassment to be unfounded. (Tr. 539; Complainant's Exh. 22; Respondents' Exhs. 4, 21, 22, 23, 24, 35)

- 6 -

27.  On December 4, 2017, Complainant requested that Respondent NYDOS reopen her complaint and made an additional allegation that Respondent Giardina applied more rigorous standards to her than other deputy commissioner applicants.  Respondent NYDOS determined the new allegation to be unfounded and denied her request to reopen its investigation.  (Tr. 540; Complainant's Exhs. 20, 27; Respondents' Exhs. 9, 10, 35)

28.  On or about March 29, 2018, Complainant filed a complaint with Respondent NYDOS' inspector general's office, alleging that Herman did not properly investigate her April 2017 complaint.  (Tr. 76, 78-79, 780, 876, 882; Complainant's Exh. 2; Respondents' Exh. 23, 24)

29.  On or about April 6, 2018, the inspector general's office advised Complainant that her complaint about Herman would be referred to the Governor's office of employee relations ("GOER").  (Tr. 81, 83; Complainant's Exh. 2)

30.  On April 21, 2018, Respondent NYSAC held an event at the Barclay's Center in Brooklyn, New York.  (Tr. 100, 102, 2029; Respondents' Exh. 12)

31.  Complainant was assigned boxer Gervonta Davis.  (Tr. 100, 103-04, 110, 411, 2029-30)

32.  Prior to the event, police advised Respondent NYSAC that there were criminal groups associated with the Davis fight, conflict between the groups had been attributed to shootings and a double homicide, and there was a risk of further violence at the event.  (Tr. 100, 180, 2030-34, 2238-39, 2241, 2244, 2251; Complainant's Exhs. 4, 52, 54; Respondents' Exh. 11)

33.  On April 21, 2018, Sumbler held a pre-fight staff meeting, at which Complainant was present.  Sumbler advised that there would be heightened security measures for the event, including Barclay's security personnel outside of each locker room "because boxers were making threats against each other online" and they had "known gang affiliations."  (Tr. 109-10,

- 7 -

259-60, 1175-77, 1653, 2034-35, 2043-44, 2051; Complainant's Exhs. 4, 13, p. 50; Complainant Exh. 21, pp. 47-50, 63; Respondents' Exh. 26)

34. At the pre-fight meeting, Sumbler told inspectors that only the boxer, the individuals named on their camp list, and two additional people were allowed in the locker room, "without exception," and inspectors should ask for the help of Barclay's security's team with any concerns in the locker room. (Tr. 133, 2043-44; Complainant's Exhs. 4, 13 pp. 46, 118; Complainant's Exh. 52; Respondents' Exhs. 5, 26)

35. If there were too many people in the locker room, inspectors were to approach security personnel and "tell them these are the people allowed in here, these people have to go." (Tr. 2240; Complainant's Exh. 13, p. 132; Complainant's Exh. 21, p. 68)

36. Before Davis' fight, Sumbler provided Complainant with the names of those on Davis' camp list, including family members, who were allowed in his locker room. (Tr. 110, 1177, 2044-45; Complainant's Exh. 4)

37. While Complainant served as an inspector in Davis' locker room, dozens of unauthorized people entered who Complainant believed were not permitted to be there. (Tr. 117, 119, 308-13, 1177-79; Complainant's Exh. 9)

38. Complainant did not try to find out who they were, even though she was responsible for doing so. (Tr. 1178-79; Complainant's Exh. 20, p. 75)

39. Complainant asked people to leave generally and many left. At least four remained who Complainant knew were unauthorized. (Tr. 119, 128)

40. When Complainant advised the remaining individuals that they could not be in the room, they did not respond to her or leave. (Tr. 128-29)

41. She did not seek help from Barclay's security with the locker room. (Tr. 1184-85)

- 8 -

42. Complainant was authorized to have individuals removed from the locker room by security personnel and should have done so. (Tr. 2339; Complainant's Exh. 13, pp. 162-63)

43. At some point, Complainant left the room to assist another inspector. Complainant then saw a deputy commissioner and requested his help with the locker room. He told her to inform security personnel. (Tr. 150-53, 356-57, 1655; Complainant's Exh. 21 p. 22, 43)

44. Another deputy commissioner, Ed Kunkle, saw more people in the locker room than allowed. Kunkle found Complainant and told her there were too many people in the room. She replied, "I know." (Tr. 396; Complainant's Exh. 13, pp. 69, 80; Respondents' Exh. 5)

45. After Kunkle advised Sumbler of the situation, Sumbler entered the locker room and asked Complainant who the individuals were. Complainant replied that she did not know. (Tr. 1183-84, 2046-48; Respondents' Exh. 5)

46. Sumbler then asked them who they were, confirmed they were not authorized, explained they could not remain, and they left. (Tr. 145-47, 2046, 2048; Complainant's Exh. 53)

47. After the event, on Complainant's event performance review, Sumbler indicated "possible break of protocol – investigation to follow." (Respondents' Exh. 28)

48. After the event, Sumbler learned the individuals in the locker room were the ones police believed were associated with violent criminal activity. (Complainant's Exh. 4)

49. On April 22, 2018, Sumbler spoke with Leary regarding protocol breaches by inspectors at the prior day's event, without mentioning them by name. Leary asked her to prepare memoranda describing the breaches for Fitzgerald to review. (Tr. 2062, 2235-36, 2242-45)

50. On April 22, 2018, Sumbler communicated with Barclay's to see if Complainant sought help from its security personnel. Barclay's confirmed that she had not. (Respondents' Exh. 3)

51. On April 23, 2018, Sumbler drafted memoranda to Fitzgerald describing the protocol breaches committed by inspectors, identifying Complainant and another inspector, Jim Hayes. (Tr. 2249, 2251-55; Complainant's Exh. 4; Respondents' Exh. 38)

52. Hayes is a White male. (Tr. 2192)

53. On April 24, 2018, Leary followed up with Sumbler to obtain other information for Fitzgerald including whether Complainant attended the pre-fight meeting, what was said at the meeting, and whether Barclay's security confirmed that Complainant had not sought their help with removing individuals from the locker room. (Tr. 2250-2253; Respondents' Exhs. 36, 37)

54. On April 24, 2018, Sumbler recommended to Fitzgerald that Complainant's employment be terminated because Complainant committed serious protocol breaches by failing to adequately monitor and secure the locker room. (Tr. 96, 98, 2028-29, 2049-52 2061-62, 2064, 2233-35, 2238, 2246, 2249-50; Complainant's Exhs. 4, 12, 15; Respondents' Exhs. 1, 2, 3, 25, 26, 36, 37)

55. Sumbler also recommended to Fitzgerald that Hayes' employment be terminated because he breached protocol by eating in the locker room, losing a glove, and leaving the locker room. Respondent NYDOS terminated Hayes' employment. (Tr. 2063-64, 2254-55; Complainant's Exh. 21 p. 56; Respondents' Exh. 38)

56. Respondent NYDOS routinely terminates inspectors' employment when they commit minor violations of Respondent NYSAC's protocols, such as arriving late, taking a photograph with an athlete, failing to take an athlete to a physical, and accepting a t-shirt. (Tr. 1876-80, 1665, 2065, 2255-57; Respondents' Exh. 13)

57. Fitzgerald decided to terminate Complainant's employment because more people accessed the locker room than allowed, Complainant could not provide specific information to

- 10 -

Sumbler when asked about the individuals' identities, and Complainant failed to follow protocol by not utilizing security personnel. (Tr. 1418, 2333-34, 2336, 2341)

58. On April 25, 2018, at Fitzgerald's direction, Respondent NYDOS terminated Complainant's employment. (Tr. 71-73, 87, 95-96, 431, 439, 1418, 1420, 2064; Complainant's Exh. 1)

59. On December 24, 2018, GOER informed Complainant that it did not substantiate her April 6, 2018, complaint against Herman. (Tr. 367; Complainant's Exh. 11)

### OPINION AND DECISION

A complaint under N.Y. Exec. Law, art. 15 ("Human Rights Law") must be filed within one year after the alleged unlawful discriminatory practice. Human Rights Law § 297.5.[1] This provision acts as a mandatory statute of limitations in these proceedings. *See Murphy v. Kirkland*, 88 A.D.3d 267, 273, 928 N.Y.S.2d 333, 337 (2d Dept. 2011). Complainant filed this complaint on May 7, 2018. Thus, any allegation of discrimination prior to May 7, 2017, is untimely unless it is part of a continuing violation.

Complainant makes a hostile work environment claim related to age, race, and sex, which is subject to the one-year statute of limitations. Under the "continuing violation" doctrine, a series of violations may be considered timely for a hostile work environment claim so long as one of the related, discriminatory acts occurred within the statute of limitations. *Lozada v. Elmont Hook & Ladder Co. No. 1*, 151 A.D.3d 860, 861-62, 54 N.Y.S.3d 688, 689-90 (2d Dept. 2017). "[A] continuing violation may be found where there is proof of specific ongoing

---

[1] Effective August 12, 2020, pursuant to Human Rights Law § 297.5, in cases of sexual harassment in employment, any complaint must be filed within three years after the alleged unlawful discriminatory practices. As Complainant's sexual harassment claims relate to conduct prior to August 2020, the amendment is therefore inapplicable.

- 11 -

discriminatory policies or practices, or where specific and related instances of discrimination are permitted . . . to continue unremedied for so long as to amount to a discriminatory policy or practice." *Clark v. State of New York*, 302 A.D.2d 942, 945, 754 N.Y.S.2d 814, 817 (4th Dept. 2003) (citation omitted).

The alleged discriminatory acts occurring within the statutory period are Complainant's termination from employment, Sumbler's October 2017 comment that Complainant "failed to show up" at the symposium, and Vazquez's November 2017 comments that Complainant was a "snitch" and a "liar."

Termination from employment is a discrete act and cannot be used in the context of a hostile work environment claim to pull in time-barred allegedly discriminatory acts. *See Alston v. Microsoft Corp.*, 2009 WL 1116360, *7 (S.D.N.Y. Apr. 27, 2009). Complainant must show that Sumbler and Vazquez's comments relate to the prior allegedly discriminatory incidents to invoke the continuous violation doctrine. *E.g., Lozada*, 151 A.D.3d at 862, 54 N.Y.S.3d at 690.

Most of the incidents cited by Complainant cannot be considered. Complainant claims she received less prestigious assignments in 2015 and 2016 and was not promoted to deputy commissioner between 2016 and March 2017. Assignments and promotions are discrete acts that must be the subject of a complaint filed within the statutory period and cannot form the basis for finding a continuing violation. *See Kumaga v. New York City School Const. Authority*, 27 Misc.3d 1207(A), 910 N.Y.S.2d 405 (Table) (Sup. Ct. N.Y. Co. Apr. 2, 2010) (citations omitted). Complainant does not claim other deputy commissioners were hired or that she was given less prestigious assignments within the statutory period.

Complainant's sexual harassment claim regarding Respondent Giardina's attempt to hug her in March 2017 also cannot be considered. *E.g., Sculerati v. New York University*, 2003 N.Y.

Slip Op. 50928(U), 2003 WL 21262371, *5 (Sup. Ct. N.Y. Co. 2003). Complainant does not allege she experienced any sexual harassment within the statutory period.

Complainant did not show that either Leary's 2015 letter or Leary and Respondent Giardina's concerns about the March 2017 Jacobs fight are sufficiently similar to Sumbler and Vazquez's comments to support concluding they were part of a single discriminatory practice. *E.g., J.S.M. v. City of Albany Department of General Services*, --- N.Y.S.3d ----, 2024 WL 1846567, *11, 2024 N.Y. Slip Op. 24126 (Sup. Ct. Albany Co. Jan. 25, 2024). Leary and Respondent Giardina's conflicts of interest concerns are unlike Sumbler and Vazquez's comments; they were separate and unrelated incidents. *E.g., Mario v. New York State Division of Human Rights*, 200 A.D.3d 1591, 161 N.Y.S.3d 532, 534 (4th Dept. 2021). Complainant's examples involve different coworkers purportedly engaging in harassing conduct under different circumstances. *See Pichardo v. Carmine's Broadway Feast Inc.*, 199 A.D.3d 593, 159 N.Y.S.3d 12, 14 (1st Dept. 2021).

All the alleged conduct prior to May 7, 2017, is untimely, involved different events and actors, occurring months and years apart, and Complainant has not established that they are sufficiently related to invoke the continuing violation doctrine. *E.g., Campbell v. New York City Department of Education*, 200 A.D.3d 488, 160 N.Y.S.3d 12, 13 (1st Dept. 2021).

For claims accruing prior to October 11, 2019, in order to establish a hostile work environment claim under Human Rights Law § 296.1(a), Complainant must show that the workplace was permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive[2] to alter the conditions of the victim's employment and create an

---

[2] Effective October 11, 2019, Human Rights Law § 296.1(h) amended the definition of harassment and the standard applied to such claims. "Harassment is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment because of the individual's

- 13 -

abusive work environment. *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 310, 786 N.Y.S.2d 382, 394 (2004) (quoting *Harris v. Forklift Sys., Inc.* 510 U.S. 17, 21, 114 S.Ct. 367 (1993)). Whether an environment is hostile or abusive can be determined only by looking at all the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive." *Id.* at 311 (quoting *Harris,* at 23). "Moreover, the conduct must both have altered the conditions of the victim's employment by being subjectively perceived as abusive by the plaintiff and have created an objectively hostile or abusive environment--one that a reasonable person would find to be so." *Id.* at 311, 786 N.Y.S.2d at 395 (quoting *Harris,* at 21). Complainant must show that the discriminatory conduct occurred because of her protected class membership. *See Arcuri v. Kirkland,* 113 A.D.3d 912, 914, 978 N.Y.S.2d 439, 441 (3d Dept. 2014).

Complainant failed to establish that she was subjected to a hostile work environment based on age, race, or sex. Complainant did not show that the fall 2017 comments were made because of her age, race, or sex. The comments also fail to rise to the level of severe or pervasive to qualify as "harassment" under the Human Rights Law. *See Rosario v. New York State Unified Court System*, DHR Case No. 10200965 (May 5, 2023). The remarks were mere offensive utterances, not sufficiently hostile or abusive so as to establish a hostile work environment. *See Forrest,* 3 N.Y.3d at 311, 786 N.Y.S.2d at 395; *Kelso v. SSM&RC, Inc.,* DHR

---

membership in one or more . . . protected categories." *Id.* This is so "regardless of whether such harassment would be considered severe or pervasive under precedent applied to harassment claims." *Id.* Because the allegations of this complaint occurred before October 11, 2019, the amendment is not applicable to this case.

Case No. 10208008 (June 24, 2022). This claim is dismissed.

It is unlawful for an employer to discriminate against an employee on the basis of age, race, or sex. Human Rights Law § 296.1(a). To make out a prima facie case of unlawful discrimination in employment, Complainant must show that (1) she is a member of a protected class, (2) she was qualified for the position, (3) she suffered an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination. *Forrest*, 3 N.Y.3d at 305, 786 N.Y.S.2d at 390 (citing *Ferrante v. Am. Lung Ass'n*, 90 N.Y.2d 623, 629, 665 N.Y.S.2d 25, 29 (1997)).

If Complainant makes out a prima facie case of unlawful discrimination, the burden shifts to Respondents to articulate a legitimate, independent, and non-discriminatory reason for their actions. *Id.* If Respondents do so, Complainant must show that the reasons presented by Respondents were merely a pretext for the unlawful discrimination by demonstrating both that Respondents' stated reasons were false and that the real reason was unlawful discrimination. *Id.* at 305, 786 N.Y.S.2d at 391. The "burden of persuasion of the ultimate issue of discrimination always remains" with Complainant. *Stephenson v. Hotel Empls. and Rest. Empls. Union Local 100 of the AFL-CIO*, 6 N.Y.3d 265, 271, 811 N.Y.S.2d 633, 636 (2006).

Complainant established a prima facie case as to race and sex, but not as to age. Complainant is a member of a protected classes based on her age (over 18), race (African American), and sex (female). Complainant was qualified for her position as an inspector, a position she held for years. Complainant suffered an adverse employment action when Respondents terminated her employment.

There is no evidence regarding age other than Complainant's testimony about when she was born. This is insufficient to infer discrimination. Complainant was the only African

- 15 -

American female inspector and her employment ended suddenly after many years of service. Under these circumstances, her termination from employment gives rise to an inference of discrimination based on race and sex. Complainant established a prima facie case of unlawful discrimination based on race and sex—a burden described as "de minimis." *See Schwaller v. Squire Sanders & Dempsey*, 249 A.D.2d 195, 671 N.Y.S.2d 759, 761 (1st Dept. 1998).

Respondents articulated a legitimate, independent, and non-discriminatory reason for their actions. Respondents' burden here is one of production only; it does not involve any evaluation of credibility. *See Stephenson* at 270-71, 811 N.Y.S.2d at 636 (citing *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).

Respondents stated that their protocol required inspectors to restrict access to an athlete's locker room. Respondents observed that Complainant did not restrict access to her athlete's locker room, despite her knowledge of the protocol. Respondents stated they terminated Complainant's employment because she did not follow their protocol. Complainant's duties as an inspector included limiting access to the locker room to authorized persons only. While Complainant was assigned to Davis, there were people in his locker room that she knew should not have been there, she was supposed to seek help from security personnel, and did not do so. Respondents' given reasons satisfied their burden.

Complainant failed to establish that Respondents' stated reasons were a pretext for unlawful discrimination. Complainant's termination from employment occurred after an event in which there were breaches of protocol by her and another White male inspector. Both Complainant and the White male inspector's employment was terminated for their protocol breaches. Respondents' termination of Complainant's employment was a markedly severe consequence after her years of service as an inspector. But there are no facts that can be

stretched to indicate Respondents held any discriminatory animus. It is not the role of the ALJ to second guess otherwise nondiscriminatory personnel decisions, however unfair they may seem. *See David v. Children's Village*, 132 Fed. Appx. 872, 873-74, 2005 WL 1220129 (2d Cir. 2005); *Mott v. New York City Housing Development Corp.*, 2011 WL 167836, *4 (S.D.N.Y. Jan 18, 2011) (stating in Human Rights Law analysis, some facts supported that "termination was unfair and that the criticisms of [plaintiff's] job performance were unfounded, but it is not my role to second guess an employer's personnel decisions, even if foolish, so long as they are non-discriminatory").

Human Rights Law § 296.7 makes it an "unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate against any person" who has opposed discriminatory practices. To make out a prima facie case of retaliation, Complainant must show that (1) she engaged in activity protected by the Human Rights Law, (2) Respondents were aware that Complainant participated in the protected activity, (3) she suffered an adverse employment action, and (4) there is a causal connection between the protected activity and the adverse employment action. *See Adeniran v. State of New York*, 106 A.D.3d 844, 965 N.Y.S.2d 163 (2d Dept. 2013).

If Complainant makes out a prima facie case of retaliation, the burden shifts to Respondents to articulate a legitimate, independent, and non-discriminatory reason for their actions. If Respondents do so, Complainant must show that the reasons presented by Respondents were merely a pretext for discrimination. *Id.* at 845, 965 N.Y.S.2d at 165.

Complainant established a prima facie case of retaliation. Complainant often engaged in protected activity of which Respondents were well-aware. Complainant suffered an adverse action when her employment was terminated. Her termination on April 25, 2018, was less than

- 17 -

one month after she made her March 29, 2018, complaint. A one-month period is sufficient to infer a causal connection between her protected activity and her termination from employment. *See Calhoun v. County of Herkimer,* 114 A.D.3d 1304, 1307, 980 N.Y.S.2d 664, 667 (4th Dept. 2014).

Respondents articulated legitimate, non-discriminatory reasons for their actions. Respondents emphasized their protocol to inspectors at the pre-fight meeting that unauthorized persons were not permitted in an athlete's locker room. Respondents stated they elected to terminate her employment for breaching their protocol because Complainant knew her athlete's locker room contained unauthorized individuals and she did not attempt to discern who they were or seek assistance when they refused to leave. There was ample evidence Complainant was aware of the protocol and did not follow it when there were unauthorized persons in the locker room. Respondents raised their concerns at the event and immediately thereafter.

Complainant has not shown Respondents' reasons to be a pretext for unlawful discrimination. Other inspectors also had their employment terminated by Respondents when they committed minor breaches of protocol. This claim is dismissed.

During the public hearing, ALJ Erazo denied Complainant's motion to amend the complaint to include additional allegations related to Respondents' conduct, all of which occurred after the filing of the complaint through May 2022. (Tr. 1015-20, 1138; ALJ's Exhs. 7, 8). The conduct alleged did not relate back to the filing of the original complaint. *See* CPLR 203(f).

Complainant's post-hearing motion to amend the complaint to name Sumbler, Leary, and Baldwin as Respondents is denied as untimely and moot.

- 18 -

## **ORDER**

On the basis of the foregoing Findings of Fact, Opinion and Decision, and pursuant to the

provisions of the Human Rights Law and the Division's Rules of Practice, it is hereby

ORDERED, that the case is dismissed.

DATED:  June 13, 2024
        Bronx, New York

Sharon A. Sorkin
Administrative Law Judge

- 19 -