# EXHIBIT H

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
DOROTHEA  PERRY, JEAN SEME individually on
their own behalf and on behalf of similarly situated
former and current employees,

                    Plaintiffs,
          -v.-


NEW YORK STATE ATHLETIC COMMISSION,
KIM SUMBLER, EXEC, DIR., NEW YORK STATE
DEPARTMENT OF STATE and ANTHONY GIARDINA,

              Defendants.
----------------------------------------------------------------------X

INDEX NO. 21 cv 1967

**AMENDED COMPLAINT**

A COLLECTIVE ACTION
Pursuant tUSC §216(b)
and ACTION Pursuant to
42 USC §1981, §1983

Jury Trial Demanded

Plaintiffs Dorothea Perry and Jean Seme (collectively "Plaintiffs"), individually on their own behalf and on behalf of all other similarly situated former and current New York State Athletic Commission ("NYSAC") Inspectors and at-will employees, by and through their attorney, Susan Ghim, Law Office of Susan Ghim, complaining of NYSAC, Kim Sumbler, individually and as Executive Director of NYSAC, Anthony Giardina, individually and as former acting Executive Director of NYSAC allege as follows:

**NATURE OF THE ACTION**

1.    Plaintiffs Dorothea Perry and Jean Seme ("Plaintiffs") bring this action individually on their own behalf and behalf of all other similarly situated former and current employees ("Collective Plaintiffs") pursuant to FLSA, 29 USC 216(b) and 29 U.S.C.§§ 201 et. seq. to remedy violations of the minimum wage-and-hour provisions of the FLSA by Defendants NYSAC, Kim Sumbler and Anthony Giardina (collectively, "Defendants") who enacted and enforced policies and practices of willful and unlawful non-payment or wages and/or non-payment of employees' earned minimum wages for all hours worked in a forty (40) hour work week and applicable

1

overtime wages for any hours worked past forty (40) hours in a work week.  Defendants willfully failed and deprived Plaintiffs of proper meal time/restroom breaks during their workshifts. Plaintiffs were required to arrive ahead of their work shift for possible availability of sandwiches which they were required to eat outside in a parking lot where trucks idled and produced overwhelming diesel fumes.   At no relevant time were Plaintiffs provided a proper break room pursuant to FLSA, NYLL and OSHA. Defendants engaged in their unlawful conduct pursuant to an employment policy of inhuman treatment of inspectors, abusing their office to oppress inspectors with the threat of discharge and retaliation, minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.  Defendants' conduct extended beyond Plaintiffs Perry and Seme to all other similarly situated employees.  At all relevant times, Governor Andrew Cuomo who appointed the executive directors of NYSAC was aware of these substandard and indecent work conditions for inspectors.  To date, Governor Cuomo's office of employee relations has remained silent, indifferent and ineffective regarding inspectors' terms and conditions of employment.  Each time Plaintiff Perry and Plaintiff Seme complained to the affirmative action office or the inspector general's office, both Plaintiffs were met with silence and thereafter, a pretextual discharge.

2.      Plaintiffs also bring an action under 42 USC §1981, §1983 for racial animus based fraudulent and pretextual discharge; failure to promote; denial of employment opportunities; hostile work environment; interference and obstruction by NYSAC executive director Defendant Kim Sumbler, a Gov. Cuomo appointee, of Plaintiffs' rights to be lawfully and peacefully present at places of public accommodations; the weaponization of police by Defendant Sumbler with a false allegation of a criminal act against Plaintiff Seme, a Black American man; Defendant Sumbler's arbitrary and capricious denial of Plaintiff Seme's NYSAC trainer license renewal; and

2

further deprivation of rights, privileges and immunities enjoyed by white persons under the U.S. and state Constitution and laws.

3.    Plaintiffs Perry and Seme seek compensation for Defendants' failure to pay applicable overtime wages back pay for retaliatory termination, liquidated damages, penalties, compensatory damages, pre-judgment and post-judgment interest, and attorneys' fees and costs, pursuant to the FLSA and NYLL.  Plaintiffs Perry and Seme further seek section 45 USC 1981 and 1983 damages including but not limited to compensatory and punitive damages as well as a declaratory order finding Defendants engaged in racially discriminatory policies and practices and abuse of their office and to enjoin Defendants from this pattern and practice of conduct.

4.    On behalf of collect plaintiffs, Plaintiffs Perry and Seme seek damages for unpaid wages, unpaid minimum wages and any applicable unpaid overtime wages, liquidated damages, penalties, prejudgment interest, attorneys fees and costs pursuant to FLSA 29 USC §201 et seq.

5.    All Plaintiffs seek an order to declare that Defendants violated the FLSA and NYLL and enjoin Defendants from those unlawful practices, policies and conduct and order Defendants to provide all Plaintiffs with proper, timely and lawful wages, workshift breaks and proper work break areas.

## **JURISDICTION AND VENUE**

6.    This Court has original jurisdiction over this action pursuant to 28 USC §1331, §1337, 29 USC §216 (b), (c),§ 217; 45 USC §1981 and §1983.

7.    This Court has supplemental jurisdiction over the New York state law claims under the 28 USC §1367(a).

8.      Venue in this district is proper under 28 USC §1391 NYSAC is headquartered at 123 Williams Street, New York, NY and all or a substantial part of the events or omissions giving rise to the claims occurred in this district.

## The Parties and Factual Allegations

**Plaintiff Dorothea Perry**

9.      Plaintiff Dorothea Perry ("Perry") commenced her employment as a boxing inspector on or about 2004.  Plaintiff was employed by Defendant Corporation within the meaning of FLSA 29 USC §201 et seq. NYLL §§ 2 and 651.

10.     During the relevant time period of Plaintiff Perry's employment with NYSAC to date, Plaintiff Perry was a New York City resident.

11.     On or about 2004, Plaintiff Perry was recommended for the inspector position by black boxers who appreciated and requested her advocacy regarding the terms and conditions of the boxer's training at NYSAC facilities and performance event spaces that impacted their health welfare and safety.

12.     During her fourteen (14) years of employment as an inspector with NYSAC, Plaintiff Dorothea Perry was the only black female inspector at NYSAC.

13.     During Plaintiff's employment at NYSAC, Ms. Perry was willfully denied timely payment of her earned minimum wages for work performed within a 40 hour workweek pursuant to the FLSA 29 USC §201 et seq. and NYLL §650 et seq.  Ms. Perry was also denied breaks during her workshift and a proper break room for meals.  Ms. Perry was required to arrive prior to her shift and if sandwiches were made available, Ms. Perry was required to eat in the parking lot where numerous trucks idled and produced overwhelming diesel fumes.  Ms. Perry suffered repeated retaliation for making complaints to management regarding the terms and conditions of her and

other inspectors' employment with NYSAC.    Ms. Perry was denied promotions, denied opportunities to become a NYS boxing judge and ultimately discharged based on false pretexts.

14.    Despite recommendations by superiors and exemplary work performance, Ms. Perry was repeatedly denied promotions.  One male, non-black inspector who was promoted over Ms. Perry lacked experience and credentials and was not required to submit a performance evaluation as Ms. Perry was required to do for consideration for the promotion.

15.    On or about April 25, 2018, Plaintiff Perry was terminated in retaliation for making a complaint to the NYS Inspector General's office about gender and race based discrimination against her by Defendant Giardina and Sumbler.

16.     Approximately one month after Plaintiff Perry's discharge, pursuant to an internal memorandum dated on or about May 2018, drafted by Defendant Sumbler, Defendant Sumbler based Plaintiff Perry's termination on the false pretext that Plaintiff Perry violated safety protocols at an event that Sumbler  expressly admitted  she had arbitrarily "immediately" before the subject event started without any prior notice whatsoever.

17.    Through on or about 2017, Defendant Anthony Giardina, motivated by racial and gender animus toward Plaintiff Perry interfered with her promotions to Deputy Commissioner and repeatedly demeaned and harassed her by ordering Plaintiff Perry to "sit in the back" boxing events when he knew Plaintiff Perry as an Inspector needed to be ringside.

**Plaintiff Jean Seme**

18.    Plaintiff Jean Seme, ("Seme") was an at-will NYSAC Inspector employee from on or about 2015 through on or about March 17, 2017.   Plaintiff Seme was recommended for hire by a black boxer.  Plaintiff Seme is a black American man.  At all relevant times, Plaintiff was employed by Defendant Corporation within the meaning of FLSA 29 USC §201 et seq. NYLL §§ 2 and 651

5

19.     During Plaintiff Seme's employment with NYSAC, he was a resident of New York City. Currently, Plaintiff Seme is a resident of Texas.

20.     During all relevant times of his employment, Plaintiff Seme was willfully denied his earned lawful minimum wage, spread of hours pay and applicable overtime wages and breaks during any work shift.

21.     On or about March 17, 2017 Defendant Sumbler terminated Plaintiff Seme based on an outrageously and patently false pretext that he "threatened to blow up the building."  Plaintiff Seme did not at any relevant time make that statement or any other remotely similar statement.  Based on Defendant Sumbler's lie about Plaintiff Seme and at the behest of Defendant Sumbler, NYST Sands appeared at the home of Plaintiff Seme with another unidentified NYST Doe on several occasions commencing on or about March 17, 2017.

22.     During the first encounter, on or about March 17, 2017, NYST Sands stated to Plaintiff Seme, "Kim Sumbler said you were going to blow up the building."   Plaintiff Seme was shocked, intimidated and terrorized with the prospect of arrest or criminal charges based on this outrageously false allegation by Defendant Kim Sumbler.

23.     On two more occasions thereafter, during the remainder of 2017, NYST Sands returned to the residence of Plaintiff Seme to intimidate, coerce and harass Plaintiff Seme to falsely implicate himself for a "threat" he never made.  These visits NYST Sands were made at the behest of Defendant Sumbler.   Plaintiff Seme had made a written complaint to NYSAC about the March 17, 2017 incident.  Rather than investigating, this complaint, Gov. Cuomo's office of the inspector general ignored the complaint.  Instead, at the behest of Defendant Sumbler,  NYSTs returned to Plaintiff Seme's home in retaliation for his complaint to intimidate, coerce and force Plaintiff Seme to withdraw the complaint against them and Sumbler.

24.     NYST Sands also made at least four separate phone calls to Plaintiff Seme's mother's cell phone.  Only NYSAC had Plaintiff's mother's cell phone on file as an emergency contact.  NYST Sands caused severe fright and terrorized Plaintiff Seme's mother with threats of state or police action against her innocent son Plaintiff Seme.

25.     Thereafter, each time Plaintiff Seme unknowingly but lawfully and peacefully present at a place of public accommodations where Kim Sumbler was present, Defendant Sumbler caused security to eject him from the premises.   Defendant Sumbler purposely intimidated, harassed, embarrassed, humiliated and de-humanized Plaintiff Seme.

26.     On or about April 2018, Defendant Sumbler arbitrarily and capriciously denied renewal of Plaintiff Seme's boxer training license.  Approximately 50 years after the decision in Ali v. State Athletic Commission where this court found that NYSAC arbitrarily and capriciously denied professional boxer Muhammed Ali aka Cassius Clay a boxing license, Defendant Sumbler defied this court's ruling. *See, Ali v. Division of State Athletic Commission of the Department of State*, 316 F.Supp. 1246 (SDNY 1970) Moreover, NYSAC's discriminatory policies have not changed in compliance with this court's ruling over 50 years ago.  In Ali v. SAC, this court found an underlying racially discriminatory practice where black boxer Muhammed Ali was denied a boxer's license for alleged war draft evasion charges against Muhammed Ali in Texas. *Id at 1253*. (This Court determined, "Defendants [NYSAC] have offered no evidence tending to refute or rebut the overwhelming and undisputed proof of arbitrary and capricious, and unfounded discrimination furnished by plaintiff [Ali]")  Id at 1252  In stark contrast, white boxers with serious criminal convictions such as rape, assault and other crimes of moral turpitude were granted their boxing license by NYSAC without question.  *Id at 1249, 1251, 1253*.  This Court ultimately held, " the Commission [NYSAC] denied Ali his right under the Fourteenth Amendment to equal protection

of the laws of the state of New York." *Id* at 1253   Without any criminal background or misconduct, Plaintiff Seme was denied a trainer's aka "seconds" license by NYSAC and Defendant Sumbler without any rational basis whatsoever.  Accordingly, NYSAC and Defendant Sumbler violated Plaintiff Seme's rights to equal protection under New York State law in violation of 42 USC §1981 and this Court's decision in Ali v. SAC.  *Id*.

**Collective Plaintiffs**

27.    Pursuant to 29 U.S.C. §§ 203, 206, 207 and 216(b) Plaintiffs Perry and Seme bring a collective action on behalf of similarly situated former and current employees.

28.    Collective FLSA Plaintiffs are similarly situated inspectors or at will employees of NYSAC who were not afforded the benefits of the NYS Civil Service Law (NYS CSL) or public or state employee union membership.  Collective Plaintiffs were at all relevant times willfully denied minimum wage, applicable overtime and breaks under FLSA 29 USC §201 et seq.  At all relevant times collective FLSA Plaintiffs earned a regular wage of approximately $12.50 for an 8 hour workshift.  Plaintiffs however, worked a regular shift of approximately 11 to 12 hours and were not paid any wages for approximately 3-4 hours of each of their shifts.

29.    Collective Plaintiffs of the Equal Rights Under Law, civil rights statute, 42 USC §1981, 1983 action are similarly situated black inspectors or at will employees who suffered under Defendants' racist policies and/or arbitrary and capricious practices by Defendant Sumbler such as termination under false pretext or denial of a license.

30.    The claims of Plaintiff Perry and Seme stated herein are similar to those of the other former and current employees as they were all subjected to Defendants' illegal policies including but not limited to misclassification of Plaintiffs as state employees when in fact, Plaintiffs and collective plaintiffs were not afforded the benefits of the civil service law or union membership; and denied

8

minimum wages, applicable spread of hours, overtime wages for actual overtime hours worked over forty(40) within a workweek. All plaintiffs were further denied breaks during their workshifts and a proper break room.

31.    The FLSA Collective Plaintiffs would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join in the present action. Those similarly situated employees are known to Defendants and are readily identifiable and locatable through their records. These similarly situated employees should be notified of and allowed to opt into this action, pursuant to 29 U.S.C. § 2l6(b)  The collective Plaintiffs continue to remain silent about their substandard terms and conditions of their employment to date, in abject fear of losing their employment, fear of retaliation and reprisals by Defendants for asserting their rights under the FLSA and NYLL.

32.    At all relevant times to date, all Plaintiffs were paid a flat daily / per event rate of $100 for an 8 hour shift.  Plaintiffs regularly worked a shift beginning at approximately 3pm to 1 – 2 am the next day.   Therefore, Defendants engaged in wage theft of every shift Plaintiffs worked. Plaintiff failed to pay any wages for 3 - 4 hours of work per shift actually worked by Plaintiffs and thereby fell below the prevailing minimum wage.  Defendants failed to pay Plaintiffs spread of hours pay or one additional hour of pay at the prevailing minimum wage rate.  Additionally, since on or about 2017 to date, all Plaintiffs' regular wage rate of 12.50 fell below, the minimum wage rate of $13.50 / 2017 and $15/2018 to date.

**Defendant New York State Athletic Commission (NYSAC)**

33.    Based upon information and belief, NYSAC is a subdivision of the New York State Department of State (NYS DOS).  NYSAC licenses boxers and has had a long history of racial discrimination against Black American Boxers that continues unabated to date**.** *See, e.g. Ali v.*

*Division of State Athletic Commission of the Department of State*, 316 F.Supp. 1246 (SDNY 1970)

Specifically, Plaintiff Seme's application for renewal of his boxing license that he paid a fee for

on or about April 2018 has remained ignored, and otherwise arbitrarily and capriciously denied.

*See, Id*. Plaintiff Seme and Plaintiff Perry further suffered interference with their constitutionally

protected rights as black American citizens that other white citizens enjoyed such as the right to

attend public sporting events at places of public accommodations. Defendant Sumbler, as

executive director of NYSAC, exceeding her authority and under color of law forcibly removed

or had Plaintiffs ejected from sporting events where Plaintiffs were lawfully present.

34. Based upon information and belief, NYSAC's purpose is commercial in nature as it earns

significant profits from tax and other fees from all of the spectator events that it hosts. NYSAC

hires at will employees, specifically to work at these events who are not afforded the protections

of civil service employees under NY civil service laws and their labor union representatives.

35. At all relevant times, NYSAC was an employer engaged in interstate commerce within the

meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a) and employed Plaintiffs within the meaning

of the FLSA.

36. Based upon information and belief, NYSAC does business nationally NYSAC hosts and

oversees spectator boxing, wrestling and mixed martial arts (MMA) events and gains substantial

revenues from these events. These events affect interstate commerce in that these events draw

large spectator crowds, vendors, boxing, wrestling, MMA and various other celebrities to the state

of New York. These events are also nationally broadcast on internet, cable and social media which

earns NYSAC global revenue such as fees from pay per view events.

37. Based upon information and belief, NYSAC has annual revenues far exceeding one million

dollars per annum to satisfy the interstate commerce jurisdictional requirement under FLSA §201

10

et seq.  NYSAC's annual gross volume of sales made, or business done, was not less than Five Hundred Thousand Dollars ($500,000.00) exclusive of sperate retail excise taxes, within the meaning of the FLSA, 29 U.S.C. § 203 (s)(1)(A)(ii).

38.    At all relevant times, NYSAC was a covered employer within the meaning of the FLSA, 29 U.S.C. §203(d), the NYLL §190, the N.Y. Executive Law § 292(5), and the N.Y Admin. Code. § 8-102(5).

39.    At all relevant times, Defendants maintained control, oversight, and direction over the Plaintiffs including timekeeping, payroll and other employment practices that applied to them.

**Individual Defendants**

**Kim Sumbler, Executive Director of NYSAC**

40.    Based upon information and belief, Kim Sumbler is a Canadian citizen and resident who was allowed preferential treatment by Governor Andrew Cuomo to become a NYS employee without fulfilling a residency requirement as all other NYSAC employees.  Defendant Sumbler was appointed as executive director of boxing and mixed martial arts (MMA) at NYSAC on or about 2017.

41.    Based upon information and belief, Defendant Sumbler had no prior experience with the professional sport of boxing yet was recklessly and intentionally named as director of boxing by Gov. Cuomo.  Based upon information and belief, the purpose or impact of Gov. Cuomo's appointment of Defendant Sumbler was to significantly decrease hosting boxing events thereby disenfranchising rising black boxers without the benefit of representation or promoters, in a predominantly black sport, and to increase MMA events with less rules of engagement, ergo inherently more dangerous for the purpose of generating revenues.

42.     At all relevant times, Defendant Sumbler maintained control, oversight, and direction over the Plaintiffs including timekeeping, payroll and other employment practices that applied to them.

43.     An internal office memorandum dated on or about May 2018 was written by Defendant Sumbler pertaining to the termination of Plaintiff Perry.  This document fully displayed her racial animus and bigotry against black Americans.  Sumbler stated in relevant part,

**"On the card, there were three athletes (Broner, Davis & Charlo) with known gang affiliations and famous artists (rappers), who were making threats to each other over social media leading up to the event."**

**"Immediately prior to the event…I informed all staff that contrary to normal procedures, that NYSAC would not permit any additional guests into the locker rooms…"**

**"I saw three large men…in addition to Gervonta Davis's (sic) camp, and guests…I asked them to leave…There were a few tense moments where they stared me down then eventually left without incident…they didn't belong…we were on heightened security alert because of the threats that were made…this breach of locker room access placed both Ed Kunkle and me in a very dangerous situation…Had Dorothea notified Security immediately…we would not have been put in harm's way."**

44.     On or about April 2018, Defendant Sumbler repeated to sports media that these three athletes had "gang affiliations."

45.     The three athletes referenced in the May 2018 memorandum were black boxers who in fact, did not have gang or rapper affiliations.

46.     The "three large men" referenced in the May 2018 memorandum were also black men" who Sumbler speciously stated, put her in a "very dangerous situation" when Sumbler stated in a previous clause that these "three large men"  who "didn't belong" and "left without incident. Moreover, Defendant Sumbler was in a supervisory role so if she believed she and deputy commissioner Ed Kunkle were in a "very dangerous situation" she should have believed that Ms. Perry was also in a "very dangerous situation" and acted in her supervisory role to resolve the "very dangerous situation."   At no relevant time were inspectors charged with security duties.

47.     Defendant Sumbler also instituted a racist, arbitrary and capricious policy at this event to check all Boxers' family's identification to make sure they were family members.

48.     The "threats that were made" were purportedly on social media that did not involve NYSAC, the subject boxers or the event.  Defendant Sumbler engaged in a pattern of placing black men in a criminal and violent light and under color of law deprived plaintiffs and black boxers of rights, immunities and privileges under the state and US constitution and laws.

49.     When a white boxer Connor MacGregor was accused of taking part in inciting a riot at an event on or about 2018, Defendant Sumbler was quoted in sports media as stating she would reserve comment until all the facts were in.

50.     At no relevant time was Ms. Perry or any of the inspectors charged with security duties or to notify security especially when security were the ones who allowed these individuals inside the locker room.

51.     Defendant Sumbler's dangerous actions on the night of the subject event on or about April 2018 underscored her racism that also motivated her dangerous actions under color of law against Plaintiff Seme.  Defendant Sumbler was aware of the consequences for black men when police were weaponized against them based on a false claim.  Defendant Sumbler exceeding her authority and/or under color of law, knowingly and falsely told NYST Sands on or about March 17, 2017 that Plaintiff Seme "threatened to blow up the building" in order to threaten, intimidate, cause foreseeable excessive force and bodily harm and the false arrest of Plaintiff Seme.  Throughout 2017, Defendant Sumbler similarly, under color of law threatened and intimidated Plaintiff Seme's mother with threats of police action and excessive force and bodily harm against her son, Plaintiff Seme.

**Defendant Anthony Giardina, NYSAC Commissioner through on or about 2017**

52.     Defendant Anthony Giardina was an interim Commissioner at NYSAC through on or about 2017.  Defendant Giardina and Sumbler's work as executive director overlap throughout the month of March 2017.  Defendant Giardina maintained control, oversight, and direction over the Plaintiffs including timekeeping, payroll and other employment practices applied to Plaintiffs from on or about 2015 through 2017.

53.     Defendant Giardina willfully and knowingly paid Plaintiffs less than minimum wage, applicable overtime, spread of hours pay and denied them any breaks during their work shift.

54.     During Plaintiff Perry's employment at NYSAC Defendant Giardina repeatedly ordered Plaintiff Perry to "sit in the back" when Defendant Giardina knew Plaintiff Perry needed to sit ringside as part of her duties as an Inspector.

55.     Defendant Giardina sexually harassed Plaintiff Perry in 2017 asking her for "a hug."

56.     Pursuant to FLSA, NYLL and New York State Business Corporation Law §630, Defendants Sumbler and Giardina officers and executives who are individually and personally liable for unpaid minimum wages, spread of hours pay and overtime wages of Plaintiffs Perry and Seme and Collective Plaintiffs.

57.     Defendants Sumbler and Giardina and are personally liable for the unpaid wages and other damages sought herein, pursuant to 29 U.S.C. § 203(d), NYLL § 2, N.Y. Executive Law § 296 (1)(a) and (6), and N.Y. Admin. Code § 8-107 (1) and (7)(v)

58.     At all relevant times throughout Plaintiffs' employment, Individual Defendants Sumbler and Giardina and Defendant NYSAC were joint employers of Plaintiffs, acted in the interest of each other with respect to employees and had common policies and practices as to wages and hours, pursuant to 29 CFR § 791 .2

59.    At all relevant times throughout Plaintiff's' employment, Individual Defendants Sumbler and Giardina had the discretionary power to create and enforce personnel decisions on behalf of Defendant NYSAC, including but not limited to: hiring and terminating at will inspector employees; setting and authorizing issuance of wages: maintaining employee records: setting Plaintiffs' and other employees' schedules; negotiating Plaintiffs' rate of pay; instructing, supervising and training Plaintiffs; and otherwise controlling the terms and conditions of employment for the Plaintiffs.

60.    At all relevant times throughout Plaintiffs' employment, Individual Defendants Sumbler and Giardina were actively involved in the day-to-day operations of  Defendant NYSAC by and through their supervisors, commissioners and deputy commissioners.

61.    At all relevant times, Plaintiffs were employed by Defendants within the meaning of FLSA 29 USC §201 et seq.

62.    Plaintiffs and Collective Plaintiffs were at all relevant times Inspectors for spectator events hosted by NYSAC.  Inspectors' duties were to assist boxers, wrestlers or MMA fighters through the event process to ensure that they are escorted throughout the event, from arrival to the event space, through departure from the event space, and to ensure that these athletes are properly tested and examined by NYSAC medical doctors after each event.   The Collective Plaintiffs also included any other at-will, non-civil service and non-union employees hired by NYSAC to work at these spectator events who were denied minimum wages and any applicable overtime wages.

63.    At all relevant times, Plaintiffs Perry and Seme and Collective Plaintiffs worked at least one (1) event per week and regularly worked all work weeks during any given year.  One event regularly started at or about 3pm on a given day and ended at or about 1AM to 2:30AM the following day.  None of the Inspector Plaintiffs were given any meal or restroom breaks during

15

their work shifts.  Before the start of an event, if NYSAC provided sandwiches to inspectors, inspectors were required to eat outside in the parking lot where truck's ran their engines and gas fumes were overwhelming.  Restroom breaks were given only if the Inspector Plaintiff was able to find a replacement for that short break.

64.     Since on or about January 2015 to date, All Plaintiffs' were continuously paid a flat rate of $100 per event / 8 hour workshift at 12.50 per hour.  Plaintiffs regularly worked a shift from at or about 3pm to 1-2am the following morning.   Accordingly, Defendants failed to pay Plaintiffs any wages at all for 3 to 4 hours of additional work actually performed by Plaintiffs per shift thereby falling below the prevailing minimum wage rate during any given year.

65.     Defendants also failed to pay spread of hours pay as all Plaintiffs worked more than 10 consecutive hours in a workshift / workday.  Defendants failed to pay one hour of additional pay at the minimum wage in addition to their regular wage / minimum wage whichever is higher.

66.     Pursuant to 29 CFR 778.5 and FLSA 29 USC 201 et seq., the higher state minimum wage applies in wage and hour lawsuits.  Because Plaintiffs worked within New York City (NYC) at all relevant times, Plaintiffs should have been paid the NYC minimum wage which were by December 31 of each year:   2015 / $10.50 per hour;  2016/ $12.00 ; 2017 / $13.50; 2018 / $15.

67.     Since on or about 2017 to date, Plaintiffs' regular wage rate of $12.50 for an 8 hour workshift, also fell below the prevailing minimum wage rate.

68.     In violation of FLSA and NYLL, Plaintiffs were not properly or timely paid their wages.  Despite submitting their timesheets after each event, Plaintiffs averaged approximately 1-2 months before they received their paycheck.  At all relevant times, there was no regular pay day and Plaintiffs' paystubs did not reflect hours worked.

69.     On or about January 2017, Plaintiff Seme complained to management regarding the long wait times to receive his paycheck.  Instead of prompt payment of his paycheck, Plaintiff Seme was terminated on or about March 17, 2017 based on false pretexts contrived by Defendant Giardina and Defendant Sumbler cause NYST Sands threaten use of police force against Plaintiff Seme and his residence.

70.     In violation of NYLL, rules and regulations and NYS Department of Labor Wage Order Plaintiffs Perry and Seme and Collective Plaintiffs who were manual laborers, were not paid on a weekly basis but instead were improperly paid on an arbitrary 1-2 month basis.

71.     Defendants failed to pay Plaintiffs Perry and Seme NYS Labor Law spread of hours pay which is one hour of minimum wage pay for any workday in which an employee works more than 10 consecutive hours.   Plaintiffs regularly worked 11 to 12 hours at any given event.

72.     Defendants failed to timely pay Plaintiffs.  Even if Plaintiffs submitted their timesheet at the end of an event, it took approximately 1 to 2 months to receive a paycheck based on that timesheet.  Under the NYS DOL's wage order, manual employees are must be paid on a designated pay day, on a weekly basis.

73.     Defendants willfully misclassified Plaintiffs as employees exempt from the New York State Department of Labor Wage Orders and the New York State Wage Theft Act solely based on NYSAC's status as a government entity.

74.     Based upon information and belief NYSAC, NYS DOS and Gov. Cuomo's office of employee relations were aware, at all relevant times that inspectors were not afforded the benefits of the NYS Wage Theft Act §650 et seq., the civil service laws, or union representation and were at-will employees improperly paid less than minimum wages.

17

75.     Based upon information and belief, NYSAC is a subdivision of New York State Department of State.  However, for the purposes of applying the New York State Labor Law ("NYLL) §650 et seq., to this action by Plaintiffs and collective Plaintiffs, NYSAC should not be considered a state office or subdivision.  *See, Grace Co. v. Univ. Constr. Fund,* 44 NY2d 84 (NY 1978).  Plaintiffs were at all relevant times at-will employees hired by NYSAC and were not afforded the benefit of membership in a public or state employee's labor union or civil service employees' laws.  Moreover, NYSAC is not a state office for the purposes of application of the NYLL, as its purpose was commercial in nature.  *See, Id*.  NYSAC hosts and oversees spectator boxing, wrestling and mixed martial arts (MMA) events and gains substantial tax and fee revenues from these events.  These events affect interstate commerce in that these events draw large spectator crowds, vendors, boxing, wrestling, MMA and various other celebrities and various media to the state of New York.  These events are also nationally broadcast on internet, cable and social media.  Therefore, New York State Labor Law should apply to Plaintiffs and Collective Plaintiffs.

76.     At all relevant times and throughout the course of Plaintiffs' employment, when they were require to work 4 events or more during a workweek or more than 40 hours within a workweek, Defendants willfully failed to may overtime wages and spread of hours pay.

77.     As a result of Defendants' actions, of willfully denying overtime wages to their employees and terminating some employees to avoid paying proper regular and overtime wages, Plaintiffs have suffered great hardship and damages as Defendants deprived all Plaintiffs of minimum, spread of hours and overtime wages. Defendants' actions of not permitting Plaintiffs' break times endangered their health welfare and safety.  The oppressive environment imposed upon its employees by Defendants caused them mental anguish, compensatory and punitive damages.

## FIRST CAUSE OF ACTION

**Violation of Fair Labor Standards Act – Unpaid Minimum and Overtime Wages**

**(Brought on Behalf of Plaintiff Perry and Seme and the Collective Action Members)**

78.    Plaintiffs Perry and Seme, individually on their own behalf and on behalf of the Collective Plaintiffs, repeat, reallege and incorporate by reference each and every allegation previously set forth as if fully set forth herein.

79.    Defendants throughout most, if not at all relevant times, of all Plaintiffs' employment period, paid all Plaintiffs in amounts below the applicable statutory minimum wage for their hours worked, in violation of the FLSA 29 USC § 206.

80.    Defendants had an unlawful policy and practice of concealing from all Plaintiffs their rights to minimum wages under civil service rules, or by union representation by informing Plaintiffs that they are at-will, "state employees." This policy and practice served to deny all Plaintiffs the benefits and protections under the FLSA, NYLL, Civil Service Laws or union collective bargaining agreements.

81.    The overtime wage provisions set forth in FLSA, 29 USC §201 *et seq*. and federal rules and regulations apply to Defendants and protect Plaintiffs and the Collective Plaintiffs.

82.    Whenever Plaintiffs and Collective Plaintiffs regularly worked hours in excess of forty (40) hours per work week or 4 or more events within a workweek, Defendants failed to pay the applicable overtime wages at one and one half times the NYC minimum wage rate.

83.    Defendants failed to keep proper and adequate wage notice, time and payroll records of all Plaintiffs in violation of the FLSA and NYLL.

84.    Defendants willfully failed to pay Plaintiffs and Collective Plaintiffs the appropriate overtime wages for all hours worked in excess of forty (40) hours per workweek, as required by the FLSA, 29 USC §201 *et seq*. and attendant federal rules and regulations.

85.    Pursuant to 29 CFR 778.5 and FLSA 29 USC 201 et seq., the higher state minimum wage applies in FLSA wage and hour lawsuits.  Because Plaintiffs worked within New York City (NYC) at all relevant times, Plaintiffs should have been afforded the benefit of NYC minimum wage which were by December 31 of year:  2015 / $10.50 per hour;  2016/ $12.00 ; 2017 / $13.50; 2018 / $15  Instead, Plaintiffs and Collective Plaintiffs were at all relevant times improperly paid flat $100 per event for an 8 hour work shift.  Accordingly, all Plaintiffs were paid a regular wage of $12.50 per hour based on an 8 hour workshift and Defendants failed to pay for 3-4 hours of wages that were actually worked by Plaintiffs for each work shift.

86.    Defendants' unlawful conduct as described in this Complaint was willful and intentional. Governor Cuomo signed the NYS Wage Theft Act §650 et seq. into law on or about 2012. Governor Cuomo's office of employee relations were aware that or should have been aware that NYSAC inspectors were hired as at will employees without the benefit of civil service laws or union representations and therefore should have been afforded the protections of this Act.

87.    Defendants, a subdivision of New York State Department State, with unlimited resources and regulatory power were aware or should have been aware that their practices were in violation of state and federal minimum and overtime wage laws, rules and regulations as detailed in this Complaint.

88.    Defendants knew or should have known that failing to provide breaks for Plaintiffs endangered their health and welfare.  Defendants have refused to reinstate Plaintiffs Perry and

Seme and refused to make a good faith effort to comply with the FLSA regarding compensation of minimum wages, spread of hours pay and overtime wages to Plaintiff and the FLSA Collective.

89.     Because of Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies pursuant to FLSA, 29 U.S.C § 255(a).  As a result of Defendants' willful violations of the FLSA, Plaintiffs Perry and Seme and the FLSA Collective Plaintiffs have been deprived of minimum wages, spread of hours pay and overtime compensation in amounts to be determined at the time trial, and are entitled to recovery of such amounts and liquidated damages, pre-judgment interest, attorney's fees, costs and other compensation pursuant to 29 USC 201 et seq.

90.     As a result of the Defendants' violations of the FLSA, Plaintiffs, and the Collective Action members have suffered damages by being denied wages at or exceeding the statutory minimum in accordance with the FLSA in amounts to be determined at trial and are thus entitled to recovery of such amounts, liquidated damages, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216 (b).

## SECOND CAUSE OF ACTION

**Violation of New York Labor Law – Unpaid Minimum Wage, Spread of Hours Pay and Overtime Wage**

91.     Plaintiffs Perry and Seme repeat, reallege and incorporate by reference each and every allegation previously set forth as if fully set forth herein.

92.     At all times relevant to this action, Plaintiffs Perry and Seme (collectively, "Plaintiffs") were employed by Defendants within the meaning of NYLL §651 et seq and 12 NYCRR §142-2.2 and Part 146-1.2.

21

93.     Defendants' failure to pay Plaintiffs the minimum wage lacked a good faith basis within the meaning of NYLL §663

94.     Pursuant to New York Labor Law Article 19, §663 (3), the statute of limitations of six (6) years further applies to all causes of action beyond the FLSA two (2) or three (3) years statute of limitations period.  29 U.S.C § 255(a).

95.     Defendants failed to pay Plaintiffs the overtime premium of one and one-half times the regular hourly rate of pay for all of their overtime hours worked, in violation of the NYLL, rules and regulations.

96.     Through their knowing or intentional failure to pay Plaintiffs overtime wages for hours worked in excess of 40 hours per workweek, Defendants have willfully violated the NYLL, Article 19,§§ 650 et seq., and attendant New York State Department of Labor  Rules, Regulations and wage orders.

97.     Due to Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs and pre-judgment and post- judgment interest.

**THIRD CAUSE OF ACTION**

**New York Labor Law – Failure to Provide Accurate Wage Statements**

98.     Plaintiffs repeat, reallege and incorporate by reference each and every allegation previously set forth as if fully set forth herein.

99.     Defendants have failed to provide Plaintiffs with complete and accurate wage statements throughout their employment listing, inter alia, all regular hours of work, her rate of pay, and the basis of pay, in violation of NYLL § 195(3).

100.    Defendants failed to reflect any of Plaintiffs' hours worked on their respective wage statements.

101.    Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recover from Defendants' statutory damages of Two Hundred and Fifty dollars ($250) per workday that the violation occurred, up to a maximum of Five Thousand Dollars ($5,000), pursuant to NYLL § 198 (1-d).

## FOURTH CAUSE OF ACTION

**New York Labor Law – Failure to Provide Notice at Time of Hiring AND/OR at the time of each change in wage rate.**

102.    Plaintiffs repeat, reallege and incorporate by reference each and every allegation previously set forth as if fully set forth herein.

103.    Defendants failed to provide Plaintiffs at the time of hiring or at any point thereafter, a notice containing the rate of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular pay day designated by the employer; the physical address of the employer's main office or principal place of business; the telephone number of the employer, and anything otherwise required by law, in violation of NYLL § 195(1).

104.    Due to Defendants' violations of the NYLL § 195(1), Plaintiffs and class Plaintiffs are entitled to recover from Defendants statutory damages of Fifty dollars ($50)per workday that the violation occurred, up to a maximum of Five thousand dollars ($5,000) pursuant to NYLL § 198 (1-b).

## FIFTH CAUSE OF ACTION

**Defendants' Deprivation of Plaintiff Perry and Seme's Equal Rights under US Constitution and the law to make and enforce contracts pursuant to 42 USC §1981 and §1983**

23

105.    Plaintiffs repeat, reallege and incorporate by reference each and every allegation previously set forth as if fully set forth herein.

106.    The United States Supreme Court has held, the statute of limitations is four (4) years on all actions arising under the "Make and Enforce contracts" provision of 42 USC §1981 *as amend* 1991.  *Jones v. R.R. Donnelly Sons Co.*, 541 US 369, 382-282 (2004) Plaintiff Seme was terminated on or about March 17, 2017 and timely filed the instant claim on or about March 5, 2021.  Plaintiff Perry was terminated  on or about April 25, 2018 and timely filed the instant claim on or about March 5, 2021.

107.    Plaintiffs Perry and Seme on their own behalf and on behalf of similarly situated former and current black NYSAC inspectors or at will employees, bring an action against all named Defendants pursuant to 42 USC § 1981 and 1983.  During the relevant time period, since on or about 2017, New York State Governor Andrew Cuomo appointed Kim Sumbler ("Sumbler") as the executive director of NYSAC.  Sumbler engaged in a series and pattern of racist misconduct, motivated by racial animus toward black women and men and interfered and terminated Plaintiffs from their employment based on false pretenses.  Plaintiff Perry and Seme are both Black Americans.

108.    Even after Plaintiffs Perry and Seme were terminated from their employment on or about April 25, 2018 and on or about March 17, 2017 respectively, Defendant Sumbler, under color of law harassed and intimidated Plaintiffs by causing them to be ejected from places of public accommodation in which Plaintiffs were each lawfully and peacefully present.

109.    As to Plaintiff Seme, Defendant Sumbler under color of law, made false allegations about Plaintiff Seme to New York State Trooper Charles D. Sands ("NYST Sands") who appeared at the home of Plaintiff Seme on or about March 17, 2017 with another unidentified NYST DOE.  NYST

24

Sands stated to Plaintiff Seme, "Kim Sumbler said you were going to blow up the building."   As a Black American Man, Plaintiff Seme was shocked, intimidated and terrorized at the prospect of palpable police use of excessive force, arrest or criminal charges based on patently false allegations by Kim Sumbler, a white woman.  Defendant Sumbler weaponized the police against Plaintiff Seme and was fully aware of the threat of bodily harm or excessive force by police that was likely to befall him.  On two more occasions thereafter, during the remainder of 2017, NYST Sands returned to the residence of Plaintiff Seme to intimidate, coerce and harass Plaintiff Seme to falsely implicate him for a "threat" he never made.

110.    Defendant Sumbler arbitrarily and capriciously denied Plaintiff Seme's boxer trainer license renewal application submitted on or about April 2018.

111.    From on or about 2016 through the dates of their termination on or about April 25, 2018 for Plaintiff Perry and on or about March 17, 2017 for Plaintiff Seme, a two (2) year ban on employment with NYSAC for Inspectors to become NYS boxing judges / referees was implemented and applied only on black Inspectors, specifically Plaintiffs Perry and Seme.  This ban did not apply to other white inspectors who became or were NYS boxing judges while maintaining their inspector employee status.

112.    During Plaintiff Perry's fourteen (14) years of employment with NYSAC, there were approximately, less than 5 black inspectors employed by NYSAC at one given time period. However, there were full-time white male inspectors but no full time black inspectors at any time during Plaintiff Perry's 14 years of employment.

113.    Defendant Anthony Giardina who was an interim NYSAC commissioner through on or about March 2017, motivated by racial and gender animus toward Plaintiff Perry interfered with her promotions to Deputy Commissioner and repeatedly demeaned and harassed her by telling

Plaintiff Perry to "sit in the back" and "sit in the back out of sight" at boxing events when he knew Plaintiff Perry as an Inspector needed to be ringside.

114.    Based upon information and belief, Defendant Giardina ordered Plaintiff Perry to remain "out of sight" at boxing events that were televised because Plaintiff Perry was a black woman. Most if not all NYSAC employees who sat ringside at boxing events were white men.

115.    On or about March 17, 2017, Defendant Giardina blamed Plaintiff Seme for allowing an unlicensed trainer to appear with a boxer at an event.  However, inspectors were not charged with the duties of checking trainer licensure and did not have the means to check any trainer's licensure at an event.

116.    After Plaintiff Seme's termination from employment, Defendant Sumbler weaponized police to go to Plaintiff Seme's residence on a false report that Plaintiff Seme threatened to blow up a building.  NYSTs repeatedly threatened, intimidated Plaintiff Seme and his mother with police action at the behest of Defendant Sumbler.  Defendant Sumbler further caused Plaintiff Seme to be ejected from places of public accommodations where Plaintiff Seme was lawfully and peacefully present on approximately four occasions.

117.    After Plaintiff Perry was terminated from her employment, at the behest of Defendant Sumbler, Plaintiff Perry was ejected from a place of public accommodations where she was lawfully and peacefully present.  Thereafter, Plaintiff Perry was coerced and deterred from attending any public events at public places of accommodation.

118.    Defendant Sumbler repeatedly, intentionally and maliciously inflicted emotional distress and mental anguish on Plaintiffs and deprived them of any and all human dignity afforded under the state and US Constitution and laws.

119.    Pursuant to 42 USC §1981 states, "(a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) Make and Enforce Contracts… includes the making, performance, modification, and termination of contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.  (c) Protection Against Impairment  The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law."

120.    "Make and enforce contracts" includes wrongful termination  based on false pretext and race based animus; failure to promote; hostile workplace.

121.    42 USC 1983 states in pertinent part,

"Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State …subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…"

**Defendants' Deprivation of Plaintiff Perry's Rights**

122.    On or about 2017 and 2018 Plaintiff Perry was denied a promotion to deputy commissioner. To apply for the promotion, Plaintiff had to request that Commissioner Hoover post the job opening.  After applying, with an exemplary performance record and recommendations from superiors, a non-black inspector was given the promotion.  This non-black inspector was not required to submit any score card or evaluations as Plaintiff Perry was required to do.

123.    Since on or about 2004 when Plaintiff Perry commenced employment with NYSAC to the date of her termination on or about April 25, 2018, Plaintiff Perry was the only black woman inspector.

124.    Throughout Defendant Giardina's employment as interim Executive Director at NYSAC to on or about March 2017, Defendant ordered Plaintiff Perry to "sit in the back" and "sit in the back out of sight" at boxing events with full awareness that as an inspector, Plaintiff Perry needed to sit ringside.

125.    On or about March 2017, Defendant Giardina requested that Plaintiff Perry give him a "hug" but Plaintiff refused.  Defendant Giardina did not request "hugs" from white female employees.

126.    On or about March 2017, Defendant Giardina told Plaintiff Perry at a boxing event that she had not been considered for promotion to deputy commissioner because he questioned Plaintiff Perry's attentiveness and job performance.  Defendant Giardina thereafter told Plaintiff Perry to "sit in the back out of sight." Defendant Giardina ordered Plaintiff Perry out of sight of the cameras as the event was televised because Plaintiff Perry was a black woman.

127.    Defendant Giardina created a racially hostile environment for Plaintiff Perry.

128.    On or about April 2018, at a boxing event at Barclays Center, Brooklyn NY ("Barclay's event") Defendant Sumbler blamed Plaintiff Perry for not enforcing security measures when Plaintiff Perry was not responsible for security.  As Defendant Sumbler stated in her May 2018 memorandum, "immediately prior to" the event, the event security rules were changed in contravention of established policy.  There was at least one security officer outside of the boxers' locker rooms.  Defendant Sumbler allegedly believed she was in danger when there were "three

large men" in a boxer's locker room but never expressed concern for Plaintiff Perry's safety, only hers and deputy commissioner Ed Kunkle's safety.

129. On or about April 2018 at the Barclay's event, a white male reporter of Swanson media obstructed Plaintiff Perry's path as she escorted a boxer to his locker room to be medically evaluated. When Plaintiff Perry stated that the boxer cannot stop for an interview and must go directly for an after-fight medical exam, the white male reporter threatened to "kill" Plaintiff Perry. This reporter was instructed by Defendant Sumbler to request that interview with the boxer on his way to his medical exam, in violation of NYSAC medical policy.

130. After Plaintiff Perry complained to the Inspector General's (IG) office, about NYSAC/NYS DOL Affirmative Action office's policy of ignoring and suppressing complaints about the terms and conditions of her employment and harassment by Defendants Giardina and Sumbler, the IG's office further ignored the complaint and thereafter, Plaintiff Perry was fired in retaliation for making this complaint about the Affirmative Action Office.

131. In a letter dated on or about April 6, 2018, the Inspector General's office acknowledged Plaintiff Perry's complaint about the Affirmative Action office, which was then forwarded to Governor Cuomo's Office of Employee Relations. Shortly thereafter, in a letter dated on or about April 26, 2018 NYSAC terminated Plaintiff Perry's employment.

132. At the next boxing event, after Plaintiff Perry was terminated on or about April 25, 2018, a former commissioner alerted Defendant Sumbler by email that the event was dangerously understaffed and individuals overcrowded locker room areas. However, Defendant Sumbler expressed no concern regarding the dangerous conditions and did nothing.

133.    As a 30 year veteran inspector who was acquainted with most inspectors in NYS, stated to Plaintiff Perry, he had never witnessed an inspector terminated for no stated reason the way Plaintiff Perry was terminated.

134.    Since on or about 2014 through the date of Plaintiff Perry's termination, NYSAC enforced a 2 year ban on employment with NYSAC if an inspector sought to be a NYS licensed boxing judge.  If an inspector wanted to be a boxing judge, he/she was required to quit as an inspector for 2 years.  However, this 2 year ban was enforced only against black inspectors such as Plaintiffs Perry and Seme to deter them from becoming judges.  White male inspectors however, were not subject to this rule and became boxing judges without quitting employment as inspectors.

135.    On or about 2016, when NYSAC under the leadership of Defendant Giardina, discovered Plaintiff Perry was traveling to other states to judge boxing events, the office of general counsel wrote a letter demanding that Plaintiff Perry resign.  When Plaintiff Perry replied with evidence that she was not in violation of any law, rules, or regulations and that she was not in conflict of interest, the office of general counsel by letter dated on or about 2016, retreated from their intimidation to coerce Plaintiff Perry to resign and apologized.

136.    After Plaintiff Perry was terminated on or about 2018, Plaintiff Perry was lawfully and peacefully present at a boxing event where Premier Boxing Corporation and Swanson Media in retaliation for a complaint against its reporter who threatened to kill Ms. Perry and at the behest of Defendant Sumbler maliciously, under color of law caused security to eject Plaintiff Perry from the subject premises.

137.    But for Plaintiff Perry's race, Plaintiff Perry would have been licensed as a boxing judge; would have been promoted to deputy commissioner; would not have been terminated; and would

not have been unlawfully ejected by Defendant Sumbler or at Sumbler's behest from a place of public accommodations where Plaintiff Perry was lawfully and peacefully present.

**Defendants' Deprivation of Rights of Plaintiff Seme**

138.    Plaintiff Seme was terrorized at his own home on or about March 17, 2017 because Defendant Sumbler, a white woman, weaponized police by making a false criminal allegation and causing NYST Sands and a fellow NYST to question Plaintiff Seme stating, "Kim Sumbler said you threatened to blow up the building."

139.    On or about 2017, Defendant Sumbler filed a harassment claim against a white male Commissioner but did not send NYSTs to his home to question him about his alleged  harassment of Defendant Sumbler despite believing she was harassed and threatened.

140.    On approximately three more occasions when Plaintiff Seme attended public events that were also attended by Defendant Sumbler, Defendant Sumbler unlawfully but under color of law ejected Plaintiff Seme from event spaces or public places of accommodation where he was peacefully and lawfully present with friends.

141.    Plaintiff Seme was also deterred from becoming a NYS boxing judge as a result of the 2 year ban even though his white counter parts were not subjected to such ban.

142.    Plaintiff Seme paid for a renewal application of his trainer license on or about April 2018 and to date, was arbitrarily denied a renewal of his trainer "seconds" license by Defendants.

143.    On or about March 17, 2017, at a boxing event, Defendant Giardina accused Plaintiff Seme for the presence of an unlicensed trainer in a boxer's locker room.  Inspectors were not charged with the duty of checking trainer's for their license and Plaintiff Seme had no means or access to check on the trainer's license status at an event.

144.    Plaintiff Perry had complained to Defendant Giardina about inspectors being blamed for unfulfilled tasks that were not the duties of the inspectors but rather the duties of the deputy commissioners and commissioners.  Defendant Giardina thereafter, at various times during March 17, 2017 retaliated against Plaintiff Perry by denying her promotion to deputy commissioner.

145.    But for Plaintiff Seme's race, he would not have been harassed, intimidated and terrorized by NYS police at his residence at a behest of Defendant Sumbler who made a false allegation of criminal conduct; he would have become a boxing judge; he would have had a renewed "seconds" license; and would not have been terminated; he would not have been further ejected by Defendant Sumbler or at Sumbler's behest who caused security to eject Plaintiff Seme from places of public accommodation where he was lawfully and peacefully present.

146.    During Plaintiff Perry's fourteen years as an inspector, there were less than five black inspectors at any given time period.  Plaintiff Perry was the only black female inspector. Defendants systematically contrived false pretenses under which they terminated black inspectors, and failed to give them full time status or benefits.  Defendants systematically deterred or prevented black individuals from being hired as an inspector by paying less than minimum wage, providing substandard work conditions and denying black inspectors full time status.

147.    Inspectors generally have a passion for the professional sport of boxing.  Plaintiffs Perry and Seme suffered tremendous mental anguish and emotional distress when they were maliciously and fraudulently deprived of their rights to participate in the sport they were passionate about and dedicated their time and lives to and were even deprived of their rights to lawfully and peacefully attend boxing events at places of public accommodations as spectators.

148.    Plaintiff Perry was featured in a 60 minutes interview on or about 2017 because she provided moral support and guidance to a boxer named Danny Jacobs.  Mr. Jacobs was stricken with cancer but recovered and successfully returned to the sport.

149.    Defendant Sumbler made life insufferable, threatened to take Plaintiff Seme's liberty and deprived his pursuit of happiness that Plaintiff Seme, a Black American was forced to move out of the state.

150.    Defendant Sumbler made life insufferable and the pursuit of happiness impossible for Plaintiff Perry that she suffered mental anguish, emotional harm, heart problems and depression. Plaintiff Perry to date, under standing threat by Defendant Sumbler of being removed from the event premises, cannot attend boxing events that she has a legal right to do as a Black American.

151.    Accordingly, Defendants NYSAC, Sumbler and Giardina are liable to Plaintiffs pursuant to 42 USC 1981 and 1983 for compensatory and punitive damages and Plaintiffs pray that the Court enjoin from their race based misconduct that terminated them and ejected Plaintiffs from public places of accommodations that deprived and continue to deprive Plaintiffs of their rights, privileges, or immunities secured by the Constitution and laws.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs Perry and Seme, individually on their own behalf and on behalf of all other similarly situated former and current at will employees of NYSAC, prays for the the following relief:

A.      Issuance of a declaratory judgment that the practices complained of in this complaint are unlawful pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., New York Labor Law, Article 19, §§ 650 et seq., and attendant New York State Department of Labor Rules and Regulations, Wage Orders

B.     Designation of this action as a collective action on behalf of the FLSA Collective (asserting FLSA claims and state claims) and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 2 I 6(b)

C.     Damages for unpaid minimum and overtime wages pay under the FLSA, 29 USC §201 et seq. and an additional and equal amount as liquidated damages pursuant to 29 U.S.C.  § 216(b) and the supporting United States Department of Labor Regulations in amounts to be determined at the time of trial;

D.     Damages for unpaid minimum wage, spread of hours pay and overtime wages under NYLL, NYS DOL Rules, Regulations and Wage Orders, and an additional and equal amount as liquidated damages pursuant to NYLL §198(1-a) and § 663(1) in amounts to be determined at the time of trial;

E.     Civil penalties of Ten Thousand Dollars ($10,000) for each of Defendants' willful and repeated violations of the FLSA 29 USC §207, 215(a)(2) pursuant to 29 U.S.C. § 216(a);

F.      An award of statutory penalties of fifty dollars ($50) per work day up to five thousand dollars ($5,000) for Defendants' failure to provide Plaintiffs with wage notices at the time of hiring, or at any point thereafter, pursuant to NYLL § 198 (1-b);

G.     An award of statutory penalties of two hundred fifty dollars ($250) per workday up to five thousand dollars ($5,000) for Defendants' failure to provide Plaintiffs with accurate wage statements, pursuant to NYLL § 198 (1-d);

H.     An award of statutory damages for Defendants' failure to prove Plaintiffs with wage statements pursuant to NYLL §198

I.      An award of back wages, front wages, liquidated damages, emotional distress, mental anguish, and punitive damages for the Defendants' prohibited retaliation against Plaintiff Perry and Seme pursuant to 29 U.S.C. § 215(3);

J.      An award of front pay, lost compensation, emotional distress, punitive damages and liquidated damages up to a maximum of Twenty Thousand Dollars ($20,000.00), for Defendants' prohibited retaliation against Plaintiff pursuant to NYLL § 215(a)(2);

K.      Permanently enjoin Defendants from willfully failing to apply prevailing NYS / NYC minimum wages, spread of hours pay and overtime wages pursuant to FLSA and NYLL.

L.      An award of prejudgment interest pursuant to 28. U.S.C § 1961;

M.      An award of pre-judgement interest of nine per cent per annum (9%) pursuant to the New York Civil Practice Law and Rules §§ 5001- 5004

N.      An award of post-judgment interest pursuant to 28 U.S.C. § 1961 and/or the New York Civil Practice Law and Rules § 5003;

O.      An award of attorney's fees and costs pursuant to 29 U.S.C § 216(b), NYLL §§ 198 and 663(1); and

P.      Enjoin Defendants' racially discriminatory misconduct, practices and policies and afford Plaintiffs equal rights under the law to make and enforce contracts;

Q.      Declare Defendants violated 42 USC 1983 depriving Plaintiffs of their rights, privileges and immunities individually and under color of state law;

R.      Order Defendants to pay Plaintiffs pursuant to 42 USC §1981 and 1983 compensatory and punitive damages; and

S.      Such other and further relief as this Court shall deem just and proper.

Dated: New York, NY
     March 8, 2020

**LAW OFFICE OF SUSAM GHIM**

By:    /s/ Susan Ghim

_____

Susan Ghim
Attorney for Plaintiffs
244 Fifth Avenue, Suite 1434
New York, New York 10001
(917) 549-4708
SGHIMESQ@GMAIL.COM