# EXHIBIT J

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM INDEX NO. 152543/2022
NYSCEF DOC. NO. 1                                    RECEIVED NYSCEF: 03/24/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------x

DOROTHEA PERRY,                                    Index No.

                       Plaintiff,         **SUMMONS**

       -against-                               The designated venue is
                                                   New York County where
NEW YORK STATE ATHLETIC COMMISSION,                the cause of action arose.
NEW YORK STATE DEPARTMENT OF STATE,
KIM SUMBLER, ANTHONY GIARDINA,
MARIA HERMAN, LINDA BALDWIN and
JAMES LEARY, individually and in their official capacities,

                   Defendants.
------------------------------------------------------------------------x

**TO THE ABOVE-NAMED DEFENDANTS**:

      **YOU ARE HEREBY SUMMONED** to appear in the Supreme Court of the County of New York at the office of the Clerk of the said Court located at 60 Centre Street, New York, NY, within the time provided by law as noted below and to file your answer to the annexed complaint with the Clerk; upon your failure to answer, judgment will be taken against you for the relief demanded in the Complaint, together with costs of this action.

Dated: New York, New York
      March 24, 2022

                           Law Office of Susan Ghim
                           Attorney for Plaintiff

             By:    Susan Ghim, Esq.
                      244 Fifth Avenue, Suite 1434
                      New York, NY 10001
                      (646) 889-1011

  NOTE: The law provides as follows:

    (a)  If this summons is served by its delivery to you personally within the City of New York, you must appear and answer within TWENTY (20) days after such service; or

    (b) If this summons is served by delivery to any person other than personal delivery to you within the City of New York of if the summons is served outside of the city of New York, you are allowed THIRTY (30) days after the proof of service thereof is filed with the Clerk of this Court within which to appear and answer.

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM
NYSCEF DOC. NO. 1

INDEX NO. 152543/2022

RECEIVED NYSCEF: 03/24/2022

TO DEFENDANTS:

| | |
|---|---|
| New York State Department of State<br>c/o Office of the Attorney General<br>28 Liberty Street<br>New York, NY 10005<br>Attn: Managing Attorney's Office /<br>Personal Service | New York State Athletic Commission<br>c/o Office of the Attorney General<br>28 Liberty Street<br>New York, NY 10005<br>Attn: Managing Attorney's Office /<br>Personal Service |
| Maria Herman, individually and<br>Affirmative Action Officer<br>New York State Department of State<br>c/o Office of the Attorney General<br>28 Liberty Street<br>New York, NY 10005<br>Attn: Managing Attorney's Office /<br>Personal Service | Kim Sumbler, individually /Exec. Dir.<br>New York State Athletic Commission<br>c/o Office of the Attorney General<br>28 Liberty Street<br>New York, NY 10005<br>Attn: Managing Attorney's Office /<br>Personal Service |
| James Leary, Assistant Sec. of State<br>New York State Department of State<br>c/o Office of the Attorney General<br>28 Liberty Street<br>New York, NY 10005<br>Attn: Managing Attorney's Office /<br>Personal Service | Anthony Giardina, individually and<br>Exec. Dir.<br>New York State Athletic Commission<br>c/o Office of the Attorney General<br>28 Liberty Street<br>New York, NY 10005<br>Attn: Managing Attorney's Office /<br>Personal Service |
| Linda Baldwin, Counsel<br>New York State Department of State<br>c/o Office of the Attorney General<br>28 Liberty Street<br>New York, NY 10005<br>Attn: Managing Attorney's Office /<br>Personal Service | |

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM

NYSCEF DOC. NO. 1

INDEX NO. 152543/2022

RECEIVED NYSCEF: 03/24/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------------x

DOROTHEA PERRY,                                            Index No.

                                        Plaintiff,          **VERIFIED COMPLAINT**

           -against-

NEW YORK STATE ATHLETIC COMMISSION,
NEW YORK STATE DEPARTMENT OF STATE,
KIM SUMBLER, ANTHONY GIARDINA,
MARIA HERMAN, LINDA BALDWIN and
JAMES LEARY, individually and in their official capacities,

                                        Defendants.
-------------------------------------------------------------------------x

          Plaintiff Dorothea Perry ( "Plaintiff"), by and through her attorney,  Law Office of Susan

Ghim, complaining of New York State Athletic Commission, New York State Department of

State, Kim Sumbler, Anthony Giardina, Maria Herman, Linda Baldwin and James Leary

individually and in their official capacities alleges as follows:

PRELIMINARY STATEMENT

1.       Plaintiffs Dorothea Perry ("Plaintiff") brings this action pursuant to New York State

Human Rights Law, Executive Law §290 et seq., ("NYSHRL"); Civil Service Law §75 et seq.,

New York State Common Law Claim of Abuse of Process and 42 USC §1983 and the Fourteenth

Amendment to the United States Constitution to remedy gender and racial discrimination and

hostile work environment. Plaintiff further brings common law claims of stigma plus violation of

due process and civil conspiracy against individually named defendants.

2.       The §1983 claims were commenced on or about March 4, 2021 in the United States District

Court, Southern District of New York in Perry et al., v. New York State Athletic Commission et

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM

NYSCEF DOC. NO. 1

INDEX NO. 152543/2022

RECEIVED NYSCEF: 03/24/2022

al., 21 cv 1967 ("federal lawsuit").  The federal lawsuit was voluntarily dismissed without prejudice and so ordered by the United States District Court on or about September 22, 2022.

3.      Plaintiff re-filed these §1983 claims in this Court to join them with further state causes of action that were discovered during the federal law suit but were discretionary as to whether the United States District Court would exercise  supplemental jurisdiction over state law claims.

4.      Accordingly, Plaintiff further brings state law claims against the individual Defendants for fraudulent concealment of Plaintiff's claims; abuse of process; Stigma Plus, and Civil Conspiracy claims.

5.      Plaintiff seeks reinstatement to employment at NYSAC; promotion to Deputy Commissioner for NYSAC that was wrongfully denied to Plaintiff based on gender and/or racial discrimination; declaratory relief, back pay, compensatory damages, attorney fees and costs, punitive damages against individual Defendants in their individual capacities and other and further legal and equitable relief that this Court deems just and proper.

6.      A notice of intention to file these state law claims against all named Defendants were served on the NYS Office of the Attorney General ('OAG") timestamped, October 20, 2021, 11:03AM

7.       Plaintiff worked as an Inspector for NYSAC from on or about 2004 and was wrongfully terminated on or about April 25, 2018;  Plaintiff was a public official and civil service employee who was discharged without any notice of charges of misconduct and without any opportunity to be heard.  At the time of Plaintiff's termination, she had an exemplary work record with work recommendations and recommendations for promotion to deputy commissioner by superiors.  At the time of Plaintiff's termination, Plaintiff had no record of employment discipline.

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM
NYSCEF DOC. NO. 1

INDEX NO. 152543/2022
RECEIVED NYSCEF: 03/24/2022

8.      On or about April 22, 2018, Plaintiff filed a workplace violence complaint with NYSAC / NYS DOS about an incident wherein Andrew Roberts, a reporter for Swanson Media kicked doors and trash cans as he yelled threats to kill Plaintiff as she performed her job duties at an event on April 21, 2018 at Barclays event center.  On or about April 22, 2018, Plaintiff fearing for her life and safety of others, made a NYPD report about the incident as well.  A few days later, on or about April 25, 2018, Plaintiff was terminated from her employment without any reason.

9.      Also proximately close in time to Plaintiff's termination, by letter dated on or about April 8, 2018, the NYS Office of the Inspector General ("OIG") informed Plaintiff that her previous discrimination and hostile work complaints to Affirmative Action Officer Maria Herman would be forwarded to the Governor's Office of Employee Relations ("GOER") for investigation.

10.     Plaintiff repeatedly asked management and human resources the reason for her termination from employment on April 25, 2018 and a hearing on her termination since on or about April 25, 2018.  Plaintiff was denied notice of charges or the basis for her termination and was not afforded a hearing on her termination to date.   Plaintiff repeatedly followed up on her discrimination and hostile work environment claims to Defendant Herman to no avail.  Defendants stonewalled Plaintiff about her termination and discrimination claims until Plaintiff filed a federal lawsuit and was afforded discovery including deposition testimony by Defendants.

11.     Based on Defendants repeated violations of state, federal and constitutional laws that continue to date, Plaintiff seeks compensatory and mental anguish damages in addition to equitable relief including but not limited to tolling of the statute of limitations, re-instatement to employment and promotion to Deputy Commissioner Plaintiff was qualified for and was unlawfully denied.

EXHAUSTION OF ADMINISTRATIVE REMEDIES
AND TOLLING OF STATUTE OF LIMIATIONS

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM

NYSCEF DOC. NO. 1

INDEX NO. 152543/2022

RECEIVED NYSCEF: 03/24/2022

12.     On or about May 2018,  Plaintiff Perry timely filed a complaint with the New York State Division of Human Rights ("NYSDHR") for wrongful termination and retaliation based on racial and gender discrimination.  A probable cause hearing is pending on this matter Perry v. NYSAC et al Case no. 10195419.  The NYS DHR determined that the discriminatory denial of Plaintiff's promotion application to deputy commissioner on or about March 2017 and the March 17, 2017 sexual harassment of Plaintiff by Defendant Giardina were time barred.

13.     However, on or about October 15, 2021 during the deposition of Plaintiff by NYSDOS/NYSAC in the federal lawsuit, Plaintiff discovered for the first time that Defendant Herman fraudulently concealed Plaintiff Perry's claims for sexual harassment and discriminatory denial of her promotion to Deputy Commissioner ("DC").  Accordingly, the statute of limitations on these concealed claims should be six (6) years from the date of the incident or two (2) years from the date Plaintiff should have discovered the claims.  The alleged incidents occurred during 2017 and the 6 year statute of limitations would run to on or about March 17, 2023.  The date the concealed claims were discovered occurred on or about October 15, 2021 and two years from that date would run to on or about October 15, 2023.

14.     On or about December 7, 2021, at Defendant Herman's continued deposition in the federal lawsuit, Defendant Herman admitted to signing the internal complaints detailed *supra* on behalf of Plaintiff without Plaintiff's consent or authorization and never provided Plaintiff with the copies of those complaints that provided notices to Plaintiff that she did not have to wait for the internal process to finish to file a complaint with the EEOC and/or NYSDHR and that Plaintiff had one year from the date of the internal complaint to file a complaint with the EEOC and/or NYS DHR.

15.     Defendant Herman was the sole Affirmative Action Officer during Plaintiff's employment with NYSAC.  Defendant Herman was also the sole investigative officer and decision maker for

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM

NYSCEF DOC. NO. 1

INDEX NO. 152543/2022

RECEIVED NYSCEF: 03/24/2022

any and all complaints of discrimination by Plaintiff. During 2017, Defendant Herman falsified two internal complaints by signing on behalf of ("obo") Plaintiff without consent or authorization by Plaintiff ; and failed to provide Plaintiff with a copy of that complaint; and then informed Plaintiff verbally that there was no discrimination in the denial of her promotion and that the attempted hug by Defendant Giardina was not severe or pervasive. Defendant Herman stated to Plaintiff that there was no discrimination in denying her promotion to deputy commissioner even though all non-African American men with far less experience and education were promoted over Plaintiff including an inspector named Frank Vasquez who repeatedly called Plaintiff by a racial slur against African Americans, the "N" word and the misogynistic slur against women, "c**t" in front of other inspectors and supervisors. Had Defendant Herman provided Plaintiff with a copy of the internal complaint, Plaintiff would have received the bold faced printed notice that she had a right to pursue the complaint with the EEOC or NYS DHR without waiting for the agency's determination and that Plaintiff also had one year from the date of the internal complaint to pursue the complaint with EEOC or NYSDHR. Had Plaintiff been provided with this notice, Plaintiff would have timely pursued her claims with the EEOC or NYSDHR as she did with her termination in 2018.

## **FACTUAL ALLEGATIONS**

16. Plaintiff Dorothea Perry ("Perry") commenced her employment as a civil service employee within the meaning of Civil Service Law §75 ("CSL") et seq. as a boxing inspector on or about 2004. Plaintiff signed a CSL Public Oath of Officer form that clearly provided that Plaintiff was a CSL employee. Plaintiff was terminated from her employment on or about April 25, 2018 a few days after Plaintiff filed a workplace violence complaint with Defendant Sumbler on April 21, 2018, with human resources and NYPD on or about April 22,

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM
NYSCEF DOC. NO. 1

INDEX NO. 152543/2022
RECEIVED NYSCEF: 03/24/2022

2018. The termination also took place approximately two weeks after the OIG notified Plaintiff by letter dated on or about April 8, 2018 that her discrimination complaints made to Defendant Herman would be referred to GOER.

17.     At the time of discharge from her employment, Plaintiff was not provided in writing what the cause of her termination was; and without notice of any misconduct or charges as the basis for her termination; and without an opportunity to heard pursuant to the CSL and due process provisions under the Fourteenth Amendment to the United States Constitution and New York State Constitution.

18.     On or about May 2004, Plaintiff signed an oath of public office with the New York State Department of State and was awarded a public official badge.

19.     On or about May 2004, Plaintiff Perry was recommended for the inspector position by black boxers who appreciated and requested her advocacy regarding the terms and conditions of the boxer's training at NYSAC facilities and performance event spaces that impacted their health welfare and safety.

20.     Plaintiff's duties as an Inspector were to be the "eyes and ears" of NYSAC which included: assisting or escorting boxers, wrestlers or MMA fighters through the event process  from arrival to the event space, throughdeparture from the event space, and to ensure that these athletes were properly tested and examined byNYSAC medical doctors before and after each event.

21.     During her fourteen (14) years of employment as an inspector with NYSAC, Plaintiff Dorothea Perry was the only black female inspector at NYSAC.

22.     Based upon information and belief, during the 14 years of Plaintiff's employment with NYSAC and to date, there have been zero African American women and zero Asian American

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM

NYSCEF DOC. NO. 1

INDEX NO. 152543/2022

RECEIVED NYSCEF: 03/24/2022

inspectors employed at NYSAC. During Plaintiff's employment at NYSAC, there were zero female deputy commissioners employed.

23.     During Plaintiff's employment at NYSAC willfully denied hourly minimum wage and denied any wages for hours beyond 8 hours per workshift.  It took an average of six (6) weeks for Plaintiff to be compensated.  Since on or about 2004, Plaintiff was paid $52 for each event worked which was approximately 12 hours per event in violation of NYLL §650 et seq. Ms. Perry was also denied work breaks during her workshift and a proper break room for meals.. Ms. Perry was required to eat meals in the indoor parking lot where numerous trucks idled and produced overwhelming diesel fumes.

24.     Since on or about 2016, despite an exemplary work record without any discipline, and recommendations by superiors such as the Chairman of NYSAC and the Director of Boxing, Eric Bentley, and lead Inspector George Ward, Plaintiff was denied a promotion to deputy commissioner on or about 2017.

25.     GOER produced a transcript of phone and in-person interviews on 4/11/2017; 5/8/2017 (phone) and 4/19/2017; 6/6/2017 (in person) with Defendant Giardina.concerning the denial of Plaintiff's promotion to DC.  Defendant Giardina stated, "I did not approve her for promotion.  I felt that although she has some good skills as an inspector, I was concerned with…her lack of judgment when it comes to matters involving black employees, because of her perception that everything is basically white against black and that there is systematic discrimination of black employees.  That cloudy judgment was evident when she defended Jean Seme when he was terminated."

26.     Jean Seme was an inspector with NYSAC who was terminated on March 17, 2017 on the same evening he witnessed Defendant Giardina attempt to hug or sexually harass Plaintiff during

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM
NYSCEF DOC. NO. 1

INDEX NO. 152543/2022
RECEIVED NYSCEF: 03/24/2022

an event at Madison Square Garden.  Thereafter, Defendants Giardina, Sumbler and Leary sent New York State Police ("NYSP") to Jean Seme's residence on numerous occasions throughout 2017 and 2018 to terrorize Jean Seme with arrest when according to NYSP's own files, Mr. Seme never engaged in any crime, never made any threats as Defendant Sumbler falsely alleged and never had a criminal record.

27.    On or about March 2017, a non-black inspector named Frank Vasquez was promoted to DC over Plaintiff  who had far more years of experience as an inspector which was required for promotion to DC and a higher four year college degree.  Importantly, Plaintiff complained in her complaint to Defendant Herman on or about 2016 that Frank Vasquez routinely harassed her verbally by telling her to sit down and shut up and calling her a snitch.  At a deposition on or about October 12, 2021, lead inspector George Ward testified that DC Frank Vasquez before and after his promotion to DC,  repeatedly called Plaintiff a "N" word, the racial slur used against African Americans and the misogynistic slur, "c**t" in front of other co-workers.

28.    On or about 2018, Plaintiff Perry made a complaint to the Inspector General's office regarding Defendant Herman's sole investigation, manipulation and unsubstantiated findings regarding the denial of her promotion to DC and the sexual harassment by Defendant Giardina.  By letter dated on or about April 8, 2018, the Inspector General notified Plaintiff that her complaints would be forwarded to the Governor's Office of Employee Relations (GOER).

29.    On or about April 21, 2018, at an event at Barclays Event Center, Plaintiff was verbally attacked and threatened by Andrew Jackson, a reporter for Swanson Media as he kicked doors and garbage cans.  Plaintiff was escorting boxer Gervonta Davis from the boxing ring to his post bout medical exam when Jackson stated that Defendant Sumbler sent him and he demanded that Plaintiff divert Gervonta Davis to the press box for an interview.  Plaintiff, following the direction

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM

NYSCEF DOC. NO. 1

INDEX NO. 152543/2022

RECEIVED NYSCEF: 03/24/2022

of Avery Browne, M.D., refused instruction from non-state employee, Andrew Jackson to divert Gervonta Davis from his medical exam to the press pool as Avery Browne, M.D. instructed them, "do not stop" and to proceed immediately to the medical exam. Jackson became enraged and yelled at Plaintiff, "I will kill you" as he kicked doors and trash cans as he followed Plaintiff.

30. Following the severe brain injury of Mogamed Abdusalamov and an investigation into NYSAC's mishandling of Abdusalamov's care, the OIG had instituted strict medical protocols for boxers to proceed directly to a post bout medical exam and that NYSAC personnel had to adhere to the on duty medical doctor's instructions and directions on post bout medical exams. Plaintiff strictly adhered to this medical policy and to Avery Browne, M.D.'s instructions as she understood the post bout medical exam was time sensitive and could be a matter of life and death for the boxer.

31. In great fear for her personal safety, Plaintiff reported the incident to Defendant Sumbler that same evening of April 21, 2018. Plaintiff also reported the incident to human resources and NYPD on or about April 22,2018. Neither Defendant Sumbler nor human resources promptly addressed this safety issue with Plaintiff.

32. On or about May 2018, Plaintiff filed a workplace violence complaint Case no. 30041867 with the NYS Department of Labor, Public Employee Safety & Health unit ("PESH") based on the incident with reporter Jackson. By letter decision dated March 8, 2022, PESH substantiated the workplace violence complaint by Plaintiff and determined NYSAC retaliated against Plaintiff for filing a workplace violence complaint with NYS DOS / NYSAC on or about April 22, 2018. PESH referred the matter for further action to the Office of the Attorney General.

33. Defendant Sumbler also terminated Plaintiff to cover up her own egregious safety protocol violations all in one evening at the April 21, 2018 event at Barclay's event center.

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM    INDEX NO. 152543/2022
NYSCEF DOC. NO. 1    RECEIVED NYSCEF: 03/24/2022

34.     As the Executive Director of NYSAC Defendant Sumbler had no safety protocols in place when gunfire erupted inside Barclays event center on April 21, 2018.  Despite a referees announcement right behind Defendant Sumbler as observed by Plaintiff,  that Barclays was on lock down due to an active shooter event, Defendant Sumbler allowed Plaintiff, Avery Browne M.D. and boxer Gervonta Davis to potentially walk into an active shooter situation unescorted by security.

35.     At the same April 21, 2018 event, Defendant Sumbler further endangered a foreign language speaking boxer Justin Sami and his juvenile son approximately 10 years old.  Based upon information and belief, instead of assigning a language interpreter to boxer Sami, Defendant Sumbler allowed the boxer Sami's child to be licensed as a Second / corner person in the ring to interpret for his father.

36.     Based upon information and belief, during boxer Sami's bouts, NYSAC's commissioner of boxing observed boxer Sami having difficulty communicating with the ringside physician which endangered him.  Boxer Sami's son was not permitted to enter the ring because he was a minor which left the boxer Sami without a language interpreter.

37.     Still further at the same April 21, 2018 event Defendant Sumbler further endangered other boxers' safety by assigning  NYSAC's "Linguist" to assign boxing gloves without any training or knowledge of glove size, glove weight needed by individual boxers.  This exposed all boxers to serious injuries.

38.     Based upon information and belief, at that same event on or about April 21, 2018, Defendant Sumbler was responsible for arranging for security at Barclays yet during the event, a production employee named Brian Adams passed through security with four people who were all

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM
NYSCEF DOC. NO. 1

INDEX NO. 152543/2022
RECEIVED NYSCEF: 03/24/2022

not permitted around the ring area stood with Defendant Sumbler and the Commissioner to watch the event.

39.     On or about 2017, Ed Kunkle, a white man was hired as a deputy commissioner without the requisite inspector experience or qualifications. NYSAC required deputy commissioners to have a minimum of two years experience as a NYSAC inspector.  Plaintiff  had more years of experience and college degree, yet DC Kunkle who had a high school diploma and no experience working as a NYSAC inspector was hired over Plaintiff.

40.     At the same event on April 21, 2018, DC Kunkle was in charge of all locker room activities. By email dated on or about April 23, 2018, DC Kunkle stated to Defendant Sumbler that he observed unauthorized people in Gervonta Davis' locker room while Plaintiff and Gervonta Davis were out of the locker room and DC Kunkle did nothing to remove them when he had the authority to do so.

41.     On or about April 25, 2018, Plaintiff  was terminated a few days after the workplace violence complaint made to human resources on or about April 22, 2018, and a few days after Defendant Sumbler caused a multitude of egregious safety violations at the Barclays event on April 21, 2018.  Plaintiff's termination also took place approximately 2 weeks after the OIG notified Plaintiff by letter dated on or about April 8, 2018 that her discrimination complaints would be forwarded to GOER.

42.     Only after the commencement of the NYS DHR proceeding on or about May 2018 that Defendant Sumbler produced an internal memo that falsely alleged Plaintiff violated locker room policy by allowing unauthorized people into Gervonta Davis' locker room.  Defendant NYSAC produced a video clip of people entering and leaving the Davis locker room that debunked all of Defendant Sumbler's allegations that Plaintiff allowed the people into the room.  In the 2018 NYS

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM

NYSCEF DOC. NO. 1

INDEX NO. 152543/2022

RECEIVED NYSCEF: 03/24/2022

DHR probable cause decision in Plaintiff's favor, it was confirmed that the video did not support Defendant Sumbler's allegations.  In the March 8, 2022 decision by PESH also in Plaintiff's favor, it was similarly confirmed that the video clip did not support Defendant Sumbler's allegations. Most glaring was the fact that Plaintiff was not notified of this alleged locker room policy violation was the basis of her termination at any relevant time.

43.    Based upon information and belief, on or about 2018, a white inspector Brett Lipton walked off the job after being assigned to a boxer by placing the boxer's gloves down and walked out of the venue leaving that boxer unassisted and costing that boxer a boxing match.  Plaintiff alerted Defendant Sumbler who did nothing. Based upon information and belief, the white inspector who walked off the job is working events at NYSAC to date  and suffered no adverse employment record, reprimand, admonishment or repercussion whatsoever for his terminable offense

44.    Based upon information and belief, during and after Plaintiff Perry's employment with NYSAC, defendant Giardina leaked her personnel file to reporter Tom Hauser who wrote negative articles about Plaintiff Perry in online trade news sites.  Defendant Giardina testified at his deposition on October 22, 2021 that he did interview with Tom Hauser on at least several occasions.  The most recent negative article published about Plaintiff Perry based on defendant Giardina or other NYSAC official's retaliatory leak of Plaintiff Perry's personnel file was on or about April 2021

**DEFENDANT NEW YORK STATE ATHLETIC COMMISSON ("NYSAC")**

45.    Based upon information and belief, NYSAC is a subdivision of the New York StateDepartment of State (NYS DOS). NYSAC licenses boxers and has had a long history of racialdiscrimination against Black American Boxers that continues unabated to date**.** *See, e.g.*

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM

NYSCEF DOC. NO. 1

INDEX NO. 152543/2022

RECEIVED NYSCEF: 03/24/2022

*Ali v. Division of State Athletic Commission of the Department of State*, 316 F.Supp. 1246 (SDNY 1970) Plaintiff Perry suffered interference with their constitutionally protected rights as black American citizens that other white citizens enjoyed such as the right toattend public sporting events at places of public accommodations. Defendant Sumbler, as executive director of NYSAC, exceeding her authority and under color of law forcibly removed or had Plaintiff ejected from sporting events where Plaintiff was lawfully present.

46.     Based upon information and belief, On or about 2016, defendant Giardina without statutory, legislative authority or executive powers of the Governor, deemed inspectors as "at will" employees in a NYSAC inspectors manual.  The New York State Civil Service Law §75 ("CSL §75") regulates all employment in service of New York State ("NYS").  Notwithstanding, defendants Giardina and Sumbler relied on their legally inoperative inspector manual to unlawfully discharge Plaintiff in 2018 as an at will employee to avoid providing her notice and opportunity to be heard on her discharge from employment.

47.     Additionally, during on or about 2016, defendant Giardina re-set Plaintiff's wages from a daily wage of approximately $52 per event to $100 per event when events required Plaintiff to regularly work 10 – 12 hours per work shift. Instead of applying wage and hour standards under New York Labor Law ("NYLL") §650, defendant Giardina unlawfully applied a daily wage comparison of the  NYSAC's existing $52 per event wages to other states' wage rates that drastically fell below NYLL standards. During all relevant times of Plaintiff's employment with NYSAC it took on average, six (6) or more weeks for Plaintiff to receive her earned wages.

48.     At all relevant times, NYSAC utilized discriminatory employment practices based on race and gender to deny Plaintiff a promotion to deputy commissioner. Defendant Giardina also limited Plaintiff's assignments as an inspector by not assigning Plaintiff to televised events and

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM
NYSCEF DOC. NO. 1

INDEX NO. 152543/2022
RECEIVED NYSCEF: 03/24/2022

and instructed Plaintiff to either leave the ring or sit in the back out of the sight of cameras during events.

49.     At all relevant times, Defendant Sumbler maintained control, oversight, and direction over Plaintiff including scheduling assignments, timekeeping and payroll.

50.     On or about April 23, 2018, Defendant Leary and Brendan Fitzgerald requested in an email to Defendant Sumbler that Defendant Sumbler draft a memo about Plaintiff's alleged violation of locker room policy. A few days later, Plaintiff was discharged on or about April 25, 2018 without notice or opportunity to be heard on the allegations in that memo dated on or about April 23, 2018, in violation of CSL §75.2

51.     Based upon information and belief, at the behest of Defendant Leary and Brendan Fitzgerald, former deputy assistant secretary of state, Defendant Sumbler back dated an internal office memorandum to on or about April 23, 2018 alleging that Plaintiff violated NYSACs locker room policy at the April 21, 2018 event at Barclays. At the end of the event on or about April 21, 2018, Plaintiff's supervisors indicated on an end of workshift report that Plaintiff satisfactorily met all expectations in performing her duties. Defendant Sumbler's April 23, 2018 memo fully displayed her racial animus and bigotry against black Americans. Without any basis in fact for the negative aspersions and allegations that anyone made any threats against Defendant Sumbler or others, Defendant Sumbler recklessly stated in pertinent part,

**"On the card, there were three athletes (Broner, Davis & Charlo) with known gang affiliations and famous artists (rappers), who were making threats to each other over social media leading up to the event."**

**"Immediately prior to the event…I informed all staff that contrary to normal procedures, that NYSAC would not permit any additional guests into the locker rooms…"**

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM
NYSCEF DOC. NO. 1

INDEX NO. 152543/2022
RECEIVED NYSCEF: 03/24/2022

**"I saw three large men…in addition to Gervonta Davis's (sic) camp, and guests…I asked them to leave…There were a few tense moments where they stared me down then eventually left without incident…they didn't belong…we were on heightened security alert because of the threats that were made…this breach of locker room access placed both Ed Kunkle and me in a very dangerous situation…Had Dorothea notified Security immediately…we would not have been put in harm's way."**

52.     On or about April 2018, Defendant Sumbler repeated to sports media that these three athletes had "gang affiliations."

53.     Gervonta Davis referenced in the May 2018 memorandum was an African American boxer who did not have known gang affiliations and Defendant Sumbler made the gang affiliation aspersions based on her personal racial bias and stereotypes.

54.     The "three large men" referenced in the May 2018 memorandum were also African American men" who Sumbler speciously stated, put her in a "very dangerous situation" when Sumbler stated in a previous clause that these "three large men" who "didn't belong" had "left without incident.   Moreover, Defendant Sumbler was in a supervisory role so if she believed she and deputy commissioner Ed Kunkle were in a "very dangerous situation" she should have believed that Ms. Perry was also in a "very dangerous situation" and acted in her supervisory role to resolve the "very dangerous situation." At no relevant time were inspectors charged with security duties.  Defendant Sumbler also instituted a racist, arbitrary and capricious policy at this event to check all Boxers' family's identification to make sure they were family members when they already went through several layers of security to gain entry into the facility in the first instance.

55.     Defendant Sumbler also instituted a racist, arbitrary and capricious policy at this event

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM    INDEX NO. 152543/2022

NYSCEF DOC. NO. 1                                            RECEIVED NYSCEF: 03/24/2022

to check all Boxers' family's identification to make sure they were family members even after security checked every attendees credentials at the front entrance and again at the commission desk.

**Defendant Anthony Giardina Exec. Dir. NYSAC through on or about 2017**

56.     On or about 2016 Anthony Giardina stepped down from his role as executive deputy secretary of state to a lower level interim Executive Director position at NYSAC while retaining his high rate of pay, even though he had zero experience in Boxing, Wrestling or Mixed Martial Arts.

57.     Defendant Giardina testified at his continued deposition on or about December 6, 2021 that he was asked by the Governor's office to vacate the executive deputy secretary of state position and move to executive director position at NYSAC.  This allowed Brendan Fitzgerald who was working at the Governor's office to move into that Defendant Giardina's position at NYS DOS. Based on public salary records, Brendan Fitzgerald enjoyed a salary bump from approximately $100,000 to approximately $160,000 per year.

58.     Based on NYS Police("NYSP") reports, Brendan Fitzgerald called NYSP supervisor James Post on or about March 17, 2017 to send NYSP to Jean Seme's residence to silence him about his termination from employment because Jean Seme had witnessed Defendant Giardina sexually harass Plaintiff with an attempt to hug her at an event at Madison Square Garden on March 17, 2017.

59.     On or about 2016, Defendant Giardina was determined to keep Plaintiff Perry off camera and discouraged and attempted to thwart Plaintiff Perry from appearing on a 60 Minutes interview in relation to her friend and boxer Danny Jacobs. Ms. Perry was not asked to represent NYSAC in the 60 minutes clip, however NYSAC and Defendant Giardina made every attempt to

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM

NYSCEF DOC. NO. 1

INDEX NO. 152543/2022

RECEIVED NYSCEF: 03/24/2022

discourage her from appearing

60.     Defendant Giardina sexually harassed Plaintiff Perry  at an event at Madison Square Garden on or about March 17, 2017 asking herfor "a hug."

61.     On or about October 6, 2021, at his deposition in the federal law suit, Defendant Giardina testified that he was aware Plaintiff felt harassed and insulted by the attempted hug.

**Q**: So, if Ms. Perry felt threatened by your hug…on 3/17/2017, she justified in calling the cops on you?  **A**: …You know, she was insulted or, you know, felt insulted or harassed and she had a right to do whatever she needed to do to protect herself."

62.     Plaintiff reported the 3/17/2017 incident to Maria Herman, Affirmative Action Officer of the New York State Department of State ("NYS DOS"). By letter dated November 28, 2017, Ms. Herman stated, "[she] was unable to substantiate the allegations that …Respondent Giardina engaged in sexual harassment…and no further action will be taken with regard to this complaint.

63.     According to the November 2017 letter, Ms. Herman performed the investigation personally as she stated, "The Affirmative Action Officer (depicting herself in the third person) has completed its (sic) investigation…"  Ms. Herman exceeded her authority and failed to refer the matter to the Governor's Office of Employee Relations

64.     Based upon information and belief, throughout Plaintiff's employment from on or about 2003 through 2018, Defendant Herman failed to ensure a diverse workplace at NYSAC and failed to provide any training on EEO and NYS Human Rights Laws against workplace discrimination, harassment and retaliation.

65.     Throughout 2003 to 2018, there were a total of approximately 40 NYSAC inspectors in the NYC area.   These job opportunities were never publicly posted resulting in a workplace demographic of approximately five (5) black inspectors, one (1) afro-latina for a brief time during

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM    INDEX NO. 152543/2022

NYSCEF DOC. NO. 1    RECEIVED NYSCEF: 03/24/2022

on or about 2015 and at all relevant times zero(0) Asian Americans. The remaining majority were white male and female inspectors who were assigned "main events" or "televised / media broadcast events." The sport of boxing was at all relevant times predominantly African American or Black American athletes but African American men and women were intentionally and egregiously underrepresented in support staff at NYSAC which was within the control of all named Defendants.

66.    Previously, on or about 2015, executive director David Berlin's mission was to keep Plaintiff out of sight at televised or media broadcast events. All three executive directors Berlin, Giardina and Sumbler, at various times took Plaintiff completely out of assignment rotation to deprive her of any inspector assignments. Instead, based upon information and belief, they assigned executive director David Berlin's friend Sue Etkin, a white female inspector to all the main events or media broadcast events. Inspector Etkin was far less experienced than Plaintiff. But for Plaintiff's race, she would not have been deprived of these sought after main event assignments for which she was well qualified.

67.    At all relevant times throughout Plaintiffs' employment, Individual Defendants Sumbler and Giardina were actively involved in the day-to-day operations of Defendant NYSAC by and through their supervisors, commissioners and deputy commissioners.

68.    Defendant Linda Baldwin is currently counsel at the NYS DOS who was copied on Plaintiff Perry's complaints about discrimination, harassment and her discharge. Post discharge, Defendant Baldwin actively engaged with Defendants Leary and Sumbler to dispose of Plaintiff's complaints as set forth throughout this Complaint.

69.    As an official who was at all times put on notice of conduct by other employees at NYSAC that deprived Plaintiff Perry's Fourteenth Amendment rights to due process and equal

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM

NYSCEF DOC. NO. 1

INDEX NO. 152543/2022

RECEIVED NYSCEF: 03/24/2022

protection under the laws of NYS.  Defendant Baldwin did nothing to prevent, correct or abate these violations against Plaintiff.

70.        In an email dated on or about June 7, 2018,  approximately two months after Plaintiff was discharged, Defendant Baldwin stated to Defendant Leary, "Do you have time to talk for a few minutes?...re: Dorothea Perry's emails."

71.        Most recently, Defendant Baldwin attempted to influence the outcome of Plaintiff Perry's NYS Div. of Human Rights matter on or about August 2021 when she appeared on behalf of NYS DOS without a notice of appearance.  Defendant Baldwin served on the same non-profit Board for a waterfront development as the spouse of the Administrative Law Judge (ALJ) Alexander Linzer.  Defendant Baldwin and ALJ Linzer and his family further live within minutes of each other. ALJ Linzer and his spouse appeared in a large photo that was featured in a full page local news article.   The ALJ disclosed the potential conflict to Plaintiff  after opening statements. ALJ Linzer was subsequently replaced due to the appearance of conflict of interest.

72.        Based upon information and belief, Defendant Leary also advised on the non-profit board for the waterfront development detailed *supra*.

73.        Based upon information and belief, James Leary is the current assistant secretary of state and since on or about 2015 and throughout the course of Plaintiff Perry's employment with NYSAC made direct and repeated attempts to remove Plaintiff Perry from her position as inspector.  Defendant Leary attempted to enforce the 2 year ban to force Plaintiff to quit her inspector job.  This 2 year ban was not enforced on other non-African American employees such as former inspector Joe Schaeffer, former deputy commissioner, Keith Sullivan, and former director Eric Bentley who immediately went to work for a promoter Real Deal promotion company after leaving NYSAC on or about 2017.  In 2016 Defendant Leary and Defendant Giardina

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM

NYSCEF DOC. NO. 1

INDEX NO. 152543/2022

RECEIVED NYSCEF: 03/24/2022

attempted to coerce Plaintiff to decline participation in a 60 Minutes interview which Plaintiff was invited to participate in to discuss measures she took, on her own time, to help save the life of her friend, a boxer.   Defendants cited an alleged conflict of interest with her friendship with boxer Danny Jacobs and her role as a NYSAC inspector.   In 2018, Defendant Leary participated in concocting Defendant Sumbler's internal memo that alleged Plaintiff's violation of locker room policy at the event on April 21, 2018.   This alleged violation was debunked by investigations by PESH and NYS DHR and determined in their respective written determinations.

74.    Based on NYS Police reports and defendants' documents produced during discovery in the federal court matter, since on or about March 2017 through June 2018 James Leary engaged in a conspiracy to harass another Inspector Jean Seme who witnessed Plaintiff Perry being sexually harassed by Defendant Giardina at an event on March 17, 2017.

75.    Defendant Leary was the go-between for NYS DOS and NYS Police to maliciously have witness Jean Seme arrested and jailed.   NYS Police records revealed witness Seme had no criminal record and did not make any threats at any relevant time.   Defendant Sumbler falsely reported to NYS Police that she thought she heard a threat by witness Jean Seme to someone else. Jean Seme was terminated on 3/17/2017 which was the same night of the event at Madison Square Garden where Mr. Seme witnessed Plaintiff being sexually harassed with an attempted hug by Defendant Giardina.

76.    At all relevant times James Leary was aware or should have been aware there was no probable cause or any cause whatsoever to send NYS Troopers to interrogate and coerce Plaintiff Seme to admit to a crime he never committed.   Despite NYS Trooper Sands' updates to him that Plaintiff Seme

77.    Defendant Herman was the sole Affirmative Action Officer during Plaintiff's

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM

NYSCEF DOC. NO. 1

INDEX NO. 152543/2022

RECEIVED NYSCEF: 03/24/2022

employment with NYSAC.  Defendant Herman was also the sole investigative officer and decision maker for any and all complaints of discrimination by Plaintiff.

78.     During 2017, Defendant Herman falsified two internal complaints by signing on behalf of ("obo") Plaintiff without consent or authorization by Plaintiff ; and failed to provide Plaintiff with a copy of that complaint; and then informed Plaintiff verbally that there was no discrimination in the denial of her promotion and that the attempted hug by Defendant Giardina was not severe or pervasive.

79.     On or about November 2017, Defendant Herman stated to Plaintiff that there was no discrimination in denying her promotion to deputy commissioner even though all non-African American men with far less experience and education were promoted over Plaintiff.  Inspector Frank Vasquez who had less experience and education was promoted over Plaintiff.  Lead inspector George Ward testified at his deposition in the federal lawsuit that inspector Vasquez repeatedly called Plaintiff by a racial slur against African Americans, the "N" word and the misogynistic slur against women, "c**t" in front of other inspectors and supervisors.

80.     On or about 2017 Frank Vasquez threatened Plaintiff to sit down and shut up at inspector meetings and that he was an investigator for the NYS DHR to deter Plaintiff from filing complaints against him.

81.     Had Defendant Herman provided Plaintiff with a copy of the internal complaint, Plaintiff would have received the bold faced printed notice that she had a right to pursue the complaint with the EEOC or NYS DHR without waiting for the agency's determination and that Plaintiff also had one year from the date of the internal complaint to pursue the complaint with EEOC or NYSDHR.   Had Plaintiff been provided with this notice, Plaintiff would have timely pursued her claims with the EEOC or NYSDHR as she did with her termination in 2018.

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM

NYSCEF DOC. NO. 1

INDEX NO. 152543/2022

RECEIVED NYSCEF: 03/24/2022

## AS and FOR the FIRST CAUSE of Action
## pursuant to 42 USC §1983; NYS HRL §290 et seq.; CSL §75 et seq.

82.    Plaintiff repeats, realleges and incorporates by reference each and every allegation previously set forth as if fully set forth herein.

83.    42 USC §1983 states in pertinent part, "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State…subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by theConstitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…"

84.    The Fourteenth Amendment to the United States Constitution states in relevant part, "All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law…nor shall any State deprive any person of life, liberty, or property, without due process oflaw; nor deny to any person within its jurisdiction the equal protection of the laws."

85.    Plaintiff is citizen of the United States within the meaning of 42 USC §1983 ("1983") and the Fourteenth Amendment.

86.    All Defendants are "Every person" within the meaning of §1983.

87.    All individual defendants in their official capacity are the "State" along with NYSAC and NYS DOS within the meaning of the Fourteenth Amendment.

88.    State Action within the meaning of §1983 occurred when individual defendants deprived Plaintiff of property without due process and equal protection under the State's non-discrimination policies and laws and the CSL when they terminated Plaintiff.

**State Action by Defendant Giardina against Plaintiff**

89.    On or about March 2017, Defendant Giardina told Plaintiff Perry at a boxing event that

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM

NYSCEF DOC. NO. 1

INDEX NO. 152543/2022

RECEIVED NYSCEF: 03/24/2022

she had not been considered for promotion to deputy commissioner because he questioned Plaintiff's attentiveness and job performance even though Plaintiff had an exemplary work record, recommendations by superiors, far more years of work experience as a boxing inspector and academically superior to other candidates. Plaintiff held a 4 year college degree from an accredited university while the highest education level achieved by other candidates were a high school diploma.

90.       In transcribed notes produced by the Governor's Office of Employee Relations ("GOER") from interviews of Defendant Giardina during 2017 concerning Plaintiff's denial of a promotion to DC, Defendant Giardina stated that he denied Plaintiff's promotion because he "was concerned with her lack of judgment when it comes to matters involving black employees …that there is systematic discrimination of black employees…" NYS HRL prohibits discrimination in the discharge or denial of a promotion based on race which is what Defendant Giardina did when he denied Plaintiff a promotion because of her race and /or speaking out about racial discrimination and disparities in the workplace. At the time of Plaintiff's denial of promotion to DC on or about 2017, there were zero women promoted to DC and zero women serving as DCs.

91.       Plaintiff did not raise the issue of her race when she applied for the promotion. However, during his interviews on or about 2017, Defendant Giardina made Plaintiff's application and his denial of Plaintiff's promotion to DC about race.

92.       NYSAC made Plaintiff's application for promotion to DC about gender in addition to race. NYSAC promoted all non-African American men to DC over Plaintiff, the sole qualified black female applicant. Defendant Giardina stated in his 2017 interview, "I did not approve her for promotion. I felt that although she has some good skills as an inspector, I was concerned with…her lack of judgment when it comes to matters involving black employees, because of her

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM    INDEX NO. 152543/2022

NYSCEF DOC. NO. 1    RECEIVED NYSCEF: 03/24/2022

perception that everything is basically white against black and that there is systemic discrimination of black employees…"  All the men who promoted were less qualified in years of experience and education than Plaintiff.  One of those men Frank Vasquez promoted to DC repeatedly called Plaintiff a "N" word and a "c**t" in front of other NYSAC employees as testified to by lead inspector George Ward.

**State Action by Defendant Sumbler against Plaintiff**

93.    After Plaintiff Perry was terminated from her employment, at the behest of Defendant Sumbler, Plaintiff Perry was ejected from a place of public accommodations where she was lawfully and peacefully present.  Plaintiff was coerced and deterred  from attending any public events at public places of accommodation continuing to date. Accordingly, Defendant Sumbler engaged in post-employment retaliation against Plaintiff  that continues to date as Plaintiff  is fearful of lawfully attending a public boxing event.  Inspectors at NYSAC warned Plaintiff that if Defendant Sumbler saw her at an event Plaintiff would be ejected and suffer the same fate as witness Jean Seme who had NYSP sent to his home to silence him about witnessing sexual harassment of Plaintiff on 3/17/2017 by Defendant Giardina.  Defendant Sumbler repeatedly called NYSP on witness Jean Seme when he lawfully and peacefully attended a public boxing event and Defendant Sumbler would have likely done the same with Plaintiff.

94.    The Governor's office where Defendant Giardina and Brendan Fitzgerald (dec. on or about December 2018) both worked maintained a culture at the NYSDOS of mis-use of NYSP or unauthorized use of police power.  Defendant Sumbler by and through Defendant Giardina and Brendan Fitzgerald further abused that mis-use of NYSP.

95.    On or about April 21, 2018, at a boxing event at Barclays Center, Brooklyn NY ("Barclay's event") Defendant Sumbler deflected liability for her numerous and egregious safety

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM
NYSCEF DOC. NO. 1

INDEX NO. 152543/2022
RECEIVED NYSCEF: 03/24/2022

violations at that event by terminating Plaintiff on or about April 25, 2018 based on false allegations that Plaintiff violated locker room policy. Initially Defendant Sumbler's false allegations, which Plaintiff only became aware of during the NYSDHR proceeding in late 2018, long after Plaintiff was discharged, were debunked by the fact that Plaintiff's supervisors signed off on Plaintiff's end of event evaluation as having met all expectations in the performance of her job duties that evening.

96.        According to PESH and NYS DHR determinations, the video clip of people entering and leaving Gervonta Davis' locker room on April 21, 2018 did not support Defendant Sumbler's allegations that Plaintiff violated locker room policy at all. At all times, a Barclay's security guard and Gervonta Davis' own security guard stationed right outside the door to the subject locker room greeted and allowed every single person into the subject locker room, not Plaintiff. Plaintiff was the one who cleared the locker room of the people security allowed into the room. DC Kunkle failed to ever clear the subject locker room even though he was aware of the situation and had the authority to do so.

97.        At the same April 21, 2018 event, as alleged in paragraphs 28 through 32 supra and throughout this complaint, Plaintiff was subjected to workplace violence when Andrew Jackson a reporter for Swanson Media threatened, "I'll kill you" when Plaintiff refused to allow boxer Gervonta Davis to be diverted from his post bout medical exam to the press pool to be interviewed. Plaintiff reported the incident to Defendant Sumbler the same evening. Defendant Sumbler did nothing because she was the one who sent Andrew Jackson to divert boxer Davis to the press pool. Plaintiff further reported the incident to NYSDOS human resources dept. and the NYPD on April 22, 2018. Plaintiff was terminated without notice of any misconduct or reason, or opportunity to defend against her termination on April 25, 2018.

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM

NYSCEF DOC. NO. 1

INDEX NO. 152543/2022

RECEIVED NYSCEF: 03/24/2022

98.    At the same event on April 21, 2018 as alleged in paragraphs 33 through 43 supra and throughout this complaint, Defendant Sumbler failed to provide a language interpreter to boxer Justin Sami during his bout.  Defendant Sumbler allowed Mr. Sami's approximately 10 year old son to be a corner person in the ring.  When NYSAC officials prohibited the child from entering the ring, Mr. Sami was left without an interpreter.  Based upon information and belief, NYSAC commissioner of boxing witnessed Mr. Sami having difficulty communicating with ringside physicians.

99.    Further, to the allegations above, Defendant Sumbler failed to provide security protocols and security for NYSAC employees and boxers at the April 21, 2018 event when an active shooter event occurred.  The active shooter event and lock down were announced by a referee right behind Defendant Sumbler.  Defendant Sumbler failed to provide security to Plaintiff, boxer Gervonta Davis and Avery Browne M.D. who were headed to Mr. Davis' post bout medical exam and possibly into an active shooter situation.

100.    Further to the allegations above, in paragraph 97 and 98, based upon information ad belief, Defendant Sumbler endangered boxers when she understaffed the event on April 21, 2018 and assigned her linguist "Luanna" to assign boxing gloves to boxers.  Luanna had no training or background in boxing gloves and was not qualified for the task.  Inappropriate boxing gloves could have resulted in injury to the boxers.

101.    Further to the allegations above in paragraphs 97 through 99 and throughout this complaint, Defendant Sumbler allowed unauthorized persons to view the event on April 21, 2018 ringside which endangered boxers and ringside employees.

**Plaintiff's unlawful termination from employment with NYSAC**

102.    The New York State Civil Service Law ("CSL") §75 and the Rules and Regulations

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM

NYSCEF DOC. NO. 1

INDEX NO. 152543/2022

RECEIVED NYSCEF: 03/24/2022

promulgated thereunder, implement the mandate of the NYS Constitution, which states in relevant part, "Appointments and promotions in the civil service of the State and all of the civil divisions thereof, …shall be made according to merit and fitness to be ascertained, as far as practicable by examination…" Art. V, sec. 6 NYS

103.   NYS CSL §75 states in relevant part, " A person described in…paragraph (c)…of this subdivision shall not be removed or otherwise subjected to any disciplinary penalty …except for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section." Paragraph (c) states in relevant part, "an employee holding a position in the non-competitive or labor class…"

104.   Plaintiff was part of the labor class and unrepresented by a public labor union.

105.   CSL §75.2 applied to both Plaintiffs which states in pertinent part, "…*A person against whom removal or other disciplinary action is proposed shall have written notice thereof and of the reasons therefor, shall be furnished a copy of the charges preferred against him and shall be allowed at least eight days for answering the same in writing.*"

106.   Plaintiff did not receive any notice of charges or of removal at any time in writing at any relevant time.

107.   CSL 75.2 further states in relevant part,

" …The hearing upon such charges shall be held by the officer or body having the power to removethe person against whom such charges are preferred…"   and "…The person or persons holding such hearing shall, upon the request of the person against whom charges are preferred, permit him to be represented by counsel…"

108.   Plaintiff was never afforded a hearing on their charges or discharge despite her numerous requests to NYS DOS for a hearing.

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM

NYSCEF DOC. NO. 1

INDEX NO. 152543/2022

RECEIVED NYSCEF: 03/24/2022

109.   The April 25, 2018 termination letter from human resources director Debra Meade at NYS DOS to Plaintiff, stated no reason whatsoever for Plaintiff Perry's termination. Plaintiff was never afforded due process notice of any misconduct as the basis for her termination at any relevant time or any opportunity to defend against her discharge. Accordingly, Defendants NYS DOS and NYSAC deprived Plaintiff of her employment without due process under the US and NYS constitution and CSL.

110.   Even assuming arguendo Plaintiff was an at will employee, under New York State's common law doctrine of Stigma Plus violation of due process, Plaintiff was entitled under law at least to a post discharge hearing.

111.   As alleged throughout this complaint, on or about April 23, 2018, Defendant Leary and Brendan Fitzgerald requested in an email to Defendant Sumbler that Defendant Sumbler draft a memo about Plaintiff's alleged violation of locker room policy. A few days later, Plaintiff was discharged on or about April 25, 2018 without notice or opportunity to be heard on the allegations in that memo dated on or about April 23, 2018, in violation of CSL §75.2.

**State Action by Defendant Leary**

112.   Since on or about 2014 through the date of Plaintiff Perry's termination, NYSAC, by and through David Berlin and NYS DOS counsel James Leary enforced a 2 year ban on employment with NYSAC because Plaintiff acted as a boxing judge in the state of Virgina. NYSAC purported that if a NYSAC employee wanted to be a boxing judge or work for a promoter, he/she was required to quit as an inspector for 2 years. However, this 2 year ban was enforced only against black inspectors such as Plaintiffs Perry and witness Jean Seme to deter them from becoming judges. White male employees however, based upon information and belief, were not subject to this rule as former Executive Director Eric Bentley, David Berlin and other white inspectors

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM    INDEX NO. 152543/2022

NYSCEF DOC. NO. 1                                                    RECEIVED NYSCEF: 03/24/2022

worked immediately before and after for promoters.

113.    On or about 2016, when NYSAC under the leadership of Defendant Giardina, discovered Plaintiff Perry was traveling to other states to judge boxing events, Defendant Leary on behalf of the office of general counsel wrote a letter demanding that Plaintiff Perry resign. When Plaintiff Perry replied with evidence thatshe was not in violation of any law, rules, or regulations and that she was not in conflict of interest, Defendant Leary, by letter dated on or about 2016, retreated from their intimidation to coerce Plaintiff Perry to resign and apologized.

114.    As alleged in paragraphs 27, 28, 61 through 64 and throughout this Complaint Defendant Herman knowingly failed to ensure a diverse workplace, failed to ensure diversity and inclusion and EEO harassment training to NYSAC employees.  Herman and Defendant Baldwin also knowingly failed to safeguard, protect and inform Plaintiff of her rights against discriminatory policies and practices and instead concealed Plaintiff's claims under Title VII and NYSDHR.

115.    Accordingly, Defendants are liable to Plaintiff for compensatory damages and equitable relief including but not limited to reinstatement and promotion to DC.

### AS and FOR a SECOND CAUSE of ACTION
### (Abuse of Process under §1983)

116.    Plaintiff repeats, realleges and incorporates by reference each and every allegation previously set forth as if fully set forth herein.

117.    A malicious abuse of process claim under §1983 are derived from state law.

118.    Under New York Law, an abuse of process claim has 3 essential elements 1) regularly issued process, either civil or criminal; 2) an intent to do harm without excuse of justification; and (3) use of the process in a perverted manner to obtain a collateral objective.  *Curiano v. Suozzi* 63 NY2d 113, 116 (1984)

119.    As alleged throughout this Complaint, Defendant Herman regularly and singlehandedly

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM

NYSCEF DOC. NO. 1

INDEX NO. 152543/2022

RECEIVED NYSCEF: 03/24/2022

processed workplace discrimination complaints from NYSAC.  Defendant Herman succeeded in her "catch and kill" response to all of Plaintiff's discrimination and sexual harassment complaints, and concealing Plaintiff's meritorious claims which were a perverted use of Defendant Herman's power and authority to all of Plaintiff's discrimination and sexual harassment complaints fully aware that it would harm Plaintiff mentally, emotionally and financially.  Defendant Herman's collateral objective was to silence Plaintiff and absolve Defendant Giardina and DC Vasquez  of any accountability or liability to Plaintiff.

120.    As alleged throughout this Complaint Defendant Leary abused his power and authority as an attorney for NYS DOS to procure Plaintiff's silence about discrimination in licensing and other terms and conditions of her employment and/or Plaintiff's resignation or termination from employment at NYSAC.

121.    On or about 2015 Defendant Leary demanded Plaintiff's resignation for allegedly working as a boxing judge in VA in violation of NYSAC policy.  Defendant Leary did not afford Plaintiff notice and opportunity to be heard with a representative of her choice in defending against this allegation.  Instead, Defendant Leary used his position as an attorney to gaslight Plaintiff into believing she somehow violated a policy and then to intimidate and coerce Plaintiff, a non-lawyer to resign.

122.    On or about 2017, Defendant Leary once again harassed Plaintiff about appearing on a 60 minutes interview on behalf of a friend, boxer Danny Jacobs and with Defendant Giardina made all attempts to thwart this appearance.  On or about 2018, NYSAC, without authority granted publishing rights to Netflix for a video clip of Plaintiff in a documentary.  NYSAC did not notify or procure consent from Plaintiff to use her likeness for profit at any relevant time.

123.    On or about 2018, as alleged throughout this Complaint, Defendant Baldwin made all

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM

NYSCEF DOC. NO. 1

INDEX NO. 152543/2022

RECEIVED NYSCEF: 03/24/2022

attempts to silence or erase Plaintiff's discrimination, sexual harassment and retaliation complaints by attempting to thwart Plaintiff's NYS DHR case by attempts to influence Administrative Law Judge Alexander Linzer.

124.    Since on or about 2017 and continuing to date, as alleged throughout this Complaint, Defendant Giardina denied Plaintiff her promotion based on race, sexually harassed Plaintiff causing mental anguish, denied Plaintiff media event assignments, attempted to thwart Plaintiff's media appearances, and continues to harass Plaintiff through the news media by leaking Plaintiff's personnel information.

125.    As alleged throughout this Complaint, Defendant Giardina's objectives at all relevant times were to gaslight and silence Plaintiff about systemic bias against African American employees at NYSAC.

126.    Since on or about 2017 and continuing to date, as alleged throughout this complaint, Defendant Sumbler sought to erase all black, female inspectors from NYSAC and prevented Plaintiff from lawfully and peacefully attending public boxing events.  Defendant Sumbler abused her power and authority and terminated Plaintiff without cause in violation of CSL *supra* and Stigma Plus law as detailed *infra*.

127.    Accordingly, the individual defendants in their official or individual capacities are liable to Plaintiff in compensatory, punitive damages as well as equitable relief including but not limited to reinstatement to employment and promotion to DC.

### As and for a THIRD CAUSE of ACTION
### Stigma Plus Due Process Claim

128.    Plaintiff repeats, realleges and incorporates by reference each and every allegation previously set forth as if fully set forth herein.

129.    Stigma Plus Due Process Claims involve the government's termination of its employees

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM

NYSCEF DOC. NO. 1

INDEX NO. 152543/2022

RECEIVED NYSCEF: 03/24/2022

which are a tangible interest or property right (plus) that injures the government employee's reputation (stigma) without adequate process. Due process necessitates that the government employee be afforded notice and opportunity to be heard on their termination or discharge.

130.    As alleged throughout this complaint, Defendant Sumbler terminated Plaintiff without due process notice and opportunity to be heard. Defendant Sumbler thereafter published a false pretext to NYS DOS and NYSAC officials that Plaintiff violated locker room policy on or about April 21, 2018 without ever notifying Plaintiff of such charge thereby besmirching Plaintiff's reputation as a boxing inspector / public official within the sport.

131.    Defendant Giardina continually to date, has leaked Plaintiff's personnel information and that she was terminated to the local news media.

132.    As alleged throughout this complaint, on or about April 2018 after Plaintiff's discharge, Defendant Sumbler used security to remove Plaintiff from a public boxing event where she was lawfully and peacefully present to further damage Plaintiff's public reputation as a boxing official.

133.    As alleged throughout this Complaint, at all relevant times, Defendants Baldwin, Leary and Herman were aware of Defendants Sumbler and Giardina's malicious and unlawful conduct towards Plaintiff and the ongoing damage to Plaintiff's reputation and did nothing to stop or correct or abate the damage to Plaintiff.

134.    For the foregoing reasons, all named individual defendants are liable to Plaintiff for compensatory, punitive and prospective damages in an amount to be determined at the time of trial and equitable relief including but not limited to reinstatement and promotion to DC.

### As and for a FOURTH CAUSE OF ACTION
### Against Defendant Maria Herman for Fraudulent Concealment of Plaintiff's Claims

135.    Plaintiff repeats, realleges and incorporates by reference each and every allegation previously set forth as if fully set forth herein.

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM    INDEX NO. 152543/2022
NYSCEF DOC. NO. 1                                        RECEIVED NYSCEF: 03/24/2022

136.    The elements for Fraud are: 1) misrepresentation or material omission of fact; 2) which was false and known to be false by defendant; and 3) made for the purpose of inducing the other party to rely upon it; and 4) justifiable reliance of the other party on the misrepresentation or material omission; and 5) injury.

137.    As alleged throughout this Complaint Defendant Herman falsified internal discrimination complaints about Plaintiff's denial of a promotion to DC and sexual harassment by Defendant Giardina in 2017.    Defendant Herman signed these complaints on behalf of Plaintiff without Plaintiff's authorization and consent.    Defendant Herman then investigated the complaints and determined the complaints to be unsubstantiated.

138.    As alleged throughout this Complaint Defendant Herman misrepresented to Plaintiff that Anthony Giardina's attempt to hug her or make physical contact with Plaintiff was neither pervasive or substantial to warrant a finding of sexual harassment.    As the sole Affirmative Action Officer, Defendant Herman knew or should have known that this representation of Defendant Giardina's attempt to make physical contact with Plaintiff was not "pervasive and substantial" were false.    Plaintiff justifiably relied on Defendant Herman's representation because Defendant Herman was the sole Affirmative Action Officer.

139.    Similarly, Plaintiff justifiably relied on Defendant Herman's representations that there was no discrimination in denying her promotion and did not take these complaints to the EEOC or NYS DHR because Plaintiff never received a copy of the internal complaints.    As alleged throughout this Complaint, the Internal Complaints contained written notices that Plaintiff did not have to wait for the outcome of the internal complaint and could proceed to the EEOC or NYSDHR within approximately 1 year from the date of the internal complaint.

140.    Plaintiff suffered injury based on Defendant's fraudulent concealment of her claims

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM

NYSCEF DOC. NO. 1

INDEX NO. 152543/2022

RECEIVED NYSCEF: 03/24/2022

because the discrimination and harassment went unabated, unaddressed and Plaintiff ultimately suffered termination from employment in retaliation for making the internal complaints.

141.    Accordingly, Plaintiff should be afforded tolling of the statute of limitations on claims arising from these internal complaints, compensatory damages, and equitable relief including but not limited to reinstatement to employment and promotion to DC.

**As and for a FIFTH CAUSE OF ACTION**
**Common Law Civil Conspiracy against individually named Defendants**

142.    Plaintiff repeats, realleges and incorporates by reference each and every allegation previously set forth as if fully set forth herein.

143.    A New York claim for civil conspiracy is not an independent tort and therefore, based on a primary tory cause of action.  A civil conspiracy claim requires the primary or underlying tort with: 1) an agreement between two or more defendants; and 2) an overt act in furtherance of the agreement and 3) the parties' intentional furtherance of the agreement and 4) injury or damages to the plaintiff.

144.    As alleged throughout this Complaint, two or more of all named defendants at various times throughout the employment of Plaintiffs agreed and conspired with each other to deprive Plaintiff of her rights to property, due process and equal protection under the laws of New York State as guaranteed by the Fourteenth Amendment.  Additionally, based on the second cause of action for abuse of process and third cause of action for stigma plus violations of due process form the bases for a civil conspiracy claim.

145.    As alleged throughout this Complaint, Maria Herman suppressed Plaintiff's discrimination and harassment complaints against Defendant Giardina, Sumbler, David Berlin and Frank Vasquez to deter her from filing further complaints to the EEOC or New York State Division of Human Rights.  As alleged throughout this Complaint, Defendant Herman, Defendant Giardina, Defendant

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM

NYSCEF DOC. NO. 1

INDEX NO. 152543/2022

RECEIVED NYSCEF: 03/24/2022

Leary and Defendant Baldwin all communicated with each other to suppress Plaintiff's claims. For instance, Defendant Baldwin emailed Defendant Leary on or about June 2018 to discuss Plaintiff's emails.

146.     Defendant Baldwin attempted to influence the outcome of Plaintiff Perry's NYS Div. of Human Rights matter on or about August 2021 when she appeared on behalf of NYS DOS with knowledge that she had a financial and personal relationship with the Administrative Law Judge's (ALJ) spouse. The ALJ disclosed the relationship after opening arguments and was subsequently replaced due to the appearance of conflict of interest.

147.     Defendant Leary throughout the course of Plaintiff Perry's employment with NYSAC made direct and repeated attempts to remove Plaintiff Perry from her position as inspector. First it was the 2 year ban that was not enforced on other non-AA employees such as former inspector Joe Schaeffer and former director Eric Bentley who immediately went to work for a promoter Real Deal promotion company after leaving NYSAC on or about 2017.

148.     As alleged throughout this complaint, on or about April 23, 2018, Defendant Leary and Brendan Fitzgerald requested in an email to Defendant Sumbler that Defendant Sumbler draft a memo about Plaintiff's alleged violation of locker room policy. A few days later, Plaintiff was discharged on or about April 25, 2018 without notice or opportunity to be heard on the allegations in that memo dated on or about April 23, 2018, in violation of CSL §75.2.

149.     Based on NYS Police and defendants' documents, since on or about March 2017, James Leary was the go-between for NYS DOS and NYS Police to maliciously have witness Jean Seme arrested and jailed because Mr. Seme witnessed Plaintiff being sexually harassed by Defendant Giardina with an attempted hug.

150.     At all relevant times, Defendant Leary was aware or should have been aware there was no

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM

NYSCEF DOC. NO. 1

INDEX NO. 152543/2022

RECEIVED NYSCEF: 03/24/2022

probable cause or any cause whatsoever to send NYS Troopers to interrogate and coerce Mr. Seme to admit to a crime he never committed. Despite NYS Trooper Sands' updates to him that Plaintiff Seme made no threats and committed no crime, and despite the Bronx and Manhattan DA's offices refusal to even investigate their false reports of aggravated harassment, Defendant Leary continued to advance false reports of threats made by Mr. Seme to NYS police and caused continuing surveillance of Mr. Seme.

151. All Defendants copied each other on emails concerning Plaintiff and whether by action or inaction or omission, they all agreed to participate and conspire to discharge, harass and retaliate against Plaintiff continuing to date.

152. According to the above, Any one or all Defendants are liable to Plaintiff for damages incurred by Plaintiffs as a result of Defendants' misconduct to deprive Plaintiff of liberty and property without due process and equal protection under laws of NYS guaranteed by the Fourteenth Amendment. Damages include but are not limited to: back pay, front pay, loss of opportunities or contracts, loss of wages, compensatory, economic, prospective and punitive damages with attorney fees and costs, and pre and post judgment interest.

<u>**Prayer for Relief**</u>

**WHEREFORE,** Plaintiff respectfully prays for the following relief by the Court:

a) Tolling the statute of limitations on the fraudulently concealed claims concerning denial of Plaintiff's promotion to DC based on gender and race; and the sexual harassment by Defendant Giardina suffered by Plaintiff when Defendant Giardina attempted to make physical contact with Plaintiff; and

b) Declaring the acts and practices complained of herein are in violation of the US and NYS Constitution, §1983, NYSHRL, NYS common law of abuse of process, stigma plus

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM
INDEX NO. 152543/2022
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 03/24/2022

violation of due process, and civil conspiracy;

c) Enjoining and permanently restraining the violations detailed in paragraph "a" *supra*;

d) Directing Defendants to take affirmative action necessary to ensure that the effects of these unlawful practices are eliminated;

e) Directing Defendants to re-instate Plaintiff to her employment as an inspector at NYSAC and promote Plaintiff to Deputy Commissioner that she qualified for in 2017;

f) Directing Defendants to pay compensatory damages for emotional distress, mental anguish and humiliation;

g) Directing Defendants to pay Plaintiff compensatory damages including but not limited to back pay, prospective pay and uncompensated medical expenses;

h) Directing Defendants to place Plaintiff in the position she would have been in but for Defendants' discriminatory treatment, and to make her whole for damage to her reputation and all earnings she would have received but for Defendants' discriminatory and retaliatory treatment, including but not limited to back-pay, licensure as a NYS boxing judge and attendant contracts, retirement, state service time, pension and other lost benefits.

i) Awarding of reasonable attorney's fees, expert fees, costs and disbursements;

j) Awarding Plaintiff such interest as is allowed by law; and

k) Granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
      March 24, 2022

Law Office of Susan Ghim
Attorney for Plaintiff Dorothea Perry
/s/ Susan Ghim

_____

BY:   Susan Ghim
      244 Fifth Avenue, Suite 1434
      New York, New York 10001
      (646) 889-1011 / ghimlaw@gmail.com

FILED: NEW YORK COUNTY CLERK 03/24/2022 04:43 PM

NYSCEF DOC. NO. 1

INDEX NO. 152543/2022

RECEIVED NYSCEF: 03/24/2022

## ATTORNEY VERIFICATION

State of New York   )

                        ) :ss

County of New York  )

I, the undersigned attorney duly admitted to practice in New York State, affirm under penalty of perjury and pursuant to CPLR §2106 as follows:

1.     The Affiant is the principal of the Law Office of Susan Ghim, Attorney for Plaintiff Dorothea Perry.

2.     The Affiant has read the foregoing Verified Complaint and knows the contents thereof; that the same are true to Affiant's own knowledge except as to those matters therein stated to be alleged based upon information and belief, and as to those matters, I believe them to be true. The source of Affiant's knowledge and information consists of records, and information contained in the client file relating to this action maintained in the office of the undersigned attorney for said Plaintiff and the Affiant's consultation with Plaintiff.

3.     This verification is made by the Affiant pursuant to CPLR 3020(b)(3) because the said Plaintiff / party is not a resident of the County of New York, the County in which the undersigned attorney maintains her law office.

Dated:  New York, N.Y.
         March 24, 2022

Law Office of Susan Ghim
Attorney for Plaintiff Dorothea Perry

/s/ Susan Ghim

_____

Susan Ghim
244 Fifth Avenue, Suite 1434
New York, NY 10001
Email: Ghimlaw@gmail.com / Ph. 646-889-1011