# **EXHIBIT K**

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 06/27/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------------x

DOROTHEA PERRY,                                        Index No. 152543 / 2022

                              Plaintiff,              **FIRST AMENDED
                                                      SUMMONS**

          -against-                                   The designated venue is
                                                      New York County where
NEW YORK STATE ATHLETIC COMMISSION,                   the cause of action arose.
NEW YORK STATE DEPARTMENT OF STATE,
ROBERT J. RODRIGUEZ, Sec'y of State,
NEW YORK STATE DEPARTMENT OF LABOR,
ROBERTA REARDON, Commissioner,
KIM SUMBLER, ANTHONY GIARDINA,
MARIA HERMAN, LINDA BALDWIN,
JAMES LEARY, BRIDGET HOLOHAN SCALLY
AND JILL ARCHAMBAULT, individually and
in their official capacities,
                              Defendants.
-------------------------------------------------------------------------x

    **TO THE ABOVE-NAMED DEFENDANTS**:

          **YOU ARE HEREBY SUMMONED** to appear in the Supreme Court of the County of
New York at the office of the Clerk of the said Court located at 60 Centre Street, New York, NY,
within the time provided by law as noted below and to file your answer to the annexed complaint
with the Clerk; upon your failure to answer, judgment will be taken against you for the relief
demanded in the Complaint, together with costs of this action.

    Dated: New York, New York
           June 27, 2022

                                        Law Office of Susan Ghim
                                        Attorney for Plaintiff

                                        _____

                                 By:    Susan Ghim, Esq.
                                        244 Fifth Avenue, Suite 1434
                                        New York, NY 10001
                                        (646) 889-1011

**NOTE: The law provides as follows:**
     (a) If this summons is served by its delivery to you personally within the City of New York,
you must appear and answer within TWENTY (20) days after such service; or

1

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5                                                        RECEIVED NYSCEF: 06/27/2022

(b) If this summons is served by delivery to any person other than personal delivery to you within the City of New York of if the summons is served outside of the city of New York, you are allowed THIRTY (30) days after the proof of service thereof is filed with the Clerk of this Court within which to appear and answer.

TO DEFENDANTS:

**VIA NYSCEF**:

Lisa Joslin, Esq.
Nancy Williamson, Esq.
Gleeson, Dunn, Walsh & O'Shea
Attorneys of record for Defendants:

New York State Department of State
Robert J. Rodriguez, Sec'y of State
New York State Athletic Commission
Kim Sumbler
Anthony Giardina
Maria Herman
Linda Baldwin
James Leary

**VIA FIRST CLASS MAIL pursuant to CPLR 312-a**:

Roberta Reardon, Commissioner
New York State Department of Labor
Attn: Jill Archambault, General Counsel
Harriman State Campus, Building 12
Albany, NY 12241

Bridget Holohan Scally. Asst. Gen. Counsel
New York State Department of Labor
Harriman State Campus, Building 12
Albany, NY 12241

Jill Archambault, General Counsel
New York State Department of Labor
Harriman State Campus, Building 12
Albany, NY 12241

2

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5                                                RECEIVED NYSCEF: 06/27/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------------x

DOROTHEA PERRY,                                    Index No. 152543 / 2022

                           Plaintiff,         **VERIFIED FIRST**
                                                   **AMENDED COMPLAINT**
        -against-

NEW YORK STATE ATHLETIC COMMISSION,
NEW YORK STATE DEPARTMENT OF STATE,
ROBERT J. RODRIGUEZ, Sec'y of State,
NEW YORK STATE DEPARTMENT OF LABOR,
ROBERTA REARDON, Commissioner,
KIM SUMBLER, ANTHONY GIARDINA,
MARIA HERMAN, LINDA BALDWIN,
JAMES LEARY, BRIDGET HOLOHAN SCALLY
AND JILL ARCHAMBAULT, individually and
in their official capacities,

                           Defendants.
-------------------------------------------------------------------------x

       Plaintiff Dorothea Perry ( "Plaintiff"), by and through her attorney, Law Office of Susan Ghim, complaining of New York State Athletic Commission, New York State Department of State, New York State Department of Labor, Kim Sumbler, Anthony Giardina, Maria Herman, Linda Baldwin, James Leary, Bridget Holohan Scally and Jill Archambault individually and in their official capacities alleges as follows:

<u>PRELIMINARY STATEMENT</u>

1.     Plaintiffs Dorothea Perry ("Plaintiff") brings this action pursuant to New York State Human Rights Law, Executive Law §290 et seq., ("NYSHRL"); Civil Service Law §75 et seq., New York State Common Law Claim of Abuse of Process and 42 USC §1983 and the Fourteenth Amendment to the United States Constitution to remedy gender and racial discrimination and

1

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5                                                                RECEIVED NYSCEF: 06/27/2022

hostile work environment. Plaintiff further brings common law claims of stigma plus violation of due process and civil conspiracy against individually named defendants.

2.    The §1983 claims were commenced on or about March 4, 2021 in the United States District Court, Southern District of New York in Perry et al., v. New York State Athletic Commission et al., 21 cv 1967 ("federal lawsuit").  The federal lawsuit was voluntarily dismissed without prejudice and so ordered by the United States District Court on or about September 22, 2022.

3.    Plaintiff re-filed these §1983 claims in this Court to join them with further state causes of action that were discovered during the federal law suit but were discretionary as to whether the United States District Court would exercise  supplemental jurisdiction over state law claims.

4.    Plaintiff's §1983, abuse of process, fraud and civil conspircary claims against the New York State Department of Labor ("DOL"), Bridget Holohan Scally and Jill Archambault were originally commenced in this action.  A Notice of Claim was served on the Office or the Attorney General ("OAG"), DOL, Scally and Archambault via First Class Mail pursuant to CPLR 312-a on or about June 16, 2022 with an emailed copy of the Notice of Claim to Noam Lerer, Asst. A.G., OAG.

5.    Accordingly, Plaintiff further brings state law claims against the individual Defendants for fraudulent concealment of Plaintiff's claims; abuse of process; Stigma Plus, and Civil Conspiracy claims.

6.    Plaintiff seeks reinstatement to employment at NYSAC; promotion to Deputy Commissioner for NYSAC that was wrongfully denied to Plaintiff based on gender and/or racial discrimination; declaratory relief, back pay, compensatory damages, attorney fees and costs, punitive damages against individual Defendants in their individual capacities and other and further legal and equitable relief that this Court deems just and proper.

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 06/27/2022

7.      A notice of intention to file these state law claims against all named NYSAC and NYS DOL Defendants were served on the NYS Office of the Attorney General ('OAG") timestamped, October 20, 2021, 11:03AM

8.      Plaintiff worked as an Inspector for NYSAC from on or about 2004 and was wrongfully terminated on or about April 25, 2018;  Plaintiff was a public official and civil service employee who was discharged without any notice of charges of misconduct and without any opportunity to be heard.  At the time of Plaintiff's termination, she had an exemplary work record with work recommendations and recommendations for promotion to deputy commissioner by superiors.  At the time of Plaintiff's termination, Plaintiff had no record of employment discipline.

9.      On or about April 22, 2018, Plaintiff filed a workplace violence complaint with NYSAC / NYS DOS about an incident wherein Andrew Roberts, a reporter for Swanson Media kicked doors and trash cans as he yelled threats to kill Plaintiff as she performed her job duties at an event on April 21, 2018 at Barclays event center.  On or about April 22, 2018, Plaintiff fearing for her life and safety of others, made a NYPD report about the incident as well.  A few days later, on or about April 25, 2018, Plaintiff was terminated from her employment without any reason.

10.     On or about March 8, 2021 a final decision by PESH, DOL concerning the workplace violence complaint dated on or about April 22, 2018 in favor of Plaintiff and was submitted to the office of general counsel for final review and issuance.  On or about March 2022, the March 8, 2021 decision was issued by the office of general counsel.  Without notice, on or about May 13, 2022, with a fraudulently signed or forged letter, Defendant Scally issued to Plaintiff the letter withdrawing the March 8, 2021 decision ("withdrawal letter").  The withdrawal letter was purportedly signed by Jill Archambault.  However, the signature read, "AmyCKarp" as one word, as follows:

3

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 06/27/2022

Very truly yours,

*Jill Archambault* (signature)

Jill Archambault
Deputy Commissioner and General Counsel

The full letter is attached to this First Amended Complaint as Exhibit A.

11.    Also proximately close in time to Plaintiff's termination, by letter dated on or about April 8, 2018, the NYS Office of the Inspector General ("OIG") informed Plaintiff that her previous discrimination and hostile work complaints to Affirmative Action Officer Maria Herman would be forwarded to the Governor's Office of Employee Relations ("GOER") for investigation.

12.    Plaintiff repeatedly asked management and human resources the reason for her termination from employment on April 25, 2018 and a hearing on her termination since on or about April 25, 2018.  Plaintiff was denied notice of charges or the basis for her termination and was not afforded a hearing on her termination to date.   Plaintiff repeatedly followed up on her discrimination and hostile work environment claims to Defendant Herman to no avail.  Defendants stonewalled Plaintiff about her termination and discrimination claims until Plaintiff filed a federal lawsuit and was afforded discovery including deposition testimony by Defendants.

13.    Based on Defendants repeated violations of state, federal and constitutional laws that continue to date, Plaintiff seeks compensatory and mental anguish damages in addition to equitable relief including but not limited to tolling of the statute of limitations for continuing pattern of harassment and discrimination since on or about 2015, re-instatement to employment and promotion to Deputy Commissioner Plaintiff was qualified for and was unlawfully denied.

4

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5                                                          RECEIVED NYSCEF: 06/27/2022

<u>EXHAUSTION OF ADMINISTRATIVE REMEDIES</u>
<u>AND TOLLING OF STATUTE OF LIMIATIONS</u>

14.    On or about May 2018,  Plaintiff Perry timely filed a complaint with the New York State Division of Human Rights ("NYSDHR") for wrongful termination and retaliation based on racial and gender discrimination.  A probable cause hearing is pending on this matter Perry v. NYSAC et al Case no. 10195419.  The NYS DHR determined that the discriminatory denial of Plaintiff's promotion application to deputy commissioner on or about March 2017 and the March 17, 2017 sexual harassment of Plaintiff by Defendant Giardina were time barred.

15.    However, on or about October 15, 2021 during the deposition of Plaintiff by NYSDOS/NYSAC in the federal lawsuit, Plaintiff discovered for the first time that Defendant Herman fraudulently concealed Plaintiff Perry's claims for sexual harassment and discriminatory denial of her promotion to Deputy Commissioner ("DC").  Accordingly, the statute of limitations on these concealed claims should be six (6) years from the date of the incident or two (2) years from the date Plaintiff should have discovered the claims.  The alleged incidents occurred during 2017 and the 6 year statute of limitations would run to on or about March 17, 2023.  The date the concealed claims were discovered occurred on or about October 15, 2021 and two years from that date would run to on or about October 15, 2023.

16.    On or about December 7, 2021, at Defendant Herman's continued deposition in the federal lawsuit, Defendant Herman admitted to signing the internal complaints detailed *supra* on behalf of Plaintiff without Plaintiff's consent or authorization and never provided Plaintiff with the copies of those complaints that provided notices to Plaintiff that she did not have to wait for the internal process to finish to file a complaint with the EEOC and/or NYSDHR and that Plaintiff had one year from the date of the internal complaint to file a complaint with the EEOC and/or NYS DHR.

5

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 06/27/2022

17.     Defendant Herman was the sole Affirmative Action Officer during Plaintiff's employment with NYSAC.  Defendant Herman was also the sole investigative officer and decision maker for any and all complaints of discrimination by Plaintiff.   During 2017, Defendant Herman falsified two internal complaints by signing on behalf of ("obo") Plaintiff without consent or authorization by Plaintiff ; and failed to provide Plaintiff with a copy of that complaint; and then informed Plaintiff verbally that there was no discrimination in the denial of her promotion and that the attempted hug by Defendant Giardina was not severe or pervasive.  Defendant Herman stated to Plaintiff that there was no discrimination in denying her promotion to deputy commissioner even though all non-African American men with far less experience and education were promoted over Plaintiff including an inspector named Frank Vasquez who repeatedly called Plaintiff by a racial slur against African Americans, the "N" word and the misogynistic slur against women, "c**t" in front of other inspectors and supervisors.  Had Defendant Herman provided Plaintiff with a copy of the internal complaint, Plaintiff would have received the bold faced printed notice that she had a right to pursue the complaint with the EEOC or NYS DHR without waiting for the agency's determination and that Plaintiff also had one year from the date of the internal complaint to pursue the complaint with EEOC or NYSDHR.   Had Plaintiff been provided with this notice, Plaintiff would have timely pursued her claims with the EEOC or NYSDHR as she did with her termination in 2018.

**FACTUAL ALLEGATIONS**

18.     Plaintiff Dorothea Perry ("Perry") commenced her employment as a civil service employee within the meaning of Civil Service Law §75 ("CSL") et seq. as a boxing inspector on or about 2004.  Plaintiff signed a CSL Public Oath of Officer form that clearly provided that Plaintiff was a CSL employee.  Plaintiff was terminated from her employment on or

6

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 06/27/2022

about April 25, 2018 a few days after Plaintiff filed a workplace violence complaint with Defendant Sumbler on April 21, 2018, with human resources and NYPD on or about April 22, 2018. The termination also took place approximately two weeks after the OIG notified Plaintiff by letter dated on or about April 8, 2018 that her discrimination complaints made to Defendant Herman would be referred to GOER.

19.    At the time of discharge from her employment, Plaintiff was not provided in writing what the cause of her termination was; and without notice of any misconduct or charges as the basis for her termination; and without an opportunity to heard pursuant to the CSL and due process provisions under the Fourteenth Amendment to the United States Constitution and New York State Constitution.

20.    On or about May 2004, Plaintiff signed an oath of public office with the New York State Department of State and was awarded a public official badge.

21.    On or about May 2004, Plaintiff Perry was recommended for the inspector position by black boxers who appreciated and requested her advocacy regarding the terms and conditions of the boxer's training at NYSAC facilities and performance event spaces that impacted their health welfare and safety.

22.    Plaintiff's duties as an Inspector were to be the "eyes and ears" of NYSAC which included: assisting or escorting boxers, wrestlers or MMA fighters through the event process from arrival to the event space, through departure from the event space, and to ensure that these athletes were properly tested and examined byNYSAC medical doctors before and after each event.

23.    During her fourteen (14) years of employment as an inspector with NYSAC, Plaintiff Dorothea Perry was the only black female inspector at NYSAC.

7

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 06/27/2022

24.     Based upon information and belief, during the 14 years of Plaintiff's employment with NYSAC and to date, there have been zero African American women and zero Asian American inspectors employed at NYSAC. During Plaintiff's employment at NYSAC, there were zero female deputy commissioners employed.

25.     During Plaintiff's employment at NYSAC willfully denied hourly minimum wage and denied any wages for hours beyond 8 hours per workshift.  It took an average of six (6) weeks for Plaintiff to be compensated.  Since on or about 2004, Plaintiff was paid $52 for each event worked which was approximately 12 hours per event in violation of NYLL §650 et seq. Ms. Perry was also denied work breaks during her workshift and a proper break room for meals.. Ms. Perry  was required to eat meals in the indoor parking lot where numerous  trucks  idled  and  produced  overwhelming  diesel  fumes.

26.     Since on or about 2016, despite an exemplary work record without any discipline, and recommendations by superiors such as the Chairman of NYSAC and the Director of Boxing, Eric Bentley, and lead Inspector George Ward, Plaintiff was denied a promotion to deputy commissioner on or about 2017.

27.     GOER produced a transcript of phone and in-person interviews on 4/11/2017; 5/8/2017 (phone) and 4/19/2017; 6/6/2017 (in person) with Defendant Giardina.concerning the denial of Plaintiff's promotion to DC.  Defendant Giardina stated, "I did not approve her for promotion.  I felt that although she has some good skills as an inspector, I was concerned with…her lack of judgment when it comes to matters involving black employees, because of her perception that everything is basically white against black and that there is systematic discrimination of black employees.  That cloudy judgment was evident when she defended Jean Seme when he was terminated."

8

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5                                                                 RECEIVED NYSCEF: 06/27/2022

28.     Jean Seme was an inspector with NYSAC who was terminated on March 17, 2017 on the same evening he witnessed Defendant Giardina attempt to hug or sexually harass Plaintiff during an event at Madison Square Garden.  Thereafter, Defendants Giardina, Sumbler and Leary sent New York State Police ("NYSP") to Jean Seme's residence on numerous occasions throughout 2017 and 2018 to terrorize Jean Seme with arrest when according to NYSP's own files, Mr. Seme never engaged in any crime, never made any threats as Defendant Sumbler falsely alleged and never had a criminal record.

29.     On or about March 2017, a non-black inspector named Frank Vasquez was promoted to DC over Plaintiff  who had far more years of experience as an inspector which was required for promotion to DC and a higher four year college degree.  Importantly, Plaintiff complained in her complaint to Defendant Herman on or about 2016 that Frank Vasquez routinely harassed her verbally by telling her to sit down and shut up and calling her a snitch and a liar, and approaching Plaintiff aggressively with a finger close to her face or as if to physically strike Plaintiff in front of co-workers, supervisors and boxers to ensure Plaintiff was demeaned in public.

30.     At a deposition on or about October 12, 2021, lead inspector George Ward testified that DC Frank Vasquez before and after his promotion to DC,  repeatedly called Plaintiff a "N" word, the racial slur used against African Americans and the misogynistic slur, "c**t" in front of other co-workers and supervisors.

31.     On or about 2018, Plaintiff Perry made a complaint to the Inspector General's office regarding Defendant Herman's sole investigation, manipulation and unsubstantiated findings regarding the denial of her promotion to DC and the sexual harassment by Defendant Giardina. By letter dated on or about April 8, 2018, the Inspector General notified Plaintiff that her complaints would be forwarded to the Governor's Office of Employee Relations (GOER).

9

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 06/27/2022

32.     On or about April 21, 2018, at an event at Barclays Event Center, Plaintiff was verbally attacked and threatened by Andrew Jackson, a reporter for Swanson Media as he kicked doors and garbage cans.  Plaintiff was escorting boxer Gervonta Davis from the boxing ring to his post bout medical exam when Jackson stated that Defendant Sumbler sent him and he demanded that Plaintiff divert Gervonta Davis to the press box for an interview.  Plaintiff, following the direction of Avery Browne, M.D., refused instruction from non-state employee, Andrew Jackson to divert Gervonta Davis from his medical exam to the press pool as Avery Browne, M.D. instructed them, "do not stop" and to proceed immediately to the medical exam.  Jackson became enraged and yelled at Plaintiff, "I will kill you" as he kicked doors and trash cans as he followed Plaintiff.

33.     Following the severe brain injury of Mogamed Abdusalamov and an investigation into NYSAC's mishandling of Abdusalamov's care, the OIG had instituted strict medical protocols for boxers to proceed directly to a post bout medical exam and that NYSAC personnel had to adhere to the on duty medical doctor's instructions and directions on post bout medical exams.   Plaintiff strictly adhered to this medical policy and to Avery Browne, M.D.'s instructions as she understood the post bout medical exam was time sensitive and could be a matter of life and death for the boxer.

34.     In great fear for her personal safety, Plaintiff reported the incident to Defendant Sumbler that same evening of April 21, 2018.  Plaintiff also reported the incident to human resources and NYPD on or about April 22,2018.  Neither Defendant Sumbler nor human resources promptly addressed this safety issue with Plaintiff.

35.     On or about May 2018, Plaintiff filed a workplace violence complaint Case no. 30041867 with the NYS Department of Labor, Public Employee Safety & Health unit ("PESH") based on the incident with reporter Jackson.  By letter decision dated March 8, 2022, PESH substantiated

10

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5                                    RECEIVED NYSCEF: 06/27/2022

the workplace violence complaint by Plaintiff and determined NYSAC retaliated against Plaintiff for filing a workplace violence complaint with NYS DOS / NYSAC on or about April 22, 2018. PESH referred the matter for further action to the Office of the Attorney General.

36.     Defendant Sumbler also terminated Plaintiff to cover up her own egregious safety protocol violations all in one evening at the April 21, 2018 event at Barclay's event center.

37.     As the Executive Director of NYSAC Defendant Sumbler had no safety protocols in place when gunfire erupted inside Barclays event center on April 21, 2018.   Despite a referees announcement right behind Defendant Sumbler as observed by Plaintiff,  that Barclays was on lock down due to an active shooter event, Defendant Sumbler allowed Plaintiff, Avery Browne M.D. and boxer Gervonta Davis to potentially walk into an active shooter situation unescorted by security.

38.     At the same April 21, 2018 event, Defendant Sumbler further endangered a foreign language speaking boxer Justin Sami and his juvenile son approximately 10 years old.  Based upon information and belief, instead of assigning a language interpreter to boxer Sami, Defendant Sumbler allowed the boxer Sami's child to be licensed as a Second / corner person in the ring to interpret for his father.

39.     Based upon information and belief, during boxer Sami's bouts, NYSAC's commissioner of boxing observed boxer Sami having difficulty communicating with the ringside physician which endangered him.  Boxer Sami's son was not permitted to enter the ring because he was a minor which left the boxer Sami without a language interpreter.

40.     Still further at the same April 21, 2018 event Defendant Sumbler further endangered other boxers' safety by assigning  NYSAC's "Linguist" to assign boxing gloves without any training or

11

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 06/27/2022

knowledge of glove size, glove weight needed by individual boxers. This exposed all boxers to serious injuries.

41.    Based upon information and belief, at that same event on or about April 21, 2018, Defendant Sumbler was responsible for arranging for security at Barclays yet during the event, a production employee named Brian Adams passed through security with four people who were all not permitted around the ring area stood with Defendant Sumbler and the Commissioner to watch the event.

42.    On or about 2017, Ed Kunkle, a white man was hired as a deputy commissioner without the requisite inspector experience or qualifications. NYSAC required deputy commissioners to have a minimum of two years experience as a NYSAC inspector. Plaintiff had more years of experience and college degree, yet DC Kunkle who had a high school diploma and no experience working as a NYSAC inspector was hired over Plaintiff.

43.    At the same event on April 21, 2018, DC Kunkle was in charge of all locker room activities. By email dated on or about April 23, 2018, DC Kunkle stated to Defendant Sumbler that he observed unauthorized people in Gervonta Davis' locker room while Plaintiff and Gervonta Davis were out of the locker room and DC Kunkle did nothing to remove them when he had the authority to do so.

44.    On or about April 25, 2018, Plaintiff was terminated a few days after the workplace violence complaint made to human resources on or about April 22, 2018, and a few days after Defendant Sumbler caused a multitude of egregious safety violations at the Barclays event on April 21, 2018. Plaintiff's termination also took place approximately 2 weeks after the OIG notified Plaintiff by letter dated on or about April 8, 2018 that her discrimination complaints would be forwarded to GOER.

12

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5                                          RECEIVED NYSCEF: 06/27/2022

45.    Only after the commencement of the NYS DHR proceeding on or about May 2018 that Defendant Sumbler produced an internal memo that falsely alleged Plaintiff violated locker room policy by allowing unauthorized people into Gervonta Davis' locker room.  Defendant NYSAC produced a video clip of people entering and leaving the Davis locker room that debunked all of Defendant Sumbler's allegations that Plaintiff allowed the people into the room.  In the 2018 NYS DHR probable cause decision in Plaintiff's favor, it was confirmed that the video did not support Defendant Sumbler's allegations.  In the March 8, 2022 decision by PESH also in Plaintiff's favor, it was similarly confirmed that the video clip did not support Defendant Sumbler's allegations. Most glaring was the fact that Plaintiff was not notified of this alleged locker room policy violation was the basis of her termination at any relevant time.

46.    Based upon information and belief, on or about 2018, a white inspector Brett Lipton walked off the job after being assigned to a boxer by placing the boxer's gloves down and walked out of the venue leaving that boxer unassisted and costing that boxer a boxing match.  Plaintiff alerted Defendant Sumbler who did nothing. Based upon information and belief, the white inspector who walked off the job is working events at NYSAC to date  and suffered no adverse employment record, reprimand, admonishment or repercussion whatsoever for his terminable offense

47.    Based upon information and belief, during and after Plaintiff Perry's employment with NYSAC, defendant Giardina leaked her personnel file to reporter Tom Hauser who wrote negative articles about Plaintiff Perry in online trade news sites.  Defendant Giardina testified at his deposition on October 22, 2021 that he did interview with Tom Hauser on at least several occasions.  The most recent negative article published about Plaintiff Perry based on defendant Giardina or other NYSAC official's retaliatory leak of Plaintiff Perry's personnel file was on or

13

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 06/27/2022

about April 2021.

48.    As a result of the retaliation and discrimination continuing to date, Plaintiff has suffered emotional distress and mental anguish including but not limited to: sleeplessness, anxiety, depression, loss of enjoyment of life that caused physical manifestations and required Plaintiff to seek medical and mental health treatment.

**DEFENDANT NEW YORK STATE ATHLETIC COMMISSON ("NYSAC")**

49.    Based upon information and belief, NYSAC is a subdivision of the New York StateDepartment of State (NYS DOS). NYSAC licenses boxers and has had a long history of racialdiscrimination against Black American Boxers that continues unabated to date. *See, e.g. Ali v. Division of State Athletic Commission of the Department of State*, 316 F.Supp. 1246 (SDNY 1970) Plaintiff Perry suffered interference with their constitutionally protected rights as black American citizens that other white citizens enjoyed such as the right toattend public sporting events at places of public accommodations. Defendant Sumbler, as executive director of NYSAC, exceeding her authority and under color of law forcibly removed or had Plaintiff ejected from sporting events where Plaintiff was lawfully present.

50.    Based upon information and belief, On or about 2016, defendant Giardina without statutory, legislative authority or executive powers of the Governor, deemed inspectors as "at will" employees in a NYSAC inspectors manual.  The New York State Civil Service Law §75 ("CSL §75") regulates all employment in service of New York State ("NYS").  Notwithstanding, defendants Giardina and Sumbler relied on their legally inoperative inspector manual to unlawfully discharge Plaintiff in 2018 as an at will employee to avoid providing her notice and opportunity to be heard on her discharge from employment.

51.    Additionally, during on or about 2016, defendant Giardina re-set Plaintiff's wages from

14

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5                                    RECEIVED NYSCEF: 06/27/2022

a daily wage of approximately $52 per event to $100 per event when events required Plaintiff to regularly work 10 – 12 hours per work shift. Instead of applying wage and hour standards under New York Labor Law ("NYLL") §651 et seq., defendant Giardina unlawfully applied a daily wage comparison of the  NYSAC's existing $52 per event wages to other states' wage rates that drastically fell below NYLL standards. During all relevant times of Plaintiff's employment with NYSAC it took on average, six (6) or more weeks for Plaintiff to receive her earned wages.

52.    At all relevant times, NYSAC utilized discriminatory employment practices based on race and gender to deny Plaintiff a promotion to deputy commissioner. Defendant Giardina also limited Plaintiff's assignments as an inspector by not assigning Plaintiff to televised events and and  instructed  Plaintiff to either leave the ring or sit in the back out of the sight of cameras during events.

53.    At all relevant times, Defendant Sumbler maintained control, oversight, and direction over Plaintiff including scheduling assignments, timekeeping and payroll.

54.    On or about April 23, 2018, Defendant Leary and Brendan Fitzgerald requested in an email to Defendant Sumbler that Defendant Sumbler draft a memo about Plaintiff's alleged violation of locker room policy.  A few days later, Plaintiff was discharged on or about April 25, 2018 without notice or opportunity to be heard on the allegations in that memo dated on or about April 23, 2018, in violation of CSL §75.2

55.    Based upon information and belief, at the behest of Defendant Leary and Brendan Fitzgerald, former deputy assistant secretary of state, Defendant Sumbler back dated an internal office memorandum to on or about April 23, 2018 alleging that Plaintiff violated NYSACs locker room policy at the April 21, 2018 event at Barclays.  At the end of the event on or about April 21, 2018, Plaintiff's supervisors indicated on an end of workshift report that Plaintiff satisfactorily met

15

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 06/27/2022

all expectations in performing her duties.  Defendant Sumbler's April 23, 2018 memo fully displayed her racial animus and bigotry against black Americans.  Without any basis in fact for the negative aspersions and allegations that anyone made any threats against Defendant Sumbler or others, Defendant Sumbler recklessly stated in pertinent part,

> **"On the card, there were three athletes (Broner, Davis & Charlo) with known gang affiliations and famous artists (rappers), who were making threats to each other over social media leading up to the event."**

> **"Immediately prior to the event…I informed all staff that contrary to normal procedures, that NYSAC would not permit any additional guests into the locker rooms…"**

> **"I saw three large men…in addition to Gervonta Davis's (sic) camp, and guests…I asked them to leave…There were a few tense moments where they stared me down then eventually left without incident…they didn't belong…we were on heightened security alert because of the threats that were made…this breach of locker room access placed both Ed Kunkle and me in a very dangerous situation…Had Dorothea notified Security immediately…we would not have been put in harm's way."**

56.    On or about April 2018, Defendant Sumbler repeated to sports media that these three athletes had "gang affiliations" without first hand knowledge of facts to support the contentions.

57.    Gervonta Davis referenced in the May 2018 memorandum was an African American boxer who did not have known gang affiliations and Defendant Sumbler made the gang affiliation aspersions based on her personal racial bias and stereotypes.

58.    The "three large men" referenced in the May 2018 memorandum were also African American men" who Sumbler speciously stated, put her in a "very dangerous situation" when Sumbler stated in a previous clause that these "three large men" who "didn't belong" had "left

16

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 06/27/2022

without incident.   Moreover, Defendant Sumbler was in a supervisory role so if she believed she and deputy commissioner Ed Kunkle were in a "very dangerous situation" she should have believed that Ms. Perry was also in a "very dangerous situation" and acted in her supervisory role to resolve the"very dangerous situation." At no relevant time were inspectors charged with security duties.  Defendant Sumbler also instituted a racist, arbitrary and capricious policy at this event to check all Boxers' family's identification to make sure they were family members when they already went through several layers of security to gain entry into the facility in the first instance.

59.     Defendant Sumbler also instituted a racist, arbitrary and capricious policy at this event to check all Boxers' family's identification to make sure they were family members even after security checked every attendees credentials at the front entrance and again at the commission desk.

**Defendant Anthony Giardina Exec. Dir. NYSAC through on or about 2017**

60.     On or about 2016 Anthony Giardina stepped down from his role as executive deputy secretary of state to a lower level interim Executive Director position at NYSAC while retaining his high rate of pay, even though he had zero experience in Boxing, Wrestling or Mixed Martial Arts.

61.     Defendant Giardina testified at his continued deposition on or about December 6, 2021 that he was asked by the Governor's office to vacate the executive deputy secretary of state position and move to executive director position at NYSAC.  This allowed Brendan Fitzgerald who was working at the Governor's office to move into that Defendant Giardina's position at NYS DOS. Based on public salary records, Brendan Fitzgerald enjoyed a salary bump from approximately $100,000 to approximately $160,000 per year.

17

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5                                    RECEIVED NYSCEF: 06/27/2022

62.    Based on NYS Police("NYSP") reports, Brendan Fitzgerald called NYSP supervisor James Post on or about March 17, 2017 to send NYSP to Jean Seme's residence to silence him about his termination from employment because Jean Seme had witnessed Defendant Giardina sexually harass Plaintiff with an attempt to hug her at an event at Madison Square Garden on March 17, 2017.

63.    On or about 2016, Defendant Giardina was determined to keep Plaintiff Perry off camera and discouraged and attempted to thwart Plaintiff Perry from appearing on a 60 Minutes interview in relation to her friend and boxer Danny Jacobs. Ms. Perry was not asked to represent NYSAC in the 60 minutes clip, however NYSAC and Defendant Giardina made every attempt to discourage her from appearing

64.    Defendant Giardina sexually harassed Plaintiff Perry  at an event at Madison Square Garden on or about March 17, 2017 asking herfor "a hug."

65.    On or about October 6, 2021, at his deposition in the federal law suit, Defendant Giardina testified that he was aware Plaintiff felt harassed and insulted by the attempted hug.

**Q**: So, if Ms. Perry felt threatened by your hug…on 3/17/2017, she justified in calling the cops on you?  **A**: …You know, she was insulted or, you know, felt insulted or harassed and she had a right to do whatever she needed to do to protect herself."

66.    Plaintiff reported the 3/17/2017 incident to Maria Herman, Affirmative Action Officer of the New York State Department of State ("NYS DOS"). By letter dated November 28, 2017, Ms. Herman stated, "[she] was unable to substantiate the allegations that …Respondent Giardina engaged in sexual harassment…and no further action will be taken with regard to this complaint.

67.    According to the November 2017 letter, Ms. Herman performed the investigation personally as she stated, "The Affirmative Action Officer (depicting herself in the third person)

18

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 06/27/2022

has completed its (sic) investigation…"  Ms. Herman exceeded her authority and failed to refer the matter to the Governor's Office of Employee Relations

68.      Based upon information and belief, throughout Plaintiff's employment from on or about 2003 through 2018, Defendant Herman failed to ensure a diverse workplace at NYSAC and failed to provide any training on EEO and NYS Human Rights Laws against workplace discrimination, harassment and retaliation.

69.      Throughout 2003 to 2018, there were a total of approximately 40 NYSAC inspectors in the NYC area.   These job opportunities were never publicly posted resulting in a workplace demographic of approximately five (5) black inspectors, one (1) afro-latina for a brief time during on or about 2015 and at all relevant times zero(0) Asian Americans. The remaining majority were white male and female inspectors who were assigned "main events" or "televised / media broadcast events." The sport of boxing was at all relevant times predominantly African American or Black American athletes but African American men and women were intentionally and egregiously underrepresented in support staff at NYSAC which was within the control of all named Defendants.

70.      Previously, on or about 2015, executive director David Berlin's mission was to keep Plaintiff out of sight at televised or media broadcast events. All three executive directors Berlin, Giardina and Sumbler, at various times took Plaintiff completely out of assignment rotation to deprive her of any inspector assignments. Instead, based upon information and belief, they assigned executive director David Berlin's friend Sue Etkin, a white female inspector to all the main events or media broadcast events.  Inspector Etkin was far less experienced than Plaintiff. But for Plaintiff's race, she would not have been deprived of these sought after main event assignments for which she was well qualified.

19

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5                                               RECEIVED NYSCEF: 06/27/2022

71.    At all relevant times throughout Plaintiffs' employment, Individual Defendants Sumbler and Giardina were actively involved in the day-to-day operations of Defendant NYSAC by and through their supervisors, commissioners and deputy commissioners.

72.    Defendant Linda Baldwin is currently counsel at the NYS DOS who was copied on Plaintiff Perry's complaints about discrimination, harassment and her discharge.  Post discharge, Defendant Baldwin actively engaged with Defendants Leary and Sumbler to dispose of Plaintiff's complaints as set forth throughout this Complaint.

73.    As an official who was at all times put on notice of conduct by other employees at NYSAC that deprived Plaintiff Perry's Fourteenth Amendment rights to due process and equal protection under the laws of NYS.  Defendant Baldwin did nothing to prevent, correct or abate these violations against Plaintiff.

74.    In an email dated on or about June 7, 2018,  approximately two months after Plaintiff was discharged, Defendant Baldwin stated to Defendant Leary, "Do you have time to talk for a few minutes?...re: Dorothea Perry's emails."

75.    Most recently, Defendant Baldwin attempted to influence the outcome of Plaintiff Perry's NYS Div. of Human Rights matter on or about August 2021 when she appeared on behalf of NYS DOS without a notice of appearance.  Defendant Baldwin served on the same non-profit Board for a waterfront development as the spouse of the Administrative Law Judge (ALJ) Alexander Linzer.  Defendant Baldwin and ALJ Linzer and his family further live within minutes of each other. ALJ Linzer and his spouse appeared in a large photo that was featured in a full page local news article.   The ALJ disclosed the potential conflict to Plaintiff  after opening statements. ALJ Linzer was subsequently replaced due to the appearance of conflict of interest.

76.    Based upon information and belief, Defendant Leary also advised on the non-profit

20

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5                                      RECEIVED NYSCEF: 06/27/2022

board for the waterfront development detailed *supra.*

77.     Based upon information and belief, James Leary is the current assistant secretary of state and since on or about 2015 and throughout the course of Plaintiff Perry's employment with NYSAC made direct and repeated attempts to remove Plaintiff Perry from her position as inspector.  Defendant Leary attempted to enforce the 2 year ban to force Plaintiff to quit her inspector job.  This 2 year ban was not enforced on other non-African American employees such as former inspector Joe Schaeffer, former deputy commissioner, Keith Sullivan, and former director Eric Bentley who immediately went to work for a promoter Real Deal promotion company after leaving NYSAC on or about 2017.  In 2016 Defendant Leary and Defendant Giardina attempted to coerce Plaintiff to decline participation in a 60 Minutes interview which Plaintiff was invited to participate in to discuss measures she took, on her own time, to help save the life of her friend, a boxer.   Defendants cited an alleged conflict of interest with her friendship with boxer Danny Jacobs and her role as a NYSAC inspector.  In 2018, Defendant Leary participated in concocting Defendant Sumbler's internal memo that alleged Plaintiff's violation of locker room policy at the event on April 21, 2018.  This alleged violation was debunked by investigations by PESH and NYS DHR and determined in their respective written determinations.

78.     Based on NYS Police reports and defendants' documents produced during discovery in the federal court matter, since on or about March 2017 through June 2018 James Leary engaged in a conspiracy to harass another Inspector Jean Seme who witnessed Plaintiff Perry being sexually harassed by Defendant Giardina at an event on March 17, 2017.

79.     Defendant Leary was the go-between for NYS DOS and NYS Police to maliciously have witness Jean Seme arrested and jailed.   NYS Police records revealed witness Seme had no criminal record and did not make any threats at any relevant time.  Defendant Sumbler falsely

21

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5                                                    RECEIVED NYSCEF: 06/27/2022

reported to NYS Police that she thought she heard a threat by witness Jean Seme to someone else. Jean Seme was terminated on 3/17/2017 which was the same night of the event at Madison Square Garden where Mr. Seme witnessed Plaintiff being sexually harassed with an attempted hug by Defendant Giardina.

80.     At all relevant times James Leary was aware or should have been aware there was no probable cause or any cause whatsoever to send NYS Troopers to interrogate and coerce Plaintiff Seme to admit to a crime he never committed.  Despite NYS Trooper Sands' updates to him that Plaintiff Seme

81.     Defendant Herman was the sole Affirmative Action Officer during Plaintiff's employment with NYSAC.  Defendant Herman was also the sole investigative officer and decision maker for any and all complaints of discrimination by Plaintiff.

82.     During 2017, Defendant Herman falsified two internal complaints and affirmations by signing on behalf of ("obo") Plaintiff without consent or authorization by Plaintiff ; and failed to provide Plaintiff with a copy of that complaint; and then informed Plaintiff verbally that there was no discrimination in the denial of her promotion and that the attempted hug by Defendant Giardina was not severe or pervasive.  When Plaintiff requested that Defendant Herman recuse herself from the investigations, Defendant Herman refused.

83.     On or about November 2017, Defendant Herman stated to Plaintiff that there was no discrimination in denying her promotion to deputy commissioner even though all non-African American men with far less experience and education were promoted over Plaintiff.  Inspector Frank Vasquez who had less experience and education was promoted over Plaintiff.  Lead inspector George Ward testified at his deposition in the federal lawsuit that inspector Vasquez repeatedly called Plaintiff by a racial slur against African Americans, the "N" word and the

22

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5                                          RECEIVED NYSCEF: 06/27/2022

misogynistic slur against women, "c**t" in front of other inspectors and supervisors.

84.     On or about 2017 Frank Vasquez threatened Plaintiff to sit down and shut up at inspector meetings and that he was an investigator for the NYS DHR to deter Plaintiff from filing complaints against him.

85.     Had Defendant Herman provided Plaintiff with a copy of the internal complaint, Plaintiff would have received the bold faced printed notice that she had a right to pursue the complaint with the EEOC or NYS DHR without waiting for the agency's determination and that Plaintiff also had one year from the date of the internal complaint to pursue the complaint with EEOC or NYSDHR.   Had Plaintiff been provided with this notice, Plaintiff would have timely pursued her claims with the EEOC or NYSDHR as she did with her termination in 2018.

**NEW YORK STATE DEPARTMENT OF LABOR DEFENDANTS**

86.     Based upon information and belief, the Public Employee Safety and Health Bureau (PESH) is a division of the New York state DOL charged with the duty to "give occupational and health protection to all public sector employees."

87.     Based upon information and belief, the New York State DOL "empower[s] and protect[s] NewYork's workers ….ensuring all workers have a safe workplace where they receive a fair wage."

88.     On or about March 8, 2021, PESH submitted a final decision in favor of Plaintiff on her 2018 workplace violence complaint alleged in paragraphs 31 through 34 supra to the DOL's office of general counsel for final approval and issuance.  On or about May 13, 2022, Defendant Scally withdrew the DOL's March 8, 2021 decision with a letter withdrawing the decision fraudulently signed by "AmyCKarp" purporting to be Jill Archambault as detailed in paragraph 10 *supra*.  Defendant Scally and DOL thereby knowingly refused to ensure Plaintiff, a worker,

23

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5                                          RECEIVED NYSCEF: 06/27/2022

with a safe workplace. Defendant DOL further deprived Plaintiff of her right to property – enforcement of her right to back pay and reinstatement to employment awarded in the March 8, 2021 decision.

89.    By withdrawing its March 8, 2021 decision in collusion with the NYSAC / DOS defendants, Defendant DOL, Scally and Archambault deprived Plaintiff of her due process rights to her property – enforcement by the OAG of Plaintiff's back pay and reinstatement to her job as a NYSAC inspector. DOL Defendants knowingly deprived Plaintiff, the only black female inspector at NYSAC of her right to property based on her race and gender by preventing the enforcement of the March 8, 2021 decision because NYSAC / DOS defendants notified the DOL defendants that the March 8, 2021 decision was used as evidence of retaliation and discrimination against Plaintiff in Plaintiff's ongoing proceeding at the New York State Division of Human Rights ("NYS DHR").

90.    On the same date as the fraudulently signed withdrawal letter dated May 13, 2022, the OAG sent an email to Plaintiff's undersigned counsel stating that it no longer represented the DOL and that the enforcement proceeding of the March 8, 2021 decision would not be filed.

91.    Accordingly, all defendants conspired to obstruct evidence used in the NYS DHR proceeding and the OAG's enforcement proceeding. Based upon information and belief, Defendant Scally sent the fraudulently signed withdrawal letter dated on or about May 13, 2022 because the March 8, 2021 decision was accepted into evidence by the NYS DHR in Plaintiff's proceedings and the next hearing date was on or about May 16, 2022 wherein, opposing counsel Gleeson, Dunn et.al. would be able to state that the DOL's decision was withdrawn.

92.    Based upon information and belief, New York State is exempt from the its own wage and hour laws based on the presumption that it would not violate its own wage and hour laws to

24

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5                                                              RECEIVED NYSCEF: 06/27/2022

pay any of its laborers below the current minimum wage.  However, since on or about 2013 to 2018, Defendant DOS knowingly and unlawfully paid Plaintiff a daily wage of $52 per day for 12 hour work shifts and failed to pay minimum wage to Plaintiff for all hours worked during those years of employment.  Plaintiff also received her pay checks from Defendant DOS / NYSAC approximately every six weeks in violation of NYS DOL's frequency of payment law.

93.      Based upon information and belief, on or about April 2022, Bridget Holohan Scally was hired as assistant general counsel for the DOL or assigned to work on / re-open Plaintiff's March 8, 2021 decision on her 2018 workplace violence complaint concerning NYSAC and a Swanson Media reporter as alleged in paragraphs 31 through 34 *supra* of this FAC.

94.      Based upon information and belief, the original investigators and attorney who investigated, analyzed evidence and rendered the March 8, 2021 decision took approximately three (3) years to investigate and render a formal decision.

95.      Based upon information and belief, Defendant Archambault deliberately and unjustifiable withheld the March 8, 2021 decision from being issued so that the statute of limitations would lapse and would be rendered unenforceable and knowing it would harm Plaintiff.

96.      Based upon information and belief, Defendant Archamabault allowed the issuance of the March 8, 2021 decision on or about March 2022 because Plaintiff repeatedly requested the status of the decision.  Based upon information and belief, Defendant Archambault would not have issued the March 8, 2021 decision at all if Plaintiff remained silent about its status.

97.      Based upon information and belief, since on or about 2018, Defendant Baldwin was in repeated contact with the DOL's office of General Counsel to interfere with and obfuscate Plaintiff Perry's 2018 workplace violence complaint by urging the General Counsel's office to place a hold on any decision.

25

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 06/27/2022

98.      Based upon information and belief since on or about 2018 to date Defendant Baldwin, Leary and NYSAC / DOS officials were in repeated and continuous contact with Defendants Archambault and the office of General Counsel at the DOL.

99.      Based upon information and belief, since on or about March 2021 to date, NYSAC and DOS attorneys at Gleeson, Dunn et al., specifically Lisa Joslin, Esq. and Nancy Williamson, Esq. were in repeated and continuous contact with the office of General Counsel at the DOL to prevent the issuance of the March 8, 2021 decision in Plaintiff's favor.  Based upon information and belief, on or about March 2022 after the issuance of the March 8, 2021 decision, Gleeson, Dunn et al., notified DOL that it would appeal the decision to the Industrial Board of Appeals citing the statute of limitations as a defense.  Based upon information and belief, because the DOL held onto the March 8, 2021 decision for a year purposely allowing the statute of limitations for enforcement to expire, it agreed in collusion with NYSAC that it would withdraw the March 8, 2021 decision in exchange for a ninety (90) days extension of the statute of limitations to re-open the case and render a new decision in NYSAC's favor.

100.      Based upon information and belief, Defendant Archambault as general counsel placed a hold on the final DOL decision dated March 8, 2021 to prevent the decision from being issued and enforced by the Office of the Attorney General.  Based upon information and belief, Defendant Archambault placed a hold on the March 8, 2021 decision for approximately one year so that it was issued on or about March 2022 that purposely allowed the statute of limitations on enforcement by the OAG to expire.

101.      Based upon information and belief, Defendant Archambault placed a hold on issuing the decision with knowledge that the statute of limitations on enforcement of the March 8, 2021 decision would expire on or about April 2022.  Based upon information and belief, Defendant

26

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5                                    RECEIVED NYSCEF: 06/27/2022

Archambault knowingly failed to secure a tolling agreement from Defendants NYS DOS and NYSAC.

102.     Based upon information and belief, on or about April 2022, Defendant Archambault assigned assistant general counsel Bridget Holohan Scally ("Scally") to handle the enforcement of March 8, 2021 decision by the OAG.

103.     Based upon information and belief, by email dated on or about April 2022, the OAG represented that it had secured a tolling agreement with NYSAC and represented to Plaintiff that an enforcement action would be commenced the following week.

104.     Based upon information and belief, Defendant Archambault and Defendant Scally intercepted and obstructed the OAG's filing of the enforcement action by informing the OAG that it was re-opening the matter and intended to withdraw the March 8, 2021 final decision.

105.     By email dated on or about May 13, 2022, Defendant Scally sent a letter addressed to Gleeson, Dunn et al.,  and Plaintiff's undersigned counsel that the DOL withdrew its March 8, 2022 decision with a fraudulent or forged signature of Defendant Archambault as described and exemplified in paragraph 10 *supra*.  A trued and accurate copy of the full DOL letter dated on or about May 13, 2022 with the fraudulent signature is attached to this complaint as Exhibit A.

### AS and FOR the FIRST CAUSE of Action
### pursuant to 42 USC §1983; NYS HRL §290 et seq.; CSL §75 et seq.

106.     Plaintiff repeats, realleges and incorporates by reference each and every allegation previously set forth as if fully set forth herein.

107.     42 USC §1983 states in pertinent part, "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State…subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by theConstitution and laws, shall be liable to the party injured

27

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 06/27/2022

in an action at law, suit in equity, or other proper proceeding for redress…"

108.     The Fourteenth Amendment to the United States Constitution states in relevant part, "All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law…nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

109.     Plaintiff is citizen of the United States within the meaning of 42 USC §1983 ("1983") and the Fourteenth Amendment.

110.     All Defendants are "Every person" within the meaning of §1983.

111.     All individual defendants in their official capacity are the "State" along with NYSAC, NYS DOS and DOL within the meaning of the Fourteenth Amendment.

112.     State Action within the meaning of §1983 occurred when individual defendants deprived Plaintiff of property without due process and equal protection under the State's non-discrimination policies and laws and the CSL when they terminated Plaintiff.

**State Action by Defendant Giardina against Plaintiff**

113.     On or about March 2017, Defendant Giardina told Plaintiff Perry at a boxing event that she had not been considered for promotion to deputy commissioner because he questioned Plaintiff's attentiveness and job performance even though Plaintiff had an exemplary work record, recommendations by superiors, far more years of work experience as a boxing inspector and academically superior to other candidates.  Plaintiff  held a 4 year college degree from an accredited university while the highest education level achieved by other candidates were a high school diploma.

114.     In transcribed notes produced by the Governor's Office of Employee Relations

28

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 06/27/2022

("GOER")  from interviews of Defendant Giardina during 2017 concerning Plaintiff's denial of a promotion to DC, Defendant Giardina stated that he denied Plaintiff's promotion because he "was concerned with her lack of judgment when it comes to matters involving black employees  …that there is systematic discrimination of black employees…"   NYS HRL prohibits discrimination in the discharge or denial of a promotion based on race which is what Defendant Giardina did when he denied Plaintiff a promotion because of her race and /or speaking out about racial discrimination and disparities in the workplace.  At the time of Plaintiff's denial of promotion to DC on or about 2017, there were zero women promoted to DC and zero women serving as DCs.

115.      Plaintiff did not raise the issue of her race when she applied for the promotion. However, during his interviews on or about 2017, Defendant Giardina made Plaintiff's application and his denial of  Plaintiff's promotion to DC about race.

116.      NYSAC made Plaintiff's application for promotion to DC about gender in addition to race.  NYSAC promoted all non-African American men to DC over Plaintiff, the sole qualified black female applicant.  Defendant Giardina stated in his 2017 interview, "I did not approve her for promotion.  I felt that although she has some good skills as an inspector, I was concerned with…her lack of judgment when it comes to matters involving black employees, because of her perception that everything is basically white against black and that there is systemic discrimination of black employees…"   All the men who promoted were less qualified in years of experience and education than Plaintiff.  One of those men Frank Vasquez promoted to DC repeatedly called Plaintiff a "N" word and a "c**t" in front of other NYSAC employees as testified to by lead inspector George Ward.

**State Action by Defendant Sumbler against Plaintiff**

117.      After Plaintiff Perry was terminated from her employment, at the behest of Defendant

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5                                                              RECEIVED NYSCEF: 06/27/2022

Sumbler, Plaintiff Perry was ejected from a place of public accommodations where she was lawfully and peacefully present. Plaintiff was coerced and deterred from attending any public events at public places of accommodation continuing to date. Accordingly, Defendant Sumbler engaged in post-employment retaliation against Plaintiff that continues to date as Plaintiff is fearful of lawfully attending a public boxing event. Inspectors at NYSAC warned Plaintiff that if Defendant Sumbler saw her at an event Plaintiff would be ejected and suffer the same fate as witness Jean Seme who had NYSP sent to his home to silence him about witnessing sexual harassment of Plaintiff on 3/17/2017 by Defendant Giardina. Defendant Sumbler repeatedly called NYSP on witness Jean Seme when he lawfully and peacefully attended a public boxing event and Defendant Sumbler would have likely done the same with Plaintiff.

118. The Governor's office where Defendant Giardina and Brendan Fitzgerald (dec. on or about December 2018) both worked maintained a culture at the NYSDOS of mis-use of NYSP or unauthorized use of police power. Defendant Sumbler by and through Defendant Giardina and Brendan Fitzgerald further abused that mis-use of NYSP.

119. On or about April 21, 2018, at a boxing event at Barclays Center, Brooklyn NY ("Barclay's event") Defendant Sumbler deflected liability for her numerous and egregious safety violations at that event by terminating Plaintiff on or about April 25, 2018 based on false allegations that Plaintiff violated locker room policy. Initially Defendant Sumbler's false allegations, which Plaintiff only became aware of during the NYSDHR proceeding in late 2018, long after Plaintiff was discharged, were debunked by the fact that Plaintiff's supervisors signed off on Plaintiff's end of event evaluation as having met all expectations in the performance of her job duties that evening.

120. According to PESH and NYS DHR probable cause determinations in Plaintiff's favor,

30

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5                                               RECEIVED NYSCEF: 06/27/2022

the video clip of people entering and leaving Gervonta Davis' locker room on April 21, 2018 did not support Defendant Sumbler's allegations that Plaintiff violated locker room policy at all. At all times, a Barclay's security guard and Gervonta Davis' own security guard stationed right outside the door to the subject locker room greeted and allowed every single person into the subject locker room, not Plaintiff. Plaintiff was the one who cleared the locker room of the people security allowed into the room. DC Kunkle failed to ever clear the subject locker room even though he was aware of the situation and had the authority to do so.

121.     At the same April 21, 2018 event, as alleged in paragraphs 28 through 32 supra and throughout this complaint, Plaintiff was subjected to workplace violence when Andrew Jackson a reporter for Swanson Media threatened, "I'll kill you" when Plaintiff refused to allow boxer Gervonta Davis to be diverted from his post bout medical exam to the press pool to be interviewed. Plaintiff reported the incident to Defendant Sumbler the same evening. Defendant Sumbler did nothing because she was the one who sent Andrew Jackson to divert boxer Davis to the press pool. Plaintiff further reported the incident to NYSDOS human resources dept. and the NYPD on April 22, 2018. Plaintiff was terminated without notice of any misconduct or reason, or opportunity to defend against her termination on April 25, 2018.

122.     At the same event on April 21, 2018 as alleged in paragraphs 33 through 43 supra and throughout this complaint, Defendant Sumbler failed to provide a language interpreter to boxer Justin Sami during his bout. Defendant Sumbler allowed Mr. Sami's approximately 10 year old son to be a corner person in the ring. When NYSAC officials prohibited the child from entering the ring, Mr. Sami was left without an interpreter. Based upon information and belief, NYSAC commissioner of boxing witnessed Mr. Sami having difficulty communicating with ringside physicians.

31

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5                                          RECEIVED NYSCEF: 06/27/2022

123.     Further, to the allegations above, Defendant Sumbler failed to provide security protocols and security for NYSAC employees and boxers at the April 21, 2018 event when an active shooter event occurred.  The active shooter event and lock down were announced by a referee right behind Defendant Sumbler.  Defendant Sumbler failed to provide security to Plaintiff, boxer Gervonta Davis and Avery Browne M.D. who were headed to Mr. Davis' post bout medical exam and possibly into an active shooter situation.

124.     Further to the allegations above, in paragraph 97 and 98, based upon information ad belief, Defendant Sumbler endangered boxers when she understaffed the event on April 21, 2018 and assigned her linguist "Luanna" to assign boxing gloves to boxers.  Luanna had no training or background in boxing gloves and was not qualified for the task.  Inappropriate boxing gloves could have resulted in injury to the boxers.

125.     Further to the allegations above in paragraphs 97 through 99 and throughout this complaint, Defendant Sumbler allowed unauthorized persons to view the event on April 21, 2018 ringside which endangered boxers and ringside employees.

**Plaintiff's unlawful termination from employment with NYSAC**

126.     The New York State Civil Service Law ("CSL") §75 and the Rules and Regulations promulgated thereunder, implement the mandate of the NYS Constitution, which states in relevant part, "Appointments and promotions in the civil service of the State and all of the civil divisions thereof, …shall be made according to merit and fitness to be ascertained, as far as practicable by examination…" Art. V, sec. 6 NYS

127.     NYS CSL §75 states in relevant part, " A person described in…paragraph (c)…of this subdivision shall not be removed or otherwise subjected to any disciplinary penalty …except for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section."

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 06/27/2022

Paragraph (c) states in relevant part, "an employee holding a position in the non-competitive or labor class…"

128.    Plaintiff was part of the labor class and unrepresented by a public labor union.

129.    CSL §75.2 applied to both Plaintiffs which states in pertinent part, "…*A person against whom removal or other disciplinary action is proposed shall have written notice thereof and of the reasons therefor, shall be furnished a copy of the charges preferred against him and shall be allowed at least eight days for answering the same in writing."*

130.    Plaintiff did not receive any notice of charges or of removal at any time in writing at any relevant time.

131.    CSL 75.2 further states in relevant part,

" …The hearing upon such charges shall be held by the officer or body having the power to removethe person against whom such charges are preferred…"   and "…The person or persons holding such hearing shall, upon the request of the person against whom charges are preferred, permit him to be represented by counsel…"

132.    Plaintiff was never afforded a hearing on their charges or discharge despite her numerous requests to NYS DOS for a hearing.

133.    The April 25, 2018 termination letter from human resources director Debra Meade at NYS DOS to Plaintiff, stated no reason whatsoever for Plaintiff Perry's termination.  Plaintiff was never afforded due process notice of any misconduct as the basis for her termination at any relevant time or any opportunity to defend against her discharge. Accordingly, Defendants NYS  DOS  and NYSAC deprived Plaintiff of her employment without due process under the US and NYS constitution and CSL.

134.    Even assuming arguendo Plaintiff was an at will employee, under New York State's

33

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5                                          RECEIVED NYSCEF: 06/27/2022

common law doctrine of Stigma Plus violation of due process, Plaintiff was entitled under law at least to a post discharge hearing.

135.    As alleged throughout this complaint, on or about April 23, 2018, Defendant Leary and Brendan Fitzgerald requested in an email to Defendant Sumbler that Defendant Sumbler draft a memo about Plaintiff's alleged violation of locker room policy. A few days later, Plaintiff was discharged on or about April 25, 2018 without notice or opportunity to be heard on the allegations in that memo dated on or about April 23, 2018, in violation of CSL §75.2.

**State Action by Defendant Leary**

136.    Since on or about 2014 through the date of Plaintiff Perry's termination, NYSAC, by and through David Berlin and NYS DOS counsel James Leary enforced a 2 year ban on employment with NYSAC because Plaintiff acted as a boxing judge in the state of Virgina. NYSAC purported that if a NYSAC employee wanted to be a boxing judge or work for a promoter, he/she was required to quit as an inspector for 2 years. However, this 2 year ban was enforced only against black inspectors such as Plaintiffs Perry and witness Jean Seme to deter them from becoming judges. White male employees however, based upon information and belief, were not subject to this rule as former Executive Director Eric Bentley, David Berlin and other white inspectors worked immediately before and after for promoters.

137.    On or about 2016, when NYSAC under the leadership of Defendant Giardina, discovered Plaintiff Perry was traveling to other states to judge boxing events, Defendant Leary on behalf of the office of general counsel wrote a letter demanding that Plaintiff Perry resign. When Plaintiff Perry replied with evidence thatshe was not in violation of any law, rules, or regulations and that she was not in conflict of interest, Defendant Leary, by letter dated on or about 2016, retreated from their intimidation to coerce Plaintiff Perry to resign and apologized.

34

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 06/27/2022

138.    As alleged in paragraphs 27, 28, 61 through 64 and throughout this Complaint Defendant Herman knowingly failed to ensure a diverse workplace, failed to ensure diversity and inclusion and EEO harassment training to NYSAC employees.  Herman and Defendant Baldwin also knowingly failed to safeguard, protect and inform Plaintiff of her rights against discriminatory policies and practices and instead concealed Plaintiff's claims under Title VII and NYSDHR.

139.    Accordingly, Defendants are liable to Plaintiff for compensatory damages and equitable relief including but not limited to reinstatement and promotion to DC.

**State Action by DOL Defendants**

140.    Based upon information and belief, on or about May 13, 2022, Defendants Archambault and Scally colluded with DOS and NYSAC defendants to deprive Plaintiff of her property which was enforcement of the March 8, 2021 decision granting her reinstatement and back pay.

141.    On or about April 25, 2022 the OAG contacted Plaintiff's undersigned counsel that an enforcement action would shortly be filed against NYSAC and DOS to enforce the DOL's March 8, 2021 decision that awarded Plaintiff reinstatement to employment and back pay.

142.    Based upon information and belief on or about April 2022 DOL Defendants Archambault and Scally colluded and agreed with NYSAC / DOS defendants to withdraw the March 8, 2021 decision to prevent its enforcement by the OAG and its use as evidence of retaliation and discrimination by the NYS DHR by voiding its effect.  DOL used the ruse or guise of tolling the statute of limitations to enforce the March 8, 2022 decision by stating to Plaintiff in an email dated on or about May 10, 2022 by Defendant Scally that she agreed with NYSAC to re-open Plaintiff's 2018 case and  perform a "blank slate" re-investigation within 90 days (which took the original investigators several years to perform, analyze and render a decision) in exchange for a tolling agreement to enforce the March 8, 2021 decision.

35

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5                                                    RECEIVED NYSCEF: 06/27/2022

143.    Defendant Scally's timing of the tolling period of 90 days would have only provided for a cursory, sham investigation in order to issue a new finding in favor of NYSAC / DOS.  Moreover, Defendant Scally's representation that the tolling period in exchange for more time to enforce the March 8, 2021 decision was specious as the decision was withdrawn and unenforceable going forward.  At all relevant times, Defendant Scally was aware that the withdrawal of the March 8, 2021 decision would harm Plaintiff.

144.    At all relevant times Defendant Scally was aware that the proper procedure for NYSAC / DOS to appeal the final March 8, 2021 decision was to file an appeal with the Industrial Board of Appeals.  Defendants Archambault and Scally worked diligently to ensure that NYSAC / DOS circumvent and would not have to suffer an appeal with high standards and burdens of proof to over come, by simply withdrawing the March 8, 2021 decision altogether.    Defendants Archambault and Scally deprived Plaintiff of her property interests – reinstatement to employment and back pay and additionally equal protection under the laws of New York.  Defendants Archambault and Scally deliberately failed to protect Plaintiff's statutory time frame to ensure enforcement of the March 8, 2021 decision and completely deprived Plaintiff of any and all worker protections under New York State and OSHA worker protection laws.

145.    By withdrawing its March 8, 2021 decision in collusion with the NYSAC / DOS defendants, Defendant DOL, Scally and Archambault deprived Plaintiff of her due process rights to her property – enforcement by the OAG of Plaintiff's back pay and reinstatement to her job as a NYSAC inspector.  Defendant DOL knowingly deprived Plaintiff, the only black female inspector at NYSAC of her right to property based on her race and gender by preventing the enforcement of the March 8, 2021 decision because NYSAC / DOS defendants notified the DOL defendants that the March 8, 2021 decision was used as evidence of retaliation and discrimination

36

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5                                                    RECEIVED NYSCEF: 06/27/2022

against Plaintiff in Plaintiff's ongoing proceeding at the New York State Division of Human Rights ("NYS DHR").

146.    Defendants Archambault and Scally further conspired with NYSAC / DOS defendants to obstruct evidence accepted by the NYS DHR in support of Plaintiff's claims of retaliation and discrimination by voiding the effect the of the March 8, 2021 because Defendant Scally withdrew the decision by forging the May 13, 2022 withdrawal letter.

147.    On the same date as the fraudulently signed withdrawal letter dated May 13, 2022.  The OAG sent an email to Plaintiff's undersigned counsel stating that it no longer represented the DOL and that the enforcement proceeding would not be filed.

148.    The actions taken by Defendants Archambault and Scally violated the one mission of the DOL to protect workers and ensure a safe work place and affirmatively and intentionally harmed Plaintiff as set forth throughout this FAC.

149.    As a result of the retaliation and discrimination continuing to date, Plaintiff has suffered emotional distress and mental anguish including but not limited to :sleeplessness, anxiety, depression, loss of enjoyment of life that caused physical manifestations and required Plaintiff to seek medical and mental health treatment.

150.    Plaintiff seeks reinstatement to employment, promotion to deputy commissioner that she would have obtained if she was not discriminated against based on her race and/or gender, back pay, emotional distress or mental anguish damages and injunctive relief to prevent Defendants from continuing discrimination and retaliation against her pursuant to this §1983 claim.

### AS and FOR a SECOND CAUSE of ACTION
### (Abuse of Process under §1983)

151.    Plaintiff repeats, realleges and incorporates by reference each and every allegation previously set forth as if fully set forth herein.

37

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5                                                    RECEIVED NYSCEF: 06/27/2022

152.   A malicious abuse of process claim under §1983 are derived from state law.

153.   Under New York Law, an abuse of process claim has 3 essential elements 1) regularly issued process, either civil or criminal; 2) an intent to do harm without excuse of justification; and (3) use of the process in a perverted manner to obtain a collateral objective. *Curiano v. Suozzi* 63 NY2d 113, 116 (1984)

154.   As alleged throughout this Complaint, Defendant Herman regularly and singlehandedly processed workplace discrimination complaints from NYSAC.  Defendant Herman succeeded in her "catch and kill" response to all of Plaintiff's discrimination and sexual harassment complaints, and concealing Plaintiff's meritorious claims which were a perverted use of Defendant Herman's power and authority to all of Plaintiff's discrimination and sexual harassment complaints fully aware that it would harm Plaintiff mentally, emotionally and financially.  Defendant Herman's collateral objective was to silence Plaintiff and absolve Defendant Giardina and DC Vasquez  of any accountability or liability to Plaintiff.

155.   As alleged throughout this Complaint Defendant Leary abused his power and authority as an attorney for NYS DOS to procure Plaintiff's silence about discrimination in licensing and other terms and conditions of her employment and/or Plaintiff's resignation or termination from employment at NYSAC.

156.   On or about 2015 Defendant Leary demanded Plaintiff's resignation for allegedly working as a boxing judge in VA in violation of NYSAC policy.  Defendant Leary did not afford Plaintiff notice and opportunity to be heard with a representative of her choice in defending against this allegation.  Instead, Defendant Leary used his position as an attorney to gaslight Plaintiff into believing she somehow violated a policy and then to intimidate and coerce Plaintiff, a non-lawyer to resign.

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5                                              RECEIVED NYSCEF: 06/27/2022

157.    On or about 2017, Defendant Leary once again harassed Plaintiff about appearing on a 60 minutes interview on behalf of a friend, boxer Danny Jacobs and with Defendant Giardina made all attempts to thwart this appearance.  On or about 2018, NYSAC, without authority granted publishing rights to Netflix for a video clip of Plaintiff in a documentary.  NYSAC did not notify or procure consent from Plaintiff to use her likeness for profit at any relevant time.

158.    On or about 2018, as alleged throughout this Complaint, Defendant Baldwin made all attempts to silence or erase Plaintiff's discrimination, sexual harassment and retaliation complaints by attempting to thwart Plaintiff's NYS DHR case by attempts to influence Administrative Law Judge Alexander Linzer.

159.    Since on or about 2017 and continuing to date, as alleged throughout this Complaint, Defendant Giardina denied Plaintiff her promotion based on race, sexually harassed Plaintiff causing mental anguish, denied Plaintiff media event assignments, attempted to thwart Plaintiff's media appearances, and continues to harass Plaintiff through the news media by leaking Plaintiff's personnel information.

160.    As alleged throughout this Complaint, Defendant Giardina's objectives at all relevant times were to gaslight and silence Plaintiff about systemic bias against African American employees at NYSAC.

161.    Since on or about 2017 and continuing to date, as alleged throughout this complaint, Defendant Sumbler sought to erase all black, female inspectors from NYSAC and prevented Plaintiff from lawfully and peacefully attending public boxing events.  Defendant Sumbler abused her power and authority and terminated Plaintiff without cause in violation of CSL *supra*  and Stigma Plus law as detailed *infra*.

162.    As alleged throughout this First Amended Complaint ("FAC") Defendants Archambault

39

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5                                                    RECEIVED NYSCEF: 06/27/2022

and Scally exceeded the authority of their positions at DOL by knowingly allowing the statute of limitations to enforce the March 8, 2021 decision to expire in order to prevent enforcement while knowing it would harm Plaintiff.

163.    As alleged throughout this First Amended Complaint ("FAC") Defendants Archambault and Scally exceeded the authority of their positions at DOL by withdrawing the March 8, 2021 decision to prevent its use as evidence in the NYS DHR proceeding while knowing it would harm Plaintiff.

164.    As alleged throughout this First Amended Complaint ("FAC") Defendants Archambault and Scally exceeded the authority of their positions at DOL by withdrawing the March 8, 2021 decision in order to ensure harm to the Plaintiff and ensure that respondents NYSAC / DOS would not have to suffer the regular legal process of an appeal to the Industrial Board of Appeals and risk losing that appeal with a high burden of proof.  In short, Defendants Archambault and Scally obstructed the legal process in its ordinary course by simply withdrawing the March 8, 2021 decision at the sole, harmful expense of Plaintiff.   By doing so, Defendants Archambault and Scally put the onus on Plaintiff to commence a proceeding concerning the March 8, 2021 decision. At all relevant times DOL defendants knew or should have known that all of their conduct would harm Plaintiff and render void the work of a team of investigators and attorneys who diligently and tirelessly worked on Plaintiff's case for approximately three (3) years.

165.    As a result of Defendants actions, Plaintiff has suffered emotional distress and mental anguish as alleged throughout this FAC.

166.    Accordingly, the individual defendants in their official or individual capacities are liable to Plaintiff in compensatory, punitive, emotional distress or mental anguish damages as well as equitable relief including but not limited to reinstatement to employment and promotion to DC

40

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5                                                                                    RECEIVED NYSCEF: 06/27/2022

and back pay.

### As and for a THIRD CAUSE of ACTION
### Stigma Plus Due Process Claim

167.    Plaintiff repeats, realleges and incorporates by reference each and every allegation previously set forth as if fully set forth herein.

168.    Stigma Plus Due Process Claims involve the government's termination of its employees which are a tangible interest or property right (plus) that injures the government employee's reputation (stigma) without adequate process.  Due process necessitates that the government employee be afforded notice and opportunity to be heard on their termination or discharge.

169.    As alleged throughout this complaint, Defendant Sumbler terminated Plaintiff without due process notice and opportunity to be heard.  Defendant Sumbler thereafter published a false pretext to NYS DOS and NYSAC officials that Plaintiff violated locker room policy on or about April 21, 2018 without ever notifying Plaintiff of such charge thereby besmirching Plaintiff's reputation as a boxing inspector / public official within the sport.

170.    Defendant Giardina continually to date, has leaked Plaintiff's personnel information and that she was terminated to the local news media.  The boxing industry media has specifically named Plaintiff in numerous articles that portrayed Plaintiff negatively.

171.    As alleged throughout this complaint, on or about April 2018 after Plaintiff's discharge, Defendant Sumbler used security to remove Plaintiff from a public boxing event where she was lawfully and peacefully present to further damage Plaintiff's public reputation as a boxing official.

172.    As alleged throughout this Complaint, at all relevant times, Defendants Baldwin, Leary and Herman were aware of Defendants Sumbler and Giardina's malicious and unlawful conduct towards Plaintiff and the ongoing damage to Plaintiff's reputation and did nothing to stop or correct or abate the damage to Plaintiff.

41

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5                                                    RECEIVED NYSCEF: 06/27/2022

173.    For the foregoing reasons, all named individual defendants are liable to Plaintiff for compensatory, emotional distress or mental anguish, punitive and prospective damages in an amount to be determined at the time of trial and equitable relief including but not limited to reinstatement and promotion to DC.

**As and for a FOURTH CAUSE OF ACTION**
**Against Defendant Maria Herman for Fraudulent Concealment of Plaintiff's Claims**

174.    Plaintiff repeats, realleges and incorporates by reference each and every allegation previously set forth as if fully set forth herein.

175.    The elements for Fraud are: 1) misrepresentation or material omission of fact; 2) which was false and known to be false by defendant; and 3) made for the purpose of inducing the other party to rely upon it; and 4) justifiable reliance of the other party on the misrepresentation or material omission; and 5) injury.

176.    As alleged throughout this Complaint Defendant Herman falsified internal discrimination complaints about Plaintiff's denial of a promotion to DC and sexual harassment by Defendant Giardina in 2017.  Defendant Herman signed these complaints on behalf of Plaintiff without Plaintiff's authorization and consent.  Defendant Herman then investigated the complaints and determined the complaints to be unsubstantiated.  On or about 2017 when Plaintiff requested that Defendant Herman recuse herself from these investigations, Defendant Herman refused.

177.    As alleged throughout this Complaint Defendant Herman misrepresented to Plaintiff that Anthony Giardina's attempt to hug her or make physical contact with Plaintiff was neither pervasive or substantial to warrant a finding of sexual harassment.  As the sole Affirmative Action Officer, Defendant Herman knew or should have known that this representation of  Defendant Giardina's attempt to make physical contact with Plaintiff was not "pervasive and substantial" were false.  Plaintiff justifiably relied on Defendant Herman's representation because Defendant

42

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5                                                          RECEIVED NYSCEF: 06/27/2022

Herman was the sole Affirmative Action Officer.

178.    Similarly, Plaintiff justifiably relied on Defendant Herman's representations that there was no discrimination in denying her promotion and did not take these complaints to the EEOC or NYS DHR because Plaintiff never received a copy of the internal complaints.  As alleged throughout this Complaint, the Internal Complaints contained written notices that Plaintiff did not have to wait for the outcome of the internal complaint and could proceed to the EEOC or NYSDHR within approximately 1 year from the date of the internal complaint.

179.    Plaintiff suffered injury based on Defendant's fraudulent concealment of her claims because the discrimination and harassment went unabated, unaddressed and Plaintiff ultimately suffered termination from employment in retaliation for making the internal complaints.

180.    Accordingly, Plaintiff should be afforded tolling of the statute of limitations on claims arising from these internal complaints, compensatory damages, back pay and equitable relief including but not limited to reinstatement to employment and promotion to DC.

### As and for a FIFTH CAUSE OF ACTION
### Common Law Civil Conspiracy against individually named Defendants

181.    Plaintiff repeats, realleges and incorporates by reference each and every allegation previously set forth as if fully set forth herein.

182.    A New York claim for civil conspiracy is not an independent tort and therefore, based on a primary tory cause of action.  A civil conspiracy claim requires the primary or underlying tort with: 1) an agreement between two or more defendants; and 2) an overt act in furtherance of the agreement and 3) the parties' intentional furtherance of the agreement and 4) injury or damages to the plaintiff.

183.    As alleged throughout this Complaint, two or more of all named NYSAC / DOS defendants

43

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5                                                        RECEIVED NYSCEF: 06/27/2022

at various times throughout the employment of Plaintiffs agreed and conspired with each other to deprive Plaintiff of her rights to property, due process and equal protection under the laws of New York State as guaranteed by the Fourteenth Amendment. Additionally, based on the second cause of action for abuse of process and third cause of action for stigma plus violations of due process form the bases for a civil conspiracy claim.

184.     As alleged throughout this Complaint, Maria Herman suppressed Plaintiff's discrimination and harassment complaints against Defendant Giardina, Sumbler, David Berlin and Frank Vasquez to deter her from filing further complaints to the EEOC or New York State Division of Human Rights. As alleged throughout this Complaint, Defendant Herman, Defendant Giardina, Defendant Leary and Defendant Baldwin all communicated with each other to suppress Plaintiff's claims. For instance, Defendant Baldwin emailed Defendant Leary on or about June 2018 to discuss Plaintiff's emails.

185.     Defendant Baldwin attempted to influence the outcome of Plaintiff Perry's NYS Div. of Human Rights matter on or about August 2021 when she appeared on behalf of NYS DOS with knowledge that she had a financial and personal relationship with the Administrative Law Judge's (ALJ) spouse. The ALJ disclosed the relationship after opening arguments and was subsequently replaced due to the appearance of conflict of interest.

186.     Defendant Leary throughout the course of Plaintiff Perry's employment with NYSAC made direct and repeated attempts to remove Plaintiff Perry from her position as inspector. First it was the 2 year ban that was not enforced on other non-AA employees such as former inspector Joe Schaeffer and former director Eric Bentley who immediately went to work for a promoter Real Deal promotion company after leaving NYSAC on or about 2017.

187.     As alleged throughout this complaint, on or about April 23, 2018, Defendant Leary and

44

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 06/27/2022

Brendan Fitzgerald requested in an email to Defendant Sumbler that Defendant Sumbler draft a memo about Plaintiff's alleged violation of locker room policy.  A few days later, Plaintiff was discharged on or about April 25, 2018 without notice or opportunity to be heard on the allegations in that memo dated on or about April 23, 2018, in violation of CSL §75.2.

188.    Based on NYS Police and defendants' documents, since on or about March 2017, James Leary was the go-between for NYS DOS and NYS Police to maliciously have witness Jean Seme arrested and jailed because Mr. Seme witnessed Plaintiff being sexually harassed by Defendant Giardina with an attempted hug.

189.    At all relevant times, Defendant  Leary was aware or should have been aware there was no probable cause or any cause whatsoever to send NYS Troopers to interrogate and coerce Mr. Seme to admit to a crime he never committed.  Despite NYS Trooper Sands' updates to him that Plaintiff Seme made no threats and committed no crime, and despite the Bronx and Manhattan DA's offices refusal to even investigate their false reports of aggravated harassment, Defendant Leary continued to advance false reports of threats made by Mr. Seme to NYS police and caused continuing surveillance of Mr. Seme.

190.    All Defendants copied each other on emails concerning Plaintiff and whether by action or inaction or omission, they all agreed to participate and conspire to discharge, harass and retaliate against Plaintiff continuing to date.

191.    As alleged throughout this FAC, two or more defendants, specifically Defendants Archambault, Scally, Baldwin and/or Leary and/or by and through their attorneys Lisa Joslin and Nancy Williamson agreed colluded to void or have DOL withdraw the March 8, 2021 decision so that NYSAC and DOS would bypass the ordinary legal process of an appeal to the Industrial Board of Appeals that they all knew or should have known would harm Plaintiff.

45

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5                                          RECEIVED NYSCEF: 06/27/2022

192.    As alleged throughout this FAC, two or more defendants, specifically Defendants Archambault, Scally, Baldwin and/or Leary and/or by and through their attorneys Lisa Joslin and Nancy Williamson agreed colluded to void or have DOL withdraw the March 8, 2021 decision to void its evidentiary value in Plaintiff's NYS DHR proceeding that they all knew or should have known would harm Plaintiff.

193.    As alleged throughout this FAC, two or more defendants, specifically Defendants Archambault, Scally, Baldwin and/or Leary and/or by and through their attorneys Lisa Joslin and Nancy Williamson agreed colluded to withhold the March 8, 2021 decision from issuance and enforcement to allow the statute of limitations to lapse so it would not be enforced while they all knew or should have known would harm Plaintiff.

194.    By knowingly and intentionally colluding with NYSAC and DOS defendants, the DOL defendants engaged in the post-termination retaliation by NYSAC and DOS defendants against Plaintiffs.

195.    By knowingly and intentionally colluding with NYSAC and DOS defendants in preventing fair and timely wages to be paid to Plaintiff, DOL defendants are liable with NYSAC and DOS to Plaintiff for her lawful wages under the NYLL during the relevant time period.

196.    According to the above, Any one or all Defendants are liable to Plaintiff for damages incurred by Plaintiffs as a result of Defendants' misconduct to deprive Plaintiff of liberty and property without due process and equal protection under laws of NYS guaranteed by the Fourteenth Amendment.  Damages include but are not limited to: back pay, front pay, loss of opportunities or contracts, loss of wages, compensatory, economic, prospective, emotional distress or mental anguish and punitive damages with attorney fees and costs, and pre and post judgment interest.

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5                                    RECEIVED NYSCEF: 06/27/2022

**Prayer for Relief**

**WHEREFORE,** Plaintiff respectfully prays for the following relief by the Court:

a) Tolling of the statute of limitations on the fraudulently concealed claims concerning denial of Plaintiff's promotion to DC based on gender and race; and the sexual harassment by Defendant Giardina suffered by Plaintiff when Defendant Giardina attempted to make physical contact with Plaintiff; and

b) Declaring the acts and practices complained of herein are in violation of the US and NYS Constitution, §1983, NYSHRL, NYS common law of abuse of process, stigma plus violation of due process, and civil conspiracy;

c) Enjoining and permanently restraining the violations detailed in paragraph "a" *supra*;

d) Directing Defendants to take affirmative action necessary to ensure that the effects of these unlawful practices are eliminated;

e) Directing Defendants to re-instate Plaintiff to her employment as an inspector at NYSAC and promote Plaintiff to Deputy Commissioner that she qualified for in 2017;

f) Directing Defendants to pay compensatory damages for emotional distress, mental anguish and humiliation;

g) Directing Defendants to pay Plaintiff compensatory damages including but not limited to back pay, prospective pay and uncompensated medical expenses;

h) Directing Defendants to place Plaintiff in the position she would have been in but for Defendants' discriminatory treatment, and to make her whole for damage to her reputation and all earnings she would have received but for Defendants' discriminatory and retaliatory treatment, including but not limited to back-pay, licensure as a NYS boxing judge and attendant contracts, retirement, state service time, pension and other lost benefits.

47

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5                                                    RECEIVED NYSCEF: 06/27/2022

i)  Awarding of reasonable attorney's fees, expert fees, costs and disbursements;

j)  Awarding Plaintiff such interest as is allowed by law; and

k)  Granting such other and further relief as this Court deems just and proper.


Dated: New York, New York
        June 27, 2022

                                    Law Office of Susan Ghim
                                    Attorney for Plaintiff Dorothea Perry
                                    /s/ Susan Ghim

                                    _____

                        BY:     Susan Ghim
                                    244 Fifth Avenue, Suite 1434
                                    New York, New York 10001
                                    (646) 889-1011 / ghimlaw@gmail.com

48

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5    RECEIVED NYSCEF: 06/27/2022

# EXHIBIT A

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5                                                    RECEIVED NYSCEF: 06/27/2022



# WE ARE YOUR DOL

NEW YORK STATE OF OPPORTUNITY. | **Department of Labor**

Kathy Hochul, Governor
Roberta Reardon, Commissioner

**New York State Department of Labor**
Jill Archambault
Deputy Commissioner and General Counsel
Harriman State Campus
Building 12
Albany, NY 12241
www.labor.ny.gov

**via mail and email**
Nancy S. Williamson, Esq.
Lisa S. Joslin, Esq.
Gleason, Dunn, Walsh & O'Shea
40 Beaver Street
Albany, New York  12207
nwilliamson@gdwo.net

**via mail and email**
Susan Ghim, Esq.
Law Office of Susan Ghim
244 5th Avenue
Suite 1434
New York, NY 10001

May 13, 2022

Re:  PESH Discrimination
     Dorthea Perry vs. New York State Athletic Commission
     Case No. 30041867

Dear Ms. Ghim, Ms. Williamson and Ms. Joslin:

The determination of the Commissioner issued on March 8, 2022 in the above referenced matter is hereby withdrawn.

Very truly yours,

Jill Archambault
Deputy Commissioner and General Counsel

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5                                                    RECEIVED NYSCEF: 06/27/2022

## ATTORNEY VERIFICATION

State of New York     )

                           ) :ss

County of New York  )

     I, the undersigned attorney duly admitted to practice in New York State, affirm under penalty of perjury and pursuant to CPLR §2106 as follows:

1.      The Affiant is the principal of the Law Office of Susan Ghim, Attorney for Plaintiff Dorothea Perry.

2.      The Affiant has read the foregoing Verified First Amended Complaint and knows the contents thereof; that the same are true to Affiant's own knowledge except as to those matters therein stated to be alleged based upon information and belief, and as to those matters, I believe them to be true.  The source of Affiant's knowledge and information consists of records, and information contained in the client file relating to this action maintained in the office of the undersigned attorney for said Plaintiff and the Affiant's consultation with Plaintiff.

3.      This verification is made by the Affiant pursuant to CPLR 3020(b)(3) because the said Plaintiff / party is not a resident of the County of New York, the County in which the undersigned attorney maintains her law office.

Dated:  New York, N.Y.
          June 27, 2022

                                Law Office of Susan Ghim
                                Attorney for Plaintiff Dorothea Perry

                                /s/ Susan Ghim

                                _____

                                Susan Ghim
                                244 Fifth Avenue, Suite 1434
                                New York, NY 10001
                                Email: Ghimlaw@gmail.com / Ph. 646-889-1011

INDEX NO. 152543/2022

NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 06/27/2022

Index No. 152543 / 2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

DOROTHEA PERRY,

Plaintiff,

-against-

NEW YORK STATE ATHLETIC COMMISSION,
NEW YORK STATE DEPARTMENT OF STATE,
ROBERT J. RODRIGUEZ, Sec'y of State,
NEW YORK STATE DEPARTMENT OF LABOR,
ROBERTA REARDON, Commissioner,
KIM SUMBLER, ANTHONY GIARDINA,
MARIA HERMAN, LINDA BALDWIN,
JAMES LEARY, BRIDGET HOLOHAN SCALLY
AND JILL ARCHAMBAULT, individually and
in their official capacities,

Defendants.

VERIFIED FIRST AMENDED COMPLAINT

The undersigned, an attorney admitted to practice in the Courts of New York State, certifies that upon the examination and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.

Dated:    New York, NY
          June 27, 2022

_____
Susan Ghim

Law Office of Susan Ghim
Attorney for Plaintiff
244 Fifth Avenue, Suite 1434
New York, NY 10001
(646) 889-1011 / sghim@ghimlaw.com