**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

**DOROTHEA PERRY,**

Plaintiff,

-against-

NEW YORK STATE ATHLETIC COMMISSION;

NEW YORK STATE DEPARTMENT OF STATE;

KIM SUMBLER, in her individual capacity;

LINDA BALDWIN, in her individual capacity;

JAMES LEARY, in his individual capacity;

ANTHONY GIARDINA, in his individual capacity;

MARIA HERMAN, in her individual capacity;

LILLIANA ESTRELLA-CASTILLO, in her individual capacity only; and

JOHN/JANE DOES 1-10,

Defendants.

**Case No. 1:25-CV-938 (JPC)(HJR)**

# THIRD AMENDED COMPLAINT

## PRELIMINARY STATEMENT

This action arises from alleged race discrimination, sex discrimination, retaliation, witness suppression, and interference with Plaintiff's administrative complaints by officials of the New York State Athletic Commission ("NYSAC") and the New York State Department of State ("DOS").

Plaintiff Dorothea Perry, a Black female boxing inspector, alleges that after she repeatedly complained about discrimination, sexual harassment, workplace violence, and corruption within NYSAC's internal complaint process, Defendants altered or controlled aspects of the internal EEO process, took actions affecting witnesses, applied agency rules selectively, and terminated Plaintiff shortly after she reported workplace violence, filed a police complaint, and submitted a confidential Inspector General complaint concerning public-officer eligibility and related misconduct.

This Third Amended Complaint separates Plaintiff's theories into distinct claims, including employment discrimination and retaliation under Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983; First Amendment retaliation based on protected public-corruption speech; due process and equal protection violations; and conspiracy and witness-interference claims.

This pleading supersedes prior complaints and is intended as the operative complaint. Plaintiff pleads certain claims in the alternative. Each count incorporates only the factual allegations relevant to that theory, and not every defendant is alleged to be liable on every count. The personal involvement of each defendant is addressed in the factual allegations supporting each count.

## CLAIM MAP AND BASIS FOR CURRENT AMENDMENT

Plaintiff asserts the following categories of claims: employment discrimination, harassment, and retaliation under Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983; First Amendment retaliation based on protected public-corruption speech; equal-protection and due-process violations, including stigma-plus due process; witness interference under 42 U.S.C. § 1985(2); and conspiracy under 42 U.S.C. § 1985(3).

This amended pleading incorporates: (i) the EEOC Right-to-Sue Notice issued November 19, 2025 (EEOC Charge No. 16GB803837); (ii) records produced under FOIL Request No. 028-2026 to the NYS Inspector General, filed March 10, 2026, which Plaintiff alleges include additional communications involving Defendant Baldwin and IG staff that were produced on May 27, 2026 and were not produced in prior federal discovery despite being responsive to discovery requests served September 3, 2021; and (iii) clarified individual-capacity allegations regarding Defendant Herman based on admissions made at her December 7, 2021 federal deposition.

## PART I. PARTIES, JURISDICTION, EXHAUSTION, AND TIMELINESS

### PARTIES

Plaintiff Dorothea Perry is a Black female resident of Brooklyn, New York, employed by NYSAC as a boxing inspector from approximately 2004 until her termination on April 25, 2018.

Defendant New York State Athletic Commission ("NYSAC") is an agency of the State of New York.

Defendant New York State Department of State ("DOS") is an agency of the State of New York with supervisory authority over NYSAC.

Defendant Kim Sumbler is sued in her individual capacity. At all relevant times she served as Executive Director of NYSAC. Plaintiff alleges that Sumbler admitted she was a Canadian citizen, that she resided in Welland, Ontario, and that she lacked a New York driver's license, and that Plaintiff contends those facts are inconsistent with Public Officers Law § 3.

Defendant Linda Baldwin is sued in her individual capacity. At all relevant times she served as General Counsel to the New York State Department of State.

Defendant James Leary is sued in his individual capacity. At all relevant times he served as an attorney for DOS with supervisory authority over NYSAC matters and was Sumbler's direct supervisor. (Sumbler Dep. Tr. 82:16-17.)

Defendant Anthony Giardina is sued in his individual capacity. He served as Acting Executive Director of NYSAC through approximately July 2017 and, during the relevant period, exercised supervisory authority over Plaintiff and other inspectors.

Defendant Maria Herman is sued in her individual capacity. At all relevant times she served as Director of Affirmative Action Programs / EEO Officer at NYSAC. Herman is added as a defendant based on admissions made at her December 7, 2021 deposition. Her claims relate back under Rule 15(c) as described below.

Defendant Lilliana Estrella-Castillo is sued in her individual capacity only. At all relevant times she served as Chief Administrative Law Judge at the New York State Division of Human Rights, responsible for calendar management, hearing scheduling, and ALJ assignment.

John/Jane Does 1-10 are unknown individuals whose conduct contributed to the violations alleged herein.

**JURISDICTION AND VENUE**

This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this District.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

Plaintiff filed an EEOC charge on May 7, 2018, EEOC Charge No. 16GB803837, dual-filed with the NYS Division of Human Rights as DHR Case No. 10195419. On March 20, 2019, DHR issued a probable cause determination. On December 30, 2020, DHR General Counsel Caroline J. Downey denied NYSAC's application to reopen and affirmed probable cause. DHR issued a Final Order on November 7, 2024. The EEOC issued a Notice of Right to Sue on November 19, 2025. Plaintiff commenced this action within 90 days of receipt of that notice. To the extent any Title VII claim was filed before the notice issued, that defect is cured by its issuance during the pendency of this action. See Goodman v. Heublein, Inc., 645 F.2d 127, 130 (2d Cir. 1981). Plaintiff's § 1981, § 1983, and § 1985 claims do not require exhaustion.

**RELATION BACK AND TIMELINESS AS TO DEFENDANT HERMAN**

Plaintiff alleges that Defendant Herman is added based on conduct that was not disclosed to Plaintiff and discovered only at Herman's December 7, 2021 federal deposition, when Herman admitted that she signed complaint documents "on behalf of Dorothea Perry" without authorization (Herman Dep. Tr. 27:8), that Plaintiff never authorized her to sign (Herman Dep. Tr. 27:11; 28:11) or to file documents on Plaintiff's behalf (Herman Dep. Tr. 28:14), and that she never sent Plaintiff copies of the documents (Herman Dep. Tr. 27:5) or advised Plaintiff of external filing deadlines (Herman Dep. Tr. 31:15). Plaintiff alleges she did not learn of these facts until Herman's December 7, 2021 deposition, and that the underlying documents were in NYSAC/DOS's possession and were not provided to Plaintiff beforehand. The claims against Herman arise from the same nucleus of operative facts already at issue and relate back under Fed. R. Civ. P. 15(c). Plaintiff also alleges equitable tolling and fraudulent concealment based on Herman's failure to provide copies or notify Plaintiff that she had signed or filed documents on Plaintiff's behalf. Plaintiff alleges that Herman's conduct was described in prior pleadings and that the John/Jane Does 1-10 placeholder was intended to include then-unknown individuals involved in that conduct.

**SEPARATION OF LEGAL THEORIES**

Plaintiff alleges distinct theories of liability: (1) employment discrimination, sexual harassment / hostile work environment, and retaliation under Title VII, § 1981, and § 1983; (2) First Amendment retaliation for protected speech to the Inspector General; and (3) conspiracy, witness interference, and administrative-interference claims based on separate conduct and later-discovered facts.

Specifically, at the time of termination, Plaintiff had engaged in at least five streams of independently protected activity: (i) internal EEO complaints (2014–2018); (ii) a sexual harassment complaint against Giardina (March 2017); (iii) a confidential IG complaint (March 15, 2018); (iv) a workplace-violence complaint (April 22, 2018); and (v) a police complaint (April 23, 2018). Plaintiff was terminated April 25, 2018 — two days after her police complaint, three days after her workplace-violence complaint, and nineteen days after the IG lifted confidentiality as to her complaint.

**CHRONOLOGICAL SUMMARY OF KEY EVENTS**

2004 — Plaintiff begins employment as per diem Boxing Inspector at NYSAC.

July 23, 2014 — Baldwin authors an ethics opinion that Plaintiff alleges was applied to her but not to similarly situated white male employees.

March 17, 2017 — Plaintiff alleges that Giardina sexually harassed her at Madison Square Garden. Seme witnesses the incident and is terminated the same evening. Plaintiff alleges that state police were later dispatched to Seme's home based on an uncorroborated complaint from Kim Sumbler, and that the District Attorney declined to prosecute.

November 28, 2017 — Herman issues "unsubstantiated" finding on sexual harassment complaint.

December 4, 2017 — Herman signs complaint form "on behalf of Dorothea Perry" without authorization. Form pre-dates the incident it purports to describe. (Bates DEF-2303 through DEF-2305.)

March 15, 2018 — Plaintiff files confidential IG complaint (Case No. 0899-26-2018) reporting concerns about Sumbler's eligibility and Herman's handling of the EEO process.

April 6, 2018 — IG lifts confidentiality, effectively identifying Plaintiff as the complainant.

April 21, 2018 — Workplace-violence incident at Barclays Center. Plaintiff alleges that Sumbler had changed the post-fight medical protocol without notifying inspectors. Plaintiff alleges that a reporter threatened to kill her and that Veronica Cano corroborated the incident in June or July 2018.

April 22, 2018 — Plaintiff files written workplace-violence complaint.

April 23, 2018 — Plaintiff files police complaint regarding the death threat.

April 25, 2018 — Plaintiff terminated. Leary admitted not present at Barclays Center. (Leary DHR Tr. 2241:22-23.)

May 7, 2018 — EEOC Charge No. 16GB803837 filed.

June 7, 2018 — Baldwin emails Leary: "Do you have time to talk for a few minutes?…re: Dorothea Perry's emails."

June 2018 — Commissioner Signorile terminated after refusing Baldwin's directive to "stand clear," which Baldwin attributed to the Governor's office.

July 17 & 30, 2018 — Baldwin communicates with IG staff about the Barclays video and offers to review footage she did not witness.

August 15, 2018 — IG investigator Michaels writes that the video shows Plaintiff "utterly failed to follow security protocols." Plaintiff alleges the statement adopted DOS/NYSAC's account without an independent investigation. IG closes the case.

March 20, 2019 — DHR issues probable cause determination in Plaintiff's favor.

June 19, 2019 — Plaintiff provides GOER with DHR probable cause finding. GOER takes no further action.

December 30, 2020 — DHR General Counsel Downey affirms probable cause; denies NYSAC's reopening application.

August 16, 2021 — Baldwin appears unannounced at DHR hearing without notice of appearance. ALJ Linzer discloses conflict. Hearing reassigned.

December 7, 2021 — Herman admits at federal deposition she signed documents in Plaintiff's name without authorization. Discovery date for Herman claims.

March 8, 2022 — DOL issues first determination in Plaintiff's favor.

May 13, 2022 — Plaintiff alleges DOL's favorable determination was withdrawn through a forged "AmyCKarp" signature.

In 2022 — After DOL's favorable determination was withdrawn, Plaintiff filed the state-court action later relied upon by Defendants in their motion to dismiss (Index No. 152543/2022), which Plaintiff alleges was a direct result of the withdrawal of the favorable DOL finding.

August 11, 2022 — DOL issues second determination in Plaintiff's favor; finds disparate treatment.

June 21, 2023 — Estrella-Castillo issues an administrative letter concerning ALJ assignment and retirement status; Plaintiff alleges the letter contained an inaccurate statement about ALJ Erazo's retirement status and caused reassignment to ALJ Sorkin.

December 2023 — Joslin discloses Plaintiff's confidential medical records at Industrial Board proceeding using authorization limited to DHR proceedings.

November 7, 2024 — DHR issues Final Order.

January 31, 2025 — Plaintiff files this federal action.

February 2025 — DOS terminates George Ward after 35 years of service, one month after federal filing.

November 19, 2025 — EEOC issues Right-to-Sue Notice.

May 27, 2026 — IG produces records under FOIL Request No. 028-2026 revealing Baldwin's direct communications with IG investigators in 2018, which Plaintiff alleges were not produced in prior federal discovery and support tolling as to Baldwin's IG-related conduct.

June 15, 2026 — Plaintiff files this Third Amended Complaint.

## DEFENDANT-SPECIFIC SUMMARY OF PERSONAL INVOLVEMENT

### Defendant Linda Baldwin

As DOS General Counsel: authored the 2014 ethics opinion that Plaintiff alleges was applied selectively against her; coordinated with Leary re Plaintiff's complaints (June 7, 2018 email); communicated with IG staff and offered to guide investigators through video evidence she had not personally witnessed (July 30, 2018); received direct notice from DOL Special Counsel Rogers that this was the worst retaliation case he had ever seen and blocked his request to interview Sumbler under oath (Rogers DHR Tr. 1744:4-15; 1747:1-15); knew or should have known from Plaintiff's workplace-violence report and agency records that Sumbler changed or disregarded post-fight medical protocols and that Plaintiff had identified witnesses, including Dr. Avery Browne; directed Commissioner Signorile to stand clear (Signorile DHR Tr. 1556:17-18); appeared unannounced at DHR hearing causing ALJ Linzer's replacement; and did not take corrective action concerning Sumbler's eligibility or protocol conduct while, Plaintiff alleges, participating in the retaliatory response against the person who reported it.

### Defendant Maria Herman

As NYSAC's sole Affirmative Action Officer, Herman allegedly advised Giardina to be "more friendly" with subordinates; investigated her own former supervisor for sexual harassment, refused to recuse, and issued an "unsubstantiated" finding after applying a standard Plaintiff contends was incorrect; signed complaint documents in Plaintiff's name without authorization (Herman Dep. Tr. 27:8; 28:11; 28:14); never sent Plaintiff copies (Herman Dep. Tr. 27:5) or advised of filing deadlines (Herman Dep. Tr. 31:15); falsely represented to Plaintiff that supervisor Bentley had given a negative evaluation, a statement Bentley directly contradicted; and used a pre-dated complaint form. Conduct discovered December 7, 2021.

**Defendant James Leary**

As DOS Associate Attorney: sent 2015 threatening letter citing inapplicable law; coordinated with Baldwin re Plaintiff's complaints; authorized termination without being present at Barclays Center (Leary DHR Tr. 2241:22-23); supervised Sumbler knowing she provided Welland, Ontario as her residence (Sumbler Dep. Tr. 42:5-6); knew or should have known Sumbler changed or disregarded post-fight medical protocol because Plaintiff included the protocol issue and identified witnesses in her workplace-violence report; knew or should have known that Sumbler had obtained written confirmation from Dr. Avery Browne; terminated Commissioner Signorile in June 2018; terminated Deputy Commissioner George Ward after Ward had testified in prior forums supporting Plaintiff's account; and, Plaintiff alleges, supported termination while ignoring Plaintiff's written workplace-violence complaint.

**Defendant Anthony Giardina**

As Acting Executive Director through approximately July 2017: Plaintiff alleges Giardina sexually harassed her on March 17, 2017, while admitting she was "clearly offended and felt harassed" and that calling the police would have been justified (Giardina Federal Dep. Tr. 47:12-19); terminated sole witness Seme the same evening; denied Plaintiff's promotion; and received Herman's advice to be "more friendly."

**Defendant Kimberly Sumbler**

As Executive Director: changed or disregarded post-fight medical protocol without notice; falsely told Signorile on April 23, 2018 that there were no witnesses to Plaintiff's workplace-violence complaint; called Plaintiff a "f---ing liar" to Signorile despite having texted ringside physician Dr. Avery Browne after Plaintiff identified him as present and despite later testifying that Dr. Browne's text confirmation was consistent with her own recollection; prepared and signed the termination narrative that Plaintiff contends was pretextual; and served while, according to Plaintiff, residing in Welland, Ontario and holding Canadian citizenship in a manner Plaintiff contends was inconsistent with Public Officers Law § 3 — the eligibility issue Plaintiff had reported to the IG nineteen days before termination.

**Defendant Lilliana Estrella-Castillo**

As Chief Administrative Law Judge: managed DHR calendar, scheduled hearings, and assigned ALJs — administrative functions. Signed an administrative letter concerning ALJ assignment and retirement status, which Plaintiff alleges caused a reassignment after Plaintiff had presented her entire case-in-chief. ALJ Erazo continued issuing DHR decisions into 2024. Sued in individual capacity only.

## PART II. FACTUAL ALLEGATIONS

### A. Plaintiff's Employment and Protected Complaints

Plaintiff worked as a boxing inspector for NYSAC beginning in approximately 2004. She repeatedly complained about race discrimination, sexual harassment, denial of promotion, and retaliatory conduct by NYSAC and DOS officials. She is the only Black female boxing inspector NYSAC employed during the relevant period.

**B. Defendant Giardina's Conduct**

Plaintiff alleges that on March 17, 2017, while working at Madison Square Garden, Defendant Giardina approached her and attempted to hug her. Plaintiff backed away and stated, "I do not do that." Plaintiff alleges the conduct was unwelcome and coercive because Giardina controlled her pending promotion to Deputy Commissioner.

Giardina later admitted under oath that Plaintiff appeared "clearly offended and felt harassed." (Giardina Federal Dep. Tr. 47:19.) He further testified that Plaintiff would have been justified in calling the police to protect herself. (Giardina Federal Dep. Tr. 47:12-19; see also Giardina DHR Tr. 1937-1938.) Giardina received mandatory annual sexual harassment training from the Governor's Office of Employee Relations; per diem inspectors like Plaintiff did not.

Plaintiff alleges that Inspector Jean Seme witnessed the encounter and was terminated the same evening, eliminating the sole eyewitness. Within days, state police were dispatched to Seme's home based on an uncorroborated complaint; the Manhattan DA declined to prosecute and the investigating officer concluded Seme posed no threat. (Sands Dep. Tr., Sept. 28, 2021.)

**C. Defendant Herman's Conduct**

Plaintiff alleges that Herman advised Giardina to be "more friendly" with subordinates, then later investigated Plaintiff's sexual harassment complaint against Giardina — her own former direct supervisor (Herman Dep. Tr. 46:11) — and issued an "unsubstantiated" finding on November 28, 2017. Plaintiff alleges Herman applied an incorrect legal standard (severe AND pervasive rather than severe OR pervasive), refused to recuse herself despite Plaintiff's request, failed to interview the sole eyewitness Jean Seme, and gave undue weight to Giardina's stated intent rather than Plaintiff's experience.

Plaintiff further alleges that Herman signed complaint documents "on behalf of Dorothea Perry" without authorization. (Herman Dep. Tr. 27:8.) Herman admitted Plaintiff did not authorize her to sign (Herman Dep. Tr. 27:11; 28:11) or file documents on Plaintiff's behalf (Herman Dep. Tr. 28:14), and that she never sent Plaintiff copies (Herman Dep. Tr. 27:5) or advised Plaintiff of external filing deadlines (Herman Dep. Tr. 31:15). Herman engaged in the same practice with respect to Inspector Jean Seme. (Herman Dep. Tr. 15:10-14.) One complaint form (Bates DEF-2303 through DEF-2305) bears a date that pre-dates the incident it purports to describe.

Plaintiff further alleges that Herman falsely represented to Plaintiff that her supervisor Eric Bentley had described her as "difficult to deal with," a statement Bentley directly contradicted by text message confirming he had recommended Plaintiff for promotion.

**D. Defendant Baldwin's Conduct**

Plaintiff alleges that Baldwin authored a July 23, 2014 ethics opinion that Plaintiff contends was applied to her but not to similarly situated white male employees, including Eric Bentley, David Berlin, Keith Sullivan, and Joe Schaeffer. Plaintiff alleges this selective enforcement was racially motivated. NYSAC's prior IG report criticized Melvina Lathan, a Black woman, for working four days per week in a five-day position, while Sumbler, a white woman, was permitted to work from a Buffalo office hundreds of miles from her claimed New York residence without scrutiny — a

disparity supporting an inference of racially selective enforcement, which Plaintiff questioned the Inspector General about in her 2018 complaint.

Plaintiff alleges that Baldwin contacted Commissioner John Signorile and stated: “The governor’s office would like you to stand clear of what’s going on.” (Signorile DHR Tr. 1556:17-18.) Signorile understood this to mean “Dorothea Perry stop asking questions.” (Signorile DHR Tr. 1558:7-12.) Plaintiff alleges that Baldwin’s statement was intended to deter Signorile from supporting Plaintiff or investigating her complaints. Signorile was terminated in June 2018. (Signorile DHR Tr. 1558:21-25.)

Plaintiff further alleges that Baldwin appeared at Plaintiff’s August 16, 2021 DHR hearing without filing a notice of appearance, despite being an attorney and despite the procedural requirement to do so. ALJ Alexander Linzer disclosed that he and Baldwin’s wife served on the same nonprofit board. The hearing was reassigned, depriving Plaintiff of the ALJ who had already heard her opening statement. Plaintiff alleges that Baldwin’s unannounced appearance was intentional and had the effect of disrupting the proceeding.

Plaintiff alleges that Baldwin communicated with IG staff in July and August 2018 regarding Plaintiff’s complaints. On July 17, 2018, Baldwin sent DOS’s response to IG staff and copied Leary. On July 30, 2018, Baldwin advised IG staff that DOS had a copy of the Barclays Center video and offered to review it with investigators. Baldwin was not present at Barclays Center on April 21, 2018 and had no firsthand knowledge of the events. Plaintiff alleges that Baldwin knew or should have known from Plaintiff’s workplace-violence complaint and agency records that Sumbler changed or disregarded the post-fight medical protocol without proper notice, yet took no corrective action against Sumbler. Plaintiff alleges that Baldwin’s communications with IG staff were consistent with DOS’s account of the events and were made while the IG was reviewing Plaintiff’s complaint. On August 15, 2018, IG investigator Kenneth Michaels wrote that the video “supports the contention that she utterly failed to follow security protocols at the Barclays Center.” Plaintiff alleges that Baldwin’s involvement contributed to the IG’s adoption of the agency’s narrative rather than an independent investigation.

Plaintiff alleges that Baldwin’s role in the handling of Plaintiff’s Inspector General complaint and related communications was concealed from Plaintiff and was not reasonably discoverable at the time of Plaintiff’s termination or during earlier proceedings. Although Plaintiff requested responsive documents in the prior federal action, responsive records concerning Baldwin’s communications with the Inspector General were not produced, and Plaintiff did not discover Baldwin’s alleged involvement until later FOIL production. Documents produced through FOIL Request No. 028-2026, filed March 10, 2026 and produced May 27, 2026, revealed these communications. Plaintiff alleges that these later-discovered records support equitable tolling, fraudulent concealment, and the inference that Defendants’ retaliatory and discriminatory acts were coordinated and concealed from Plaintiff.

DOL Special Counsel James Rogers testified at the DHR hearing on February 24, 2023, that he told Baldwin this was “the single worst case of discrimination retaliation I had seen in all the years I had been enforcing labor laws.” (Rogers DHR Tr. 1747:1-15.) When asked whether he told Baldwin this was retaliation, Rogers answered: “Absolutely.” Rogers further testified that DOS refused to allow him to interview Sumbler under oath because “I believed that she was lying.” (Rogers DHR Tr. 1744:4-15.) Despite this notice, Baldwin took no corrective action.

**E. Defendant Leary’s Conduct**

Plaintiff alleges that Leary authorized Plaintiff's termination despite admitting under oath that he was not present at Barclays Center on April 21, 2018. (Leary DHR Tr. 2241:22-23.) Plaintiff alleges that Leary relied on Sumbler's account without conducting an independent investigation or interviewing witnesses Plaintiff had identified, including Dr. Avery Browne and Inspector Juan Rivera. NYSAC employee Veronica Cano independently corroborated in June or July 2018 that the workplace-violence incident occurred. Leary provided legal support to NYSAC when the IG issued its July 2016 report on the catastrophic injury to Magomed Abdusalamov, which identified post-fight medical protocols as a critical safety issue; Plaintiff alleges Leary therefore knew post-fight medical protocols were not to be altered without proper notice to inspectors. Plaintiff further alleges that Leary knew or should have known from Plaintiff's written workplace-violence complaint that Sumbler had changed or disregarded the medical protocol. Plaintiff alleges Leary's decision is inconsistent with later Department of Labor findings. Leary supervised Sumbler and knew she had provided Welland, Ontario as her residence address at her interview. (Sumbler Dep. Tr. 42:5-6.)

**F. Defendant Sumbler's Conduct**

Plaintiff alleges that, after receiving Plaintiff's internal complaint, Sumbler texted ringside physician Dr. Avery Browne because Plaintiff had identified him as present. Sumbler later testified that Dr. Browne's written response confirmed a large man shouted, "I'm about to kill somebody," as they escorted the fighter to the Commission room, and that the response was consistent with her own recollection. Plaintiff alleges that despite possessing this written confirmation on April 22, 2018, Sumbler falsely told Commissioner Signorile on April 23, 2018 that there were no witnesses, called Plaintiff a "f---ing liar," and signed the termination letter.

Plaintiff alleges that Sumbler changed or disregarded the post-fight medical protocol on April 21, 2018 without notifying inspectors, creating the conditions for the workplace-violence incident. Plaintiff alleges that Sumbler falsely told Commissioner Signorile on April 23, 2018 that there were no witnesses to the incident — despite Plaintiff identifying Dr. Avery Browne and Inspector Juan Rivera as witnesses and despite Sumbler later testifying that she confirmed the incident with Dr. Browne on April 22, 2018. Plaintiff further alleges that Sumbler called Plaintiff a "f---ing liar" to Signorile, stated Plaintiff made the incident up and that it never happened, and then signed the termination letter.

Plaintiff further alleges selective enforcement and pretext based on Defendants' treatment of Sumbler's role in the April 21, 2018 post-fight incident. Plaintiff alleges that Sumbler authorized or permitted a non-state employee, a reporter, to direct fighters away from the designated post-fight medical triage area and toward the press pool, contrary to the post-fight medical protocol identified as critical in the IG's prior NYSAC report. Plaintiff alleges that Sumbler was not disciplined, reprimanded, or meaningfully scrutinized for her role in that protocol deviation, while Plaintiff was terminated based on the same incident. Plaintiff alleges this disparate treatment supports an inference of pretext, selective enforcement, and retaliation.

Plaintiff further alleges disparate treatment in the handling of workplace-violence complaints. When Sumbler made an uncorroborated complaint against Jean Seme, with no witness, police report, or video, state police were dispatched to Seme's home and the complaint was treated as credible. By contrast, when Plaintiff filed a workplace-violence complaint supported by witness information and a police report, Sumbler called Plaintiff a "f---ing liar," stated the incident was made up and never happened, and Plaintiff was terminated. Plaintiff alleges this contrast supports an inference of pretext, selective enforcement, and retaliation.

Plaintiff alleges that Sumbler was a Canadian citizen residing at 73 Balmoral Avenue, Welland, Ontario, Canada, and that those facts are inconsistent with Public Officers Law § 3. At her October 26, 2021 deposition, Sumbler admitted: she was born in Canada (Tr. 12:23-24); is a Canadian citizen

(Tr. 12:19-20); resides in Welland, Ontario (Tr. 14:18-19); has a Canadian driver's license and no New York driver's license (Tr. 14:20-23); her purported New York residences were month-to-month rentals (Tr. 9:12-16); and she worked from a Buffalo office seven hours from her claimed Brooklyn residence but a short drive from Welland (Tr. 54:14-16). Plaintiff alleges that Sumbler's deposition testimony and related records support the inference that she maintained residence in Canada while using temporary New York addresses.

**G. Defendant Estrella-Castillo's Conduct**

Plaintiff alleges that Estrella-Castillo, as Chief Administrative Law Judge, performed administrative functions only, including calendar management, hearing scheduling, and ALJ assignment. She did not preside over Plaintiff's hearing, weigh evidence, resolve credibility disputes, or make any adjudicative determination in this case. Plaintiff alleges that Estrella-Castillo signed a June 21, 2023 administrative letter concerning ALJ assignment and retirement status. Plaintiff further alleges that the statement about ALJ Erazo's retirement status was inaccurate because public DHR orders show that Erazo continued issuing decisions in 2024, and that the reassignment altered the way Plaintiff's hearing was completed. Plaintiff does not allege that Estrella-Castillo made the merits determination in Plaintiff's case.

**H. The IG Complaint and Retaliation**

Plaintiff alleges that on March 15, 2018, she filed a confidential Inspector General complaint (Case No. 0899-26-2018) reporting that Sumbler appeared ineligible under Public Officers Law § 3 and that Herman had mishandled the internal EEO process. Plaintiff alleges these were matters of public concern and that her complaint was protected speech under the First Amendment.

On April 6, 2018, the IG lifted confidentiality, effectively identifying Plaintiff as the complainant. On June 7, 2018, Baldwin emailed Leary: "Do you have time to talk for a few minutes?…re: Dorothea Perry's emails." This communication occurred while the IG review was ongoing. On April 25, 2018 — nineteen days after the IG referral — Plaintiff was terminated.

**I. DOL Findings and Administrative Pattern**

The DOL issued a determination on March 8, 2022 finding NYSAC violated Labor Law § 27-a by retaliating against Plaintiff after she filed a workplace-violence complaint. DOL Special Counsel Rogers found NYSAC's stated reasons were pretextual: the video was not obtained until after the termination, the Sumbler memo mentioned only one of the two reasons later given, and all witnesses interviewed corroborated Plaintiff's account. (Rogers DOL Determination, March 8, 2022.) On May 13, 2022, Plaintiff alleges that determination was withdrawn through a letter bearing a forged "AmyCKarp" signature. After the withdrawal, Plaintiff filed the state-court action later relied upon by Defendants in their motion to dismiss (Index No. 152543/2022). DOL issued a second determination on August 11, 2022, again finding a violation and finding that Plaintiff was not the only employee involved in alleged protocol breaches but was the only one held responsible.

NYSAC's appeal to the Industrial Board of Appeals (Docket No. PES 22-010) remains pending more than two years after the record closed. Plaintiff alleges this delay is part of a parallel pattern of administrative obstruction across two state agencies: at DHR, two determinations in Plaintiff's favor were followed by Baldwin's unannounced 2021 hearing appearance causing ALJ Linzer's replacement, then Estrella-Castillo's 2023 administrative letter causing a second reassignment. At DOL, two determinations in Plaintiff's favor were followed by the forged AmyCKarp withdrawal in May 2022 and indefinite IBA delay. Plaintiff alleges this pattern includes favorable findings followed by extra-procedural conduct affecting those outcomes. The IG's 2018 closure also affected

information conveyed to Senator Liz Krueger's office, which had forwarded Plaintiff's concerns to the IG, leaving Senator Krueger with a materially inaccurate understanding of the matter.

**J. Witness Suppression Pattern**

Plaintiff alleges facts that are consistent with witness-related retaliation: Jean Seme (terminated 2017, subjected to state police interrogation based on an uncorroborated complaint from Kim Sumbler); Commissioner Signorile (warned by Baldwin to "stand clear," terminated June 2018 (Signorile DHR Tr. 1558:21-25)); and Deputy Commissioner George Ward (provided corroborating testimony at federal deposition October 12, 2021, DHR hearing November 10, 2022, and Industrial Board hearing December 22, 2023; terminated by Leary/DOS in February 2025, one month after this federal action was filed). George Ward testified that Deputy Commissioner Frank Vasquez, Plaintiff's supervisor, called Plaintiff "a nigger" and "a cunt." (Ward Federal Dep. Tr. 79:2; Ward DHR Tr. 715:10.)

**K. Continuing Overt Acts**

Additional alleged continuing acts include: Estrella-Castillo's June 2023 administrative letter concerning ALJ assignment and retirement status; Lisa Joslin's December 2023 disclosure of Plaintiff's confidential medical records at the Industrial Board proceeding using an authorization limited to the DHR case — an alleged continuing act in furtherance of the sequence of retaliatory conduct and confirmation of its reach into the IBA proceedings; DHR's refusal since September 2024 to process a new EEOC-referred complaint and later action on that separate DHR filing the same day the District Attorney was served with the Second Amended Complaint; and George Ward's February 2025 termination one month after this federal filing. On May 28, 2026, Plaintiff filed a complaint requesting reopening of IG Case No. 0899-26-2018 and a submission to COELIG regarding Sumbler's eligibility.

**L. GOER's Failure to Act**

After the IG referred Plaintiff's complaint to GOER, GOER representative Volforte stated GOER would defer to the DHR investigation. On June 19, 2019, Plaintiff provided GOER with the DHR probable cause determination. GOER took no further action. Plaintiff alleges GOER's deferral followed by inaction was unreasonable in light of the probable-cause determination.

**PART III. COUNTS**

**COUNT I**

**Title VII — Race Discrimination, Sex Discrimination, Hostile Work Environment, and Retaliation**

**Against NYSAC and DOS**

Plaintiff incorporates the preceding factual allegations relevant to this count. Plaintiff alleges that Defendants subjected her to discriminatory treatment, hostile work environment, and retaliation because of her race and sex, including by treating her differently from similarly situated white and male employees; tolerating or enabling Giardina's sexual harassment; failing to investigate her complaints fairly; retaliating after she complained internally and externally; and terminating her after her protected complaints. Plaintiff alleges these acts violated Title VII, 42 U.S.C. § 2000e et seq.

**COUNT II**

**42 U.S.C. § 1981 — Race Discrimination and Retaliation**

**Against the Individual Defendants**

Plaintiff incorporates the preceding factual allegations relevant to this count. Plaintiff alleges that Defendants intentionally discriminated against her because she is Black, interfered with the terms and conditions of her employment relationship, denied her promotion opportunities, and retaliated against her for opposing discrimination. The discriminatory acts interfered with Plaintiff's right to make and enforce contracts on equal terms. Comparators include Eric Bentley, David Berlin, Keith Sullivan, and Joe Schaeffer — white male employees who violated the same or more serious rules without discipline. Plaintiff alleges these acts violated 42 U.S.C. § 1981.

**COUNT III**

**42 U.S.C. § 1983 — Equal Protection**

**Against the Individual Defendants**

Plaintiff incorporates the preceding factual allegations relevant to this count. Plaintiff alleges that Defendants treated her differently from similarly situated employees because of her race and sex, and that the disparate treatment was intentional. Specific comparators include: Edward Kunkle, who was present at the April 21, 2018 incident, admitted failures of supervisory duty, faced no discipline; and white male employees who violated ethics rules without consequence. Plaintiff alleges the individual defendants acted under color of state law and violated the Equal Protection Clause.

**COUNT IV**

**42 U.S.C. § 1983 — First Amendment Retaliation**

**Against the Individual Defendants**

Plaintiff incorporates the preceding factual allegations relevant to this count. Plaintiff alleges that she engaged in protected speech on matters of public concern when she reported Sumbler's eligibility concerns and Herman's EEO manipulation to the Inspector General on March 15, 2018. Plaintiff made this report as a citizen, not pursuant to her job duties. Defendants learned of the report when confidentiality was lifted April 6, 2018. Plaintiff was terminated nineteen days later. The temporal proximity and coordination among defendants, including the June 7, 2018 Baldwin-Leary email, support a plausible inference of retaliatory motive. Plaintiff alleges this violated the First Amendment.

**COUNT V**

**42 U.S.C. § 1983 — Conspiracy**

**Against the Individual Defendants**

Plaintiff incorporates by reference the factual allegations in the preceding paragraphs to the extent relevant to this Count. Plaintiff alleges that Defendants Baldwin, Herman, Leary, Giardina, Sumbler, and other unnamed individuals engaged in related conduct after Plaintiff complained of discrimination, harassment, workplace violence, and misconduct within NYSAC. Plaintiff alleges, on information and belief, that this conduct included communications among agency personnel,

coordination concerning the handling of Plaintiff's internal complaints and external filings, and administrative steps affecting Plaintiff's EEO and DHR matters. Plaintiff further alleges that records produced in May 2026 through FOIL revealed previously undisclosed communications and connections among State actors involved in these matters, and that those records, together with the chronology of events alleged in this Complaint, support a plausible inference that defendants acted in coordination.

**COUNT VI**

**42 U.S.C. § 1983 — Due Process / Stigma-Plus**

**Against the Individual Defendants**

Plaintiff incorporates the preceding factual allegations relevant to this count. Plaintiff alleges in the alternative that she possessed a protected property interest in continued employment based on her classified civil service title and long service, and that she was terminated without adequate notice and a meaningful opportunity to be heard. If the Court concludes that the property-interest theory is disputed or insufficient, Plaintiff also pleads a stigma-plus claim: Plaintiff alleges that Defendants attributed misconduct or protocol failure to Plaintiff in connection with her termination, damaging her reputation and foreclosing future boxing-regulatory opportunities without providing a meaningful opportunity to respond.

**COUNT VII**

**42 U.S.C. § 1985(2) — Interference with Witness Testimony**

**Against Defendants Baldwin, Leary, Giardina, and Sumbler**

Plaintiff incorporates by reference the factual allegations in the preceding paragraphs to the extent relevant to this Count. Plaintiff alleges that George Ward testified in the federal action on October 12, 2021, and later testified in administrative proceedings in 2022 and 2023 concerning matters related to Plaintiff's complaints and workplace events. Plaintiff alleges that Ward was terminated in February 2025 after those statements and after his testimony, and that the timing of the termination supports a plausible inference that the action was intended to punish or deter testimony in this case. Plaintiff pleads this claim on the theory that Ward was injured on account of testimony in a federal proceeding within the meaning of 42 U.S.C. § 1985(2).

Plaintiff alleges that George Ward, a witness who had given testimony supporting Plaintiff's account, was subjected to heightened scrutiny and adverse treatment over an alleged expense reimbursement violation, while Paul O'Brien and Edward Kunkle, Deputy Commissioners who worked at NYSAC and were subject to the same general agency rules and reimbursement procedures, allegedly submitted similarly large or larger expense vouchers that were never similarly questioned, rejected, or disciplined in the same manner. Plaintiff further alleges that this differential treatment of Ward supports an inference that agency actors were applying discipline selectively and retaliating against persons connected to Plaintiff's complaints.

Plaintiff further alleges that Defendants' prior conduct toward witnesses, including adverse treatment of Seme and Signorile, is relevant background showing facts consistent with witness-related retaliation. Plaintiff alleges that this background, together with the timing and circumstances of Ward's termination, supports the inference that one or more defendants acted with the purpose of discouraging or punishing testimony in a federal proceeding. To the extent any individual act occurred before a particular witness event, Plaintiff alleges that act as background evidence of

retaliatory intent and a continuing course of conduct. Plaintiff alleges that she was injured by the interference with witness participation and by the resulting impairment of her ability to present and pursue her claims.

**COUNT VIII**

**42 U.S.C. § 1985(3) — Conspiracy to Deprive Equal Protection**

**Against Defendants Baldwin, Herman, Giardina, Sumbler, and Leary; and as to DHR obstruction, Estrella-Castillo**

Plaintiff incorporates by reference the factual allegations in the preceding paragraphs to the extent relevant to this Count. Plaintiff alleges that Defendants and unnamed co-conspirators acted in concert to deprive her of equal protection of the laws and equal privileges and immunities under the laws because of her race and sex, including by selectively handling complaints, imposing heightened scrutiny on Plaintiff and persons associated with her complaints, and taking adverse actions that were not imposed on similarly situated white or male employees. Plaintiff alleges that the chronology of communications, adverse actions, witness treatment, and previously undisclosed connections revealed in the May 2026 FOIL production supports an inference that defendants acted together and with discriminatory purpose.

With respect to Defendant Estrella-Castillo, Plaintiff alleges only that she performed administrative calendar-management and assignment functions that affected the scheduling and processing of Plaintiff's DHR-related matter. Plaintiff does not allege that Estrella-Castillo presided over the merits, made adjudicative findings, weighed evidence, or acted in a judicial capacity.

**COUNT IX**

**42 U.S.C. § 1983 — Due Process and Equal Protection: Non-Adjudicative Administrative Interference**

**Against Defendant Estrella-Castillo in Her Individual Capacity Only**

Plaintiff incorporates by reference the factual allegations in the preceding paragraphs to the extent relevant to this Count. Plaintiff alleges that Defendant Estrella-Castillo's involvement was limited to administrative tasks, including calendar management, hearing scheduling, and ALJ assignment, and did not include adjudication of the merits of Plaintiff's DHR case. Plaintiff further alleges that the June 21, 2023 letter concerning ALJ assignment and retirement status was administrative in nature and that the resulting reassignment altered the manner in which Plaintiff's hearing was completed. Plaintiff does not contend that Estrella-Castillo made the merits determination in Plaintiff's case. Plaintiff pleads any alternative theory that some defendants acted jointly only in the alternative.

**PART IV. ANTICIPATED DEFENSES, PRAYER FOR RELIEF, AND SIGNATURE**

**A. TIMELINESS, RELATION BACK, AND TOLLING**

Plaintiff alleges her Title VII claims are timely as described above. Her remaining federal claims are timely under applicable limitations periods, including because: the § 1981 claim is subject to a four-year period under Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004); the continuing violation doctrine applies, with overt acts extending through February 2025 and beyond, see Cornwell v. Robinson, 23 F.3d 694, 703 (2d Cir. 1994); equitable tolling applies based on Herman's and Baldwin's fraudulent concealment, see Koch v. Christie's Int'l PLC, 699 F.3d 141, 157 (2d Cir. 2012); and the FOIL records produced May 27, 2026 may support equitable tolling as to claims based on Baldwin's IG involvement.

**B. RES JUDICATA**

Plaintiff alleges that any prior state-court dismissal lacks preclusive effect because Justice Latin's November 23, 2022 order was based on lack of subject matter jurisdiction, not the merits. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998). The Court of Claims lacks jurisdiction over § 1981, § 1983, and § 1985 claims. See Brown v. State of New York, 89 N.Y.2d 172, 184-85 (1996). Title VII claims could not have been brought in 2022 as the EEOC notice did not issue until November 2025. Conduct occurring after November 23, 2022 is categorically not barred.

**C. QUALIFIED IMMUNITY**

Plaintiff alleges qualified immunity does not bar claims based on intentional discrimination, retaliation, concealment, or fraud. The right to be free from race and sex discrimination in public employment is clearly established. The DOL's August 11, 2022 finding that Plaintiff was subjected to disparate treatment undermines any claim that Defendants' conduct was objectively reasonable. See McKenna v. Wright, 386 F.3d 432, 435 (2d Cir. 2004); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

**D. JUDICIAL IMMUNITY — ESTRELLA-CASTILLO**

Plaintiff alleges that absolute judicial immunity does not apply to Estrella-Castillo's conduct because: (1) her role was administrative, not adjudicative (Forrester v. White, 484 U.S. 219 (1988)); (2) she did not preside over or adjudicate Plaintiff's case; and (3) the alleged administrative statement

concerned assignment and retirement status rather than an adjudication on the merits. Plaintiff alleges any conspiracy-based theory against Estrella-Castillo only in the alternative.

**E. INTRA-CORPORATE CONSPIRACY**

Plaintiff alleges the conspiracy spans multiple agencies — DOS, DHR, and DOL — and includes conduct outside the scope of legitimate employment, including unauthorized filings, a forged signature, false statements, and witness intimidation. Plaintiff alleges the intra-corporate doctrine should not apply at this stage.

**F. CIVIL SERVICE STATUS**

Plaintiff alleges facts supporting a protected property interest, including that as of April 21, 2018, she held a classified civil service title as a Boxing Inspector and had long service with NYSAC. To the extent the status is disputed, she preserves the stigma-plus theory as an alternative.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that the Court enter judgment in her favor and award:

1. declaratory relief;
2. compensatory damages;
3. punitive damages against the individual defendants to the extent permitted by law;
4. equitable relief, including correction or expungement of adverse records, reinstatement or front pay where appropriate, and other appropriate remedial relief;
5. costs and any fees available by law; and
6. such other and further relief as the Court deems just and proper.

Dated: June 15, 2026

New York, New York

Respectfully submitted,

/s/ Dorothea Perry

**Dorothea Perry**

Plaintiff Pro Se

74 Tapscott Street

Brooklyn, New York 11212

Tel: 917.328.3442

Email: msdorothea.perry@gmail.com